# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CORECIVIC, INC.

*Plaintiff-Appellant*

v.

CANDIDE GROUP, LLC AND
MORGAN SIMON

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of California at San Francisco
(Case No. 3:20-cv-03792-WHA, Hon. William Alsup)

## PRINCIPAL BRIEF OF
## PLAINTIFF-APPELLANT CORECIVIC, INC.

ELIZABETH M. LOCKE, P.C.
JOSEPH R. OLIVERI
DANIEL D. MAULER
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
(202) 628-7400
libby@clarelocke.com
joe@clarelocke.com
dan.mauler@clarelocke.com

*Attorneys for Plaintiff-Appellant
CoreCivic, Inc.*

August 16, 2021

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iv

CORPORATE DISCLOSURE STATEMENT ...................................................... 1

INTRODUCTION ............................................................................................... 2

STATEMENT OF JURISDICTION .................................................................... 5

STATEMENT OF THE ISSUES ......................................................................... 6

STATUTORY ADDENDUM ............................................................................... 8

STATEMENT OF THE CASE ............................................................................ 8

    A.    Statement of Facts. ............................................................................. 8

        1.    Defendants Create a Business Model Promoting "Socially Conscious" Investments—And Achieve Great Financial Success. ...................................................................... 9

        2.    The Trump Administration's "Family Separation Policy" Galvanizes the #FamiliesBelongTogether Movement—But CoreCivic Has Never Housed Separated Children. ................. 10

        3.    Defendants Exploit the #FamiliesBelongTogether Movement by Publishing False and Defamatory Statements About CoreCivic in a Series of Articles—to Drive Investments Away from CoreCivic and to Themselves. ......... 12

        4.    CoreCivic Explains to Defendants the Demonstrable Falsity of Their Defamatory "Detaining Separated Children" and "Lobbying" Statements and Demands Their Retraction. ........ 17

        5.    Defendants Double-Down on Their Defamation and Admit They Knew Their Statements Implied CoreCivic Was Detaining Children Separated from Their Parents at the Border. ................................................................................... 18

        6.    Defendants Again Refuse to Retract Their Defamatory Statements Despite Knowing They Are False. ......................... 19

B.     Procedural History. ............................................................. 20

     1.     CoreCivic Brings Defamation Claims Based on Defendants' "Detaining Separated Children Statements" *and* Defendants' "Lobbying" Statements." ....................................................... 20

     2.     Defendants Move to Strike CoreCivic's Complaint Under California's Anti-SLAPP Statute—And Do *Not* Move in the Alternative to Dismiss Under Rule 12(b)(6). .......................... 21

     3.     Hours After the Hearing on Defendants' Special Motion to Strike, the District Court Grants It in a One-Paragraph Order That Ignores Half of CoreCivic's Claims. ............................... 22

     4.     The District Court Grants Defendants' Motion for Attorneys' Fees Under the California Anti-SLAPP Statute and Makes Clear It Previously Granted Defendants' Special Motion to Strike Under That Statute—in an Opinion Acknowledging That California's Anti-SLAPP Statute May Not Apply in Federal Court. ....................................................................... 24

SUMMARY OF ARGUMENT ............................................................. 26

STANDARD OF REVIEW .................................................................. 29

ARGUMENT ...................................................................................... 31

I.     The District Court Reversibly Erred by Applying California's Anti-SLAPP Statute Because That Statute Cannot Apply in Federal Court Under the U.S. Supreme Court's Decision in *Shady Grove*—As Numerous Circuits Have Recognized (But This Court Has Yet to Consider). .............. 31

     A.     This Court Holds in *Newsham*—Pre-*Shady Grove*—That California's Anti-SLAPP Statute Can Apply in Federal Court. ........ 33

     B.     The U.S. Supreme Court's Seminal *Shady Grove* Decision Changes the Inquiry for Determining Whether State Laws Can Apply in Federal Court. ................................................................... 36

     C.     Following *Shady Grove*, Numerous Circuits Hold That California's Anti-SLAPP Statute and "Analogous" Statutes Cannot Apply in

Federal Court; The Only Circuit to Hold Otherwise Mistakenly Relied on a One-Justice Concurrence, Not the Majority Opinion in *Shady Grove.* ......................................................................................... 39

D.   The Panel Has the Authority to Hold California's Anti-SLAPP Statute Inapplicable in Federal Court Under *Shady Grove.* ................ 43

E.   *Shady Grove* Requires the Panel to Hold That California's Anti-SLAPP Statute Cannot Apply in Federal Court—And Compelling Reasons Exist to Do So. ....................................................................... 45

II.  The District Court Reversibly Erred in Striking CoreCivic's Claims on the Merits. ...................................................................................................... 50

A.   The District Court Erroneously Held Defendants' Detaining Separated Children Statements "True Enough"—by Improperly Selecting Among Multiple Reasonable Interpretations of Those Statements and Improperly Finding Facts. ........................................ 51

B.   The District Court Reversibly Erred Because It Failed to Consider CoreCivic's Defamation Claims Based on Defendants' Lobbying Statements. ........................................................................................... 57

CONCLUSION ................................................................................................... 62

CERTIFICATE OF COMPLIANCE ................................................................. 63

CERTIFICATE OF SERVICE ........................................................................... 64

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Foreign Policy Grp., LLC*,
    783 F.3d 1328 (D.C. Cir. 2015) ...................................................... 3, 6, 32, 40, 41

*Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*,
    757 F.3d 540 (6th Cir. 2014) ............................................................... 39

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................... 31

*Balla v. Hall*,
    59 Cal. App. 5th 652 (2021), *rev. denied* (Apr. 14, 2021) ............ 51, 56

*Barrett v. Negrete*,
    126 F. App'x 816 (9th Cir. 2005) ..................................................... 30

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2003) ....................................................... 35, 36

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................. 30, 31, 41

*Bently Rsrv. LP v. Papaliolios*,
    218 Cal. App. 4th 418 (2013) ................................................ 5, 7, 28, 51, 56

*Brown v. Potter*,
    457 F. App'x 668 (9th Cir. 2011) .................................................... 58, 62

*Bryant v. Ochoa*,
    460 F. App'x 624 (9th Cir. 2011) ........................................................ 58

*Carbone v. Cable News Network, Inc.*,
    910 F.3d 1345 (11th Cir. 2018) .......................................... 3, 6, 32, 39, 41, 42

*Chapin v. Knight-Ridder, Inc.*,
    993 F.2d 1087 (4th Cir. 1993) ............................................................ 52

*Chen v. Mukasey*,
    524 F.3d 1028 (9th Cir. 2008) ......................................................... 4, 45

*City of Oakland v. BP PLC*,
969 F.3d 895 (9th Cir. 2020) ............................................................. 29

*Clifford v. Trump*,
818 F. App'x 746 (9th Cir. 2020) ...................................................... 36

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990) ........................................................................... 42

*Davis v. Flores*,
484 F. App'x 108 (9th Cir. 2012) ...................................................... 58

*Enigma Software Grp. USA v. Bleeping Computer LLC*,
194 F. Supp. 3d 263 (S.D.N.Y. 2016) ................................................ 15

*Erotic Serv. Provider Legal Educ. & Rsch. Project v. Gascon*,
880 F.3d 450 (9th Cir.), *amended*, 881 F.3d 792 (9th Cir. 2018)...................... 44

*Fallay v. First Am. Specialty Ins. Co.*,
706 F. App'x 439 (9th Cir. 2017) ...................................................... 49

*Flatley v. Mauro*,
139 P.3d 2 (Cal. 2006) ....................................................................... 36

*Galbraith v. Cty. of Santa Clara*,
307 F.3d 1119 (9th Cir. 2002) ........................................................... 44

*Gallivan v. United States*,
943 F.3d 291 (6th Cir. 2019) ............................................................. 37

*Global Relief Found., Inc. v. N.Y. Times Co.*,
390 F.3d 973 (7th Cir. 2004) ............................................................. 52

*Godin v. Schencks*,
629 F.3d 79 (1st Cir. 2010)................................................. 3, 6, 33, 40

*Hanna v. Plumer*,
380 U.S. 460 (1965) .................................................................... 34, 35

*Haynes v. Alfred A. Knopf, Inc.*,
8 F.3d 1222 (7th Cir. 1993) ............................................................... 52

*Holestine v. Cal. Dep't of Corr.*,
  32 F. App'x 372 (9th Cir. 2002) .......................................................... 58

*Hughes v. Hughes*,
  122 Cal. App. 4th 931 (2004) ............................................................. 52

*Hyan v. Hummer*,
  825 F.3d 1043 (9th Cir. 2016) ............................................................ 46

*Iancu v. Brunetti*,
  139 S. Ct. 2294 (2019) ....................................................................... 47

*In re Intermagnetics Am., Inc.*,
  926 F.2d 912 (9th Cir. 1991) .............................................................. 58

*Intercon Sols. v. Basel Action Network*,
  969 F. Supp. 2d 1026 (N.D. Ill. 2013),
  *aff'd*, 791 F.3d 729 (7th Cir. 2015) ............................. 3, 6, 7, 32, 33, 40

*Invesco High Yield Fund v. Jecklin*,
  --- F. App'x ----, 2021 WL 2911739 (9th Cir. 2021) ......................... 29

*Jarrow Formulas, Inc. v. LaMarche*,
  74 P.3d 737 (Cal. 2003) ...................................................................... 36

*Jones v. United Parcel Serv., Inc.*,
  674 F.3d 1187 (10th Cir. 2012) .......................................................... 38

*Kaelin v. Globe Commc'ns Corp.*,
  162 F.3d 1036 (9th Cir. 1998) ................................. 5, 7, 28, 52, 56

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ........................................................ 30, 52

*Klocke v. Watson*,
  936 F.3d 240 (5th Cir. 2019) ................................... 3, 6, 32, 39

*Kona Enters., Inc. v. Estate of Bishop*,
  229 F.3d 877 (9th Cir. 2000) .............................................................. 29

*La Liberte v. Reid*,
  966 F.3d 79 (2d Cir. 2020) .................. 3, 6, 32, 39, 40, 41, 42, 47

vi

*Lampo Grp., LLC v. Paffrath*,
No. 18-cv-1402, 2019 WL 3305143 (M.D. Tenn. July 23, 2019) ............... 32, 40

*Loewen v. Lyft, Inc.*,
129 F. Supp. 3d 945 (N.D. Cal. 2015) .................................................. 15

*Los Lobos Renewable Power, LLC v. AmeriCulture, Inc.*,
885 F.3d 659 (10th Cir. 2018) ........................................ 3, 6, 32, 39, 43

*M.M. v. Lafayette Sch. Dist.*,
767 F.3d 842 (9th Cir. 2014) .......................................... 5, 29, 57, 61

*MacLeod v. Tribune Publ'g Co.*,
343 P.2d 36 (Cal. 1953) .................................................................... 52, 56

*Makaeff v. Trump Univ., LLC*,
715 F.3d 254 (9th Cir. 2013) ............................................................ 50

*Makaeff v. Trump Univ., LLC*,
736 F.3d 1180 (9th Cir. 2013) .......................................... 25, 43, 48

*McComas v. Wallace*,
No. 10-cv-2622, 2011 WL 1230044 (N.D. Cal. Mar. 30, 2011) ........................ 43

*Metabolife Int'l, Inc. v. Wornick*,
264 F.3d 832 (9th Cir. 2001) ............................................................ 45

*Miller v. Gammie*,
335 F.3d 889 (9th Cir. 2003) ........................................................ 4, 44

*Nasrallah v. Barr*,
140 S. Ct. 1683 (2020) ...................................................................... 47

*Newcal Indus., Inc. v. Ikon Office Sol.*,
513 F.3d 1038 (9th Cir. 2008) .......................................................... 31

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*,
133 Cal. App. 4th 658 (2005) ............................................................ 30

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
890 F.3d 828 (9th Cir.),
*amended*, 897 F.3d 1224 (9th Cir. 2018) .............................. 25, 30, 44, 46, 47, 49

*Planned Parenthood v. U.S. Dep't of Health & Hum. Servs.*,
   946 F.3d 1100 (9th Cir. 2020) ............................................................ 58

*Pledger v. Lynch*,
   --- F.4th ----, 2021 WL 3072861 (4th Cir. 2021) ............................... 39

*Raymond v. Avectus Healthcare Sols., LLC*,
   859 F.3d 381 (6th Cir. 2017) ............................................................. 41

*Riley v. Kernan*,
   815 F. App'x 163 (9th Cir. 2020) ............................... 5, 7, 29, 57, 61

*RLI Ins. Co. v. Langan Eng'g, Env't, Surveying*
   *& Landscape Architecture, D.P.C.*,
   834 F. App'x 362 (9th Cir. 2021) ...................................................... 36

*Sarver v. Chartier*,
   813 F.3d 891 (9th Cir. 2016) ............................................................. 46

*Selleck v. Globe Int'l, Inc.*,
   166 Cal. App. 3d 1123 (1985) ..................................................... 52, 56

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   549 F.3d 137 (2d Cir. 2008) .............................................................. 37

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) ............ 2, 3, 6, 22, 27, 31, 32, 36, 37, 38, 39, 42, 47, 48, 50

*Shaver v. Operating Eng'rs Local 428 Pension Tr. Fund*,
   332 F.3d 1198 (9th Cir. 2003) ........................................................... 30

*Sherman v. Network Com. Inc.*,
   346 F. App'x 211 (9th Cir. 2009) ................................................. 58, 62

*Stavrianoudakis v. U.S. Dep't of Fish & Wildlife*,
   435 F. Supp. 3d 1063 (E.D. Cal. 2020) ............................................. 41

*Stender v. Archstone-Smith Operating Tr.*,
   958 F.3d 938 (10th Cir. 2020) ........................................................... 36

*Tecza v. Univ. of S.F.*,
   532 F. App'x 667 (9th Cir. 2013) ................................................. 57, 62

*Travelers Cas. Ins. Co. of Am. v. Hirsh*,
  831 F.3d 1179 (9th Cir. 2016) ................................................................ 48, 49

*Unanka v. DEA*,
  65 F.3d 176 (9th Cir. 1995) ............................................................................ 58

*Unelko Corp. v. Rooney*,
  912 F.2d 1049 (9th Cir. 1990) ....................................................................... 60

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,
  190 F.3d 963 (9th Cir. 1999) ................................. 2, 3, 27, 31, 33, 34, 35, 36, 47

*Verizon Del., Inc. v. Covad Commc'ns Co.*,
  377 F.3d 1081 (9th Cir. 2004) ....................................................................... 45

*Walker v. Armco Steel Corp.*,
  446 U.S. 740 (1980) ...................................................................................... 34

*Wilcox v. Super. Court*,
  27 Cal. App. 4th 809 (1994) ..................................................................... 30, 34

*Wilson v. Cable News Network, Inc.*,
  7 Cal. 5th 871 (2019) .................................................................................... 47

*Yeager v. Bowlin*,
  693 F.3d 1076 (9th Cir. 2012) ....................................................................... 14

**Statutes**

28 U.S.C. §1291 .............................................................................................. 6

28 U.S.C. §1332 .............................................................................................. 5

Cal. Civ. Code §45 ......................................................................................... 61

Cal. Code Civ. Proc. §425.16 ......................................... 2, 21, 31, 34, 41, 42, 45, 46

**Rules**

Fed. R. App. P. 4 ............................................................................................. 5

Fed. R. Civ. P. 8 ........................................... 6, 21, 27, 31, 40, 41, 43, 47

Fed. R. Civ. P. 11 ............................................................. 6, 40, 42, 43

Fed. R. Civ. P. 12 ... 4, 6, 7, 21, 22, 25, 26, 27, 30, 31, 40, 41, 42, 43, 46, 47, 50, 51

Fed. R. Civ. P. 23 ....................................................................... 37, 38

Fed. R. Civ. P. 54 ........................................................................... 46

Fed. R. Civ. P. 56 .............................................. 6, 21, 27, 31, 40, 41, 43, 45, 46, 47

## <u>CORPORATE DISCLOSURE STATEMENT</u>

CoreCivic, Inc. certifies, pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, it has no parent corporation and no publicly held company owns 10 percent or more of its stock.

**<u>INTRODUCTION</u>**

This appeal presents a question of first impression in this Circuit: Can California's Anti-SLAPP Statute (Cal. Code Civ. Proc. §425.16) apply in federal court under the framework established by the U.S. Supreme Court in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010)? Since *Shady Grove* was decided, every Circuit Court that has considered *Shady Grove*'s majority opinion—six Circuits in all—has answered it the same way: No.

Before *Shady Grove*, courts determined whether a state law could apply in federal court by asking whether the state law "directly collided" with a valid Federal Rule of Civil Procedure. Absent a "direct collision," including where the state law and Federal Rule could "exist side by side," the court made a "typical, relatively unguided *Erie* choice." That is what this Court did when, in 1999, it held California's Anti-SLAPP Statute applicable in federal court in *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 971 (9th Cir. 1999).

Eleven years later in *Shady Grove*, the U.S. Supreme Court changed that analytical framework. The Court held that if a state law (in that case a state law governing class actions) and a valid Federal Rule of Civil Procedure "answer the same question," then the Federal Rule applies and the state law does not—full stop. 559 U.S. at 398-99. In undertaking that inquiry, courts "***do not*** wade into *Erie*'s

murky waters unless the federal rule is inapplicable or invalid." *Id.* at 398.[1]  In so holding, the Supreme Court reversed the Second Circuit's decision under review, which had applied the "direct collision" test and made an "unguided *Erie* choice"— just like this Court did in *Newsham* in 1999.  The Supreme Court thereby abrogated *Newsham*.

Following *Shady Grove*, six Circuits have considered whether California's Anti-SLAPP Statute or analogous state anti-SLAPP statutes can apply in federal court under *Shady Grove* and all have held—in numerous thorough, well-reasoned opinions—that they cannot.[2]  By contrast, only the First Circuit has held otherwise, but its opinion, issued just months after *Shady Grove*, misread a one-Justice concurrence as the Court's majority opinion.[3]

Remarkably, this Circuit has yet to decide whether California's Anti-SLAPP Statute can apply in federal court under *Shady Grove*.  It has simply assumed that it does, citing back to *Newsham*.  But *Shady Grove* abrogated *Newsham*, and this Court

---

[1] Emphasis added unless otherwise noted.

[2] *La Liberte v. Reid*, 966 F.3d 79, 86-88 & n.1 (2d Cir. 2020); *Klocke v. Watson*, 936 F.3d 240, 244-49 (5th Cir. 2019); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1349-57 (11th Cir. 2018); *Los Lobos Renewable Power, LLC v. AmeriCulture, Inc.*, 885 F.3d 659, 673 (10th Cir. 2018); *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1333-37 (D.C. Cir. 2015) (Kavanaugh, J.); *Intercon Sols. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1050 (N.D. Ill. 2013), *aff'd*, 791 F.3d 729 (7th Cir. 2015).

[3] *Godin v. Schencks*, 629 F.3d 79, 86-87 (1st Cir. 2010); *see also Intercon Sols.*, 969 F. Supp. 2d at 1050 (explaining *Godin*'s misreading of *Shady Grove*).

(and this Panel) is not bound by abrogated precedent or this Court's application of California's Anti-SLAPP Statute in cases where the question of its applicability under *Shady Grove* was not "presented for review." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (*en banc*); *Chen v. Mukasey*, 524 F.3d 1028, 1033 (9th Cir. 2008).

The issue is now ripe for decision, and this Court should join its sister Circuits in holding that California's Anti-SLAPP Statute cannot apply in federal court. Because Defendants only moved the district court to strike under California's Anti-SLAPP Statute—and not to dismiss under Federal Rule 12(b)(6)—this Court, upon holding California's Anti-SLAPP Statute inapplicable, should remand with instructions that the case proceed to discovery.

If the Court reaches the merits of the district court's Order striking CoreCivic's complaint—which it need only do if it holds California's Anti-SLAPP Statute applicable in federal court—it should also reverse. The district court erred in striking CoreCivic's complaint on the merits for two distinct reasons.

First, the court erred by striking CoreCivic's defamation claims based on Defendants' false statements about CoreCivic operating immigrant detention facilities as "true enough" by improperly finding facts and adopting Defendants' proffered interpretation of those statements to the exclusion of other reasonable interpretations. At the pleading stage, courts may only determine "whether a

[defamatory] statement is reasonably susceptible of ***an*** interpretation which implies a provably false assertion of actual fact"; if it is, then the jury must "determine whether such an interpretation was in fact conveyed." *Bently Rsrv. LP v. Papaliolios*, 218 Cal. App. 4th 418, 428 (2013); *Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1040 (9th Cir. 1998).

Second, the court erred by striking CoreCivic's complaint in its entirety (when it held Defendants' statements about CoreCivic operating detention facilities for children were "true enough") because it failed to address CoreCivic's defamation claims based on Defendants' separate and distinct false and defamatory statements about CoreCivic's lobbying activities. Under such circumstances, where a district court dismisses an action in its entirety but "fail[s] to address" all of the plaintiff's claims, it reversibly errs and "remand ... to the district court for it to consider [plaintiff's] claim in the first instance" is required. *E.g.*, *Riley v. Kernan*, 815 F. App'x 163, 165 (9th Cir. 2020); *M.M. v. Lafayette Sch. Dist.*, 767 F.3d 842, 862 (9th Cir. 2014).

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction under 28 U.S.C. §1332 because there was (and is) complete diversity and the amount in controversy exceeds $75,000, excluding interest and costs. The district court entered final judgment for Defendants on November 19, 2020. (ER-138.) Under FRAP 4(a)(1)(A), CoreCivic

timely filed a Notice of Appeal on November 20, 2020, fewer than 30 days after the district court's final judgment. (ER-234–38.) This Court has jurisdiction. 28 U.S.C. §1291.

## STATEMENT OF THE ISSUES

1.     In *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), the U.S. Supreme Court changed the framework for determining whether a state law can apply in federal court, holding that a state law cannot apply in federal court if it "answer[s] the same question" as a valid Federal Rule of Civil Procedure.   Since *Shady Grove*, five Circuits[4] have held that California's Anti-SLAPP Statute or "analogous" state statutes cannot apply in federal court because they "answer the same question" as Federal Rules of Civil Procedure 8, 11, 12, and 56 (among others), and a sixth Circuit[5] has affirmed a district court decision so holding.  (Only one Circuit has held otherwise (regarding a Maine statute)[6] but misread a concurrence in *Shady Grove* as the majority

---

[4] *La Liberte v. Reid*, 966 F.3d 79, 86-88 (2d Cir. 2020); *Klocke v. Watson*, 936 F.3d 240, 244-49 (5th Cir. 2019); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1349-57 (11th Cir. 2018); *Los Lobos Renewable Power, LLC v. AmeriCulture, Inc.*, 885 F.3d 659, 673 (10th Cir. 2018); *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1333-37 (D.C. Cir. 2015) (Kavanaugh, J.).

[5] *Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1053 (N.D. Ill. 2013), *aff'd*, 791 F.3d 729 (7th Cir. 2015).

[6] *Godin v. Schencks*, 629 F.3d 79, 86-87 (1st Cir. 2010).

opinion.[7])  This Court has yet to decide whether California's Anti-SLAPP Statute can apply in federal court under *Shady Grove*—it has simply assumed that it does based on its now-abrogated pre-*Shady Grove* precedent.  The question is now squarely presented to this Court:  Under *Shady Grove*, can California's Anti-SLAPP Statute apply in federal court?

2.     At the Rule 12(b)(6) stage, courts may only determine "whether a [defamatory] statement is reasonably susceptible of *an* interpretation which implies a provably false assertion of actual fact"; the jury must "determine whether such an interpretation was in fact conveyed." *Bently Rsrv. LP v. Papaliolios*, 218 Cal. App. 4th 418, 428 (2013); *Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1040 (9th Cir. 1998).  The district court held Defendants' defamatory statements about CoreCivic operating immigrant detention facilities "true enough" by finding facts and adopting Defendants' proffered interpretation of them to the exclusion of other reasonable interpretations of them.  Did it err?

3.     A district court reversibly errs if it dismisses an action in its entirety but "fail[s] to address" all of plaintiff's claims; in such circumstances "remand ... to the district court for it to consider [plaintiff's] claim[] in the first instance" is required. *E.g.*, *Riley v. Kernan*, 815 F. App'x 163, 165 (9th Cir. 2020).  CoreCivic pled

---

[7] *E.g.*, *Intercon Sols.*, 969 F. Supp. 2d at 1050.

defamation claims based on two distinct sets of Defendants' false statements: accusations that CoreCivic "operat[es] immigrant detention facilities for children separated from their parents at the [U.S.] border" *and* separate accusations about CoreCivic's lobbying activities. The district court struck CoreCivic's Complaint in its entirety (because it held Defendants' statements about CoreCivic operating detention facilities for children were "true enough")—but failed to address CoreCivic's claims based on Defendants' statements about its lobbying activities. Did it err?

## STATUTORY ADDENDUM

An addendum containing the text of California's Anti-SLAPP Statute and pertinent rules accompanies this Brief.

## STATEMENT OF THE CASE

### A.    Statement of Facts.

This case arises from the publication by Defendants Candide Group, LLC and Morgan Simon—a for-profit investment firm and its founder—of purported facts about CoreCivic that they knew were false in a series of articles on the "Investing" section of Forbes.com (and a tweet promoting them) in an effort to cause investors to abandon their investments in CoreCivic in favor of "socially conscious"-branded investments that Defendants market. (ER-145–50, ¶¶1-25.) Specifically, it arises from Defendants' publication of two separate and distinct sets of defamatory

statements falsely accusing CoreCivic of (1) "operat[ing] immigrant detention facilities for children separated from their parents at the [U.S.] border" and enabling or allowing "abuses inside [those] facilities"; and (2) "spen[ding] $25M on lobbying ... to push for harsher criminal justice and immigration laws" to enrich itself by keeping its detention-center "beds [] filled." (ER-146, ER-162–63, ER-172–80, ER-182–89, ¶¶2–3, 71-73, 120-21, 135-36.) Defendants knew those accusations are verifiably false but, motivated by potentially massive profits, did not care.

1. **Defendants Create a Business Model Promoting "Socially Conscious" Investments—And Achieve Great Financial Success.**

Defendant Simon is a registered investment advisor with two decades' experience in the financial industry. (ER-148, ¶13.) To differentiate herself from a flooded field of for-profit investment advisors, Simon, who is "known for her investment work," markets herself as "speaking to a new generation" of investors by promoting "socially conscious investments." (ER-148, ¶¶13-14.) She promotes herself as "represent[ing] the next generation of economic movers and shakers." (ER-148, ¶13 n.2.)

To market and sell her "socially conscious"-branded investments, Simon co-founded Defendant Candide Group, LLC, a for-profit California State Registered Investment Advisor. (ER-148, ¶16.) Like Simon, Candide differentiates itself by promoting "socially conscious" investments and attempts to convince investors,

institutions, and banks to divest from companies like CoreCivic and instead invest in the "socially conscious" financial products it sells. (ER-148–49, ¶17.)

Defendants promote their investing services though articles on the "Investing" section of Forbes.com that push "socially conscious" investing, highlight Simon's affiliation with Candide, and link information about their investment offerings. (ER-150, ¶24; ER-193–214, ER-228–33.) Defendants have been remarkably successful doing so—and have reaped financial rewards. (ER-149, ¶¶18-22.) Defendants manage over $40 million of client assets and charge annual fees up to $500,000 or 1.75% of funds managed. (*Id.*) The more money Defendants redirect to their "socially conscious" investments, the more they profit. (ER-149, ¶¶21-22.)

> ## 2. The Trump Administration's "Family Separation Policy" Galvanizes the #FamiliesBelongTogether Movement—But CoreCivic Has Never Housed Separated Children.

In 2018, controversy arose as the Trump Administration announced a "zero tolerance" policy for people crossing the U.S. border unlawfully. (ER-151–52, ¶¶31-32.) As a result, in April and May 2018, nearly 2,000 children were separated from their families and detained. (ER-152, ¶¶33-34.) Photos emerged of children locked in metal cages at U.S. Customs and Border Patrol (CBP) facilities in Clint and McAllen, Texas:



(These are CBP facilities, *not* CoreCivic facilities.)

(ER-152, ¶35.) Immense public outrage followed, united as the #FamiliesBelongTogether movement that aimed to end the Trump Administration's policy of separating children from their parents and separately detaining them. (ER-152–53, ¶¶36-41.)

CoreCivic does *not* operate the Clint or McAllen CBP facilities and does *not* operate—and has *never* operated—any immigration detention facilities for children separated from their parents under the Government's family separation policy. (ER-146, ER-153–54, ¶¶2, 42-44.) As CoreCivic announces on its website: "[w]e don't provide housing for any children who aren't under the supervision of a parent" and "[w]e also don't operate shelters for unaccompanied minors, nor do we operate border patrol facilities." (ER-219.) CoreCivic did not change that policy after the Trump Administration changed *the Government's policy* to separate families.

CoreCivic does not house children separated from their parents at the border and does not house or operate detention facilities for parents separated from their children pursuant to the Government's family separation policy; CoreCivic houses adults irrespective of parental status and has no decision-making authority about what adults the Government detains or when, why, or how the Government detains them. (ER-98:10–99:5; ER-153–154, ER-160, ¶¶42-44, 58; ER-219.)

3. **Defendants Exploit the #FamiliesBelongTogether Movement by Publishing False and Defamatory Statements About CoreCivic in a Series of Articles—to Drive Investments Away from CoreCivic and to Themselves.**

For Defendants, the #FamiliesBelongTogether movement provided an unprecedented business opportunity. (ER-154–59, ¶¶46-57.) Defendants exploited the movement for financial gain by misdirecting public outrage over "kids in cages" to redirect investors' and potential investors' capital to their "socially-conscious" investments. (ER-154, ¶46.) To maximize their returns, Defendants targeted CoreCivic, which has one of the largest market capitalizations in its industry—even though Defendants knew that CoreCivic has never operated immigrant detention facilities for children separated from their parents at the border. (ER-153–55, ER-160–62, ¶¶42-45, 47, 58-68.)

Defendants' campaign against CoreCivic was simple and effective. Through a series of articles on the "Investing" section of Forbes.com, Defendants questioned CoreCivic's financial viability, made false accusations about CoreCivic to fuel

12

public and investor outrage, then plugged their own investment offerings. Specifically, Defendants falsely stated and implied that CoreCivic "operat[ed] immigrant detention facilities for children separated from their parents at the [U.S.] border," that CoreCivic enabled or allowed "abuses inside [those] facilities," and that, to ensure revenue at the expense of blameless children, CoreCivic "spent $25M on lobbying ... to push for harsher criminal justice and immigration laws" to enrich itself by keeping its detention-center "beds [] filled." (ER-153–55, ER-160–62, ¶¶42-47, 58-68, 70-71.)

Defendants began their campaign with a September 25, 2018 article headlined "What Do Big Banks Have to Do With Family Detention? #FamiliesBelongTogether Explains" (the **"September 2018 Article"**). (ER-155, ¶48; ER-193–99.) Defendants connected CoreCivic to the Trump Administration's family separation policy:

> The two largest private prison companies, *CoreCivic* and GeoGroup, have over $2BN a year in ICE contracts, *managing some of the detention centers that have been at the heart of the controversy over the separation of families and incarceration of individuals for crossing the US border.*

(ER-195.) Defendants next invoked the #FamiliesBelongTogether movement:

> Families Belong Together emerged in response to the family detention crisis, starting with the recent separation of families at the border.... There is specifically a ... branch of the coalition *focusing on addressing the role of CoreCivic* and GEO Group, two large for-profit prison corporations *that hold contracts to operate detention centers, and are profiting off the pain and separation of families.*

(ER-195–96.)  Defendants then connected CoreCivic to abuse of children separated from their parents by discussing "numerous cases" of "verbal, physical and sexual abuse of migrant children within detention facilities" in the context of "particular concern over privately managed facilities." (*Id.*)  Finally, Defendants plugged their investment offerings, discussing "the relationship of banks to family detention" and what "investor[s] ... can do about it," and linking information about Defendants and their services.  (*Id.*)

Defendants published their next defamatory article, headlined "JPMorgan Chase Is Done with Private Prisons," on the "Investing" section of Forbes.com on March 5, 2019 (the **"March 2019 Article"**).  (ER-156, ¶51; ER-201–03.) Defendants began the article by reporting JPMorgan's announcement that it would stop financing CoreCivic and, to encourage readers to stop investing in CoreCivic, stated that JPMorgan's move "calls into question the financial viability of the private prison industry," which Defendants reported "has come under fire both by activists and financial analysts."  (ER-201–03.)  To foment outrage against CoreCivic, Defendants then directly connected it to the separation and detention of immigrant children by hyperlinking to (thereby incorporating and republishing) their September 2018 Article,[8] stating that "CoreCivic ha[s] a long history of profiting

---

[8] *See* DE 50 at 10-13; *see also Yeager v. Bowlin*, 693 F.3d 1076, 1082 (9th Cir. 2012) ("[U]nder California law, a statement on a website is ... republished [if] the statement itself is substantively altered or added to, or the website is directed to a new

from mass incarceration," and connecting various banks' withdrawals of funding from CoreCivic to the family separation policy and detention of immigrant children. (ER-201–03.) Defendants then discussed "abuses" inside detention facilities "since news of family separation ... began"—falsely portraying CoreCivic as responsible for those abuses. (ER-212.)

To further fuel outrage against CoreCivic, Defendants then claimed that CoreCivic, to "profit[] from mass incarceration," "spent $25M on lobbying ... to push for harsher criminal justice and immigration laws"—to enrich itself by keeping its detention-center "beds [] filled." (ER-162, ¶71; ER-201–03.) Defendants then described the #FamiliesBelongTogether movement and its work to persuade banks to stop financing CoreCivic. (ER-201–03.) Defendants concluded their article by hyperlinking to Defendants' website and social media promoting their investment services. (ER-156, ¶52, ER-201–03.) To maximize the audience for their March 2019 Article and republished September 2018 Article, Simon published a "tweet" linking to—and incorporating—Defendants' articles alongside the hashtag "#FamiliesBelongTogether" to ensure readers would further connect CoreCivic to the detention of immigrant children. (ER-156–57, ¶54.)

---

audience."); *Enigma Software Grp. USA v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 278 (S.D.N.Y. 2016) (hyperlink republishes linked article if published alongside additional related content); *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 958 (N.D. Cal. 2015) (hyperlink incorporates linked document by reference).

Defendants published their next defamatory article, headlined "GEO Group Runs Out of Banks as 100% of Banking Partners Say 'No' to the Private Prison Sector," on the "Investing" portion of Forbes.com on September 30, 2019 (the **"September 2019 Article"**). (ER-156, ¶51; ER-204–08.) The Article, like its predecessors, began by reporting numerous purported facts about CoreCivic to convey its supposed financial nonviability and encourage investors to divest from it, including statements that, following demands by the #FamiliesBelongTogether movement, "[m]ajor banks ... have [] committed to not renew $2.4B in credit lines and term loans to ... CoreCivic"; "Fitch downgraded CoreCivic from stable to negative"; "stock prices for [CoreCivic] are near historic lows"; "the one-year returns on investors for ... CoreCivic are down nearly 30%"; and there is "an estimated shortfall of 82.4% of all future funding to the [private prison] industry." (ER-204–08.)

Defendants' September 2019 Article—again to foment outrage toward CoreCivic and redirect capital away from it—then provided *"a brief historical recap"* that repeated Defendants' false claims that CoreCivic "spent $25M on lobbying ... to push for harsher criminal justice and immigration laws" to enrich itself. (ER162–63, ¶72, ER-206.) Defendants then encouraged readers to end CoreCivic's supposed efforts to "funnel[] more detainees into their facilities" by closing their accounts with banks that finance CoreCivic. (ER-163, ¶73; ER-206–

07.)  Then, to redirect readers' investments to themselves, Defendants hyperlinked to their website and social media promoting their products and linked Candide's investing disclosures.  (ER-207.)

### 4. CoreCivic Explains to Defendants the Demonstrable Falsity of Their Defamatory "Detaining Separated Children" and "Lobbying" Statements and Demands Their Retraction.

CoreCivic wrote to Defendants to explain the falsity of their allegations and demand their retraction.  (ER-160, ER-167, ¶¶62, 92; ER-215–22.)

*First*, CoreCivic explained that Defendants' statements that CoreCivic "operat[es] immigrant detention facilities for children separated from their parents at the [U.S.] border" (Defendants' **"Detaining Separated Children Statements"**)—including by "connecting banks' withdrawal of funding to the activist campaign against the family separation policy" and by discussing CoreCivic and supposed "particular concern over privately managed facilities" in connection with statements about "children ... be[ing] intentionally separated from their parents and held in detention" and "abuse[d] ... within detention facilities"—are verifiably false.  (ER-160, ER-167, ¶¶62, 92; ER-215–22.)  "CoreCivic does *not* and has *never* operated immigrant detention facilities for children separated from their parents at the border"—as publicly available information confirms.  (ER-146, ER-160, ER-167, ¶¶2, 62, 92; ER-215–22.)

*Second*, CoreCivic explained that Defendants' statements that CoreCivic "spen[t] $25M on lobbying over the past three decades to push for harsher criminal justice and immigration laws" to enrich itself (Defendants' **"Lobbying Statements"**)—including by claiming that CoreCivic's business model depends on detaining as many people as possible, "justly *or* unjustly"—are verifiably false. Publicly-accessible lobbying disclosures available on Senate.gov, Congress.gov, ProPublica, and OpenSecrets.org, the news articles that Defendants cited in their defamatory articles, and disclosures on CoreCivic's website make clear that CoreCivic has *not* "spent $25M on lobbying over the past three decades to push for harsher criminal justice and immigration laws," and "does *not*, under longstanding policy, lobby for or against any policies or legislation that would determine the basis for or duration of an individual's incarceration or detention." (ER-147, ER-153–54, ER-165–67, ¶¶7, 42-44, 83-90; ER-216–19.)

CoreCivic demanded that Defendants retract their false and defamatory Detaining Separated Children and Lobbying Statements. (ER-221.)

5. **Defendants Double-Down on Their Defamation and Admit They Knew Their Statements Implied CoreCivic Was Detaining Children Separated from Their Parents at the Border.**

Defendants refused to retract their defamatory statements and, instead, doubled-down on them. On October 10, 2019, Defendants republished their March 2019 Article and added a "Clarification" that reaffirmed Defendants' false

claims.  Defendants expressly acknowledged that, as pled in CoreCivic's complaint, *"the terminology of 'family separation' tends to focus on the detention of children."* (ER-157–58, ¶55; ER-214.)  *Thus, Defendants expressly admitted that their claims about CoreCivic's involvement in "family separation" could reasonably be understood as conveying that CoreCivic is involved in "the detention of children" separated from their families and admitted that they knew that.*  Defendants further dismissed the truth (that CoreCivic has never "operated immigrant detention facilities for children separated from their parents at the [U.S.] border" or "spent $25M on lobbying ... to push for harsher criminal justice and immigration laws") as something "CoreCivic has stated."  (*Id.*)  And Defendants published additional false statements that CoreCivic helped "write and promote legislation for mandatory minimum sentences, three strikes laws, and 'truth in sentencing' legislation."  (ER-157–58, ER-167–69, ¶¶55, 93-102; ER-209–14, ER-223–27.)

Defendants likewise republished their September 2019 Article on "October 10-11, 2019" with an added "Clarification" that similarly did not retract their false claims.  (ER-228–33.)

> ### 6.  Defendants Again Refuse to Retract Their Defamatory Statements Despite Knowing They Are False.

Following Defendants' republications of their defamatory articles, CoreCivic again wrote to Defendants regarding the falsity of their claims and demanded their

retraction.  As pled in CoreCivic's Complaint, substantial evidence demonstrates that Defendants' defamatory statements are false and that Defendants knew or recklessly disregarded their falsity.  (ER-160–67, ¶¶58-91; ER-223–27.)[9]  But Defendants again refused to retract them.  Because Defendants' defamation caused CoreCivic significant harm, including millions of dollars in lost financing (ER-159, ER-169–72, ¶¶57, 104-17), CoreCivic brought this lawsuit.

## B.  Procedural History.

### 1.  CoreCivic Brings Defamation Claims Based on Defendants' "Detaining Separated Children Statements" _**and**_ Defendants' "Lobbying" Statements."

On March 4, 2020, CoreCivic filed its complaint asserting defamation and defamation-by-implication claims based on Defendants' defamatory statements and implications about CoreCivic in their Forbes.com articles and promotional tweet. (ER-172–91, ¶¶118-46.)

CoreCivic's claims are based on two distinct sets of Defendants' statements and implications.  _**First**_, CoreCivic's claims are based on Defendants' statements

---

[9] _See also, e.g._, ER-181, ER-190, ¶¶126, 141 (Defendants "intentionally disregard[ed]" or "purposefully avoid[ed] ... numerous publicly available sources rebutting their false claims"); ER-148–49, ER-154, ¶¶14, 21-22, 46 (Defendants' preconceived plan to defame CoreCivic to "misdirect[] public outrage" against it and "thereby redirect[] capital" to Defendants' investments); ER-148–49, ER-154, ¶¶14, 21-22, 46 (Defendants' bias against and profit-motive to defame CoreCivic); ER-160–61, ¶¶62-63 (Defendants' refusal to retract accusations despite knowing their falsity).

and implications that CoreCivic "operat[es] immigrant detention facilities for children separated from their parents at the [U.S.] border" (and enabled or allowed "abuses inside [those] facilities"): **Defendants' "Detaining Separated Children Statements."** (ER-172–91, ¶¶118-46.) ***Second***, CoreCivic's claims are based on Defendants' statements and implications that CoreCivic "spent $25M on lobbying ... to push for harsher criminal justice and immigration laws"—to enrich itself and profit by "keep[ing] their prisons filled": **Defendants' "Lobbying Statements."** (ER-172–91, ¶¶118-46; ER-197, ER-201.) CoreCivic pled that Defendants' statements and implications were false, defamatory, and made with knowledge of their falsity. (ER-180–82, ER-189–91, ¶¶121-27, 136-42.)

### 2. Defendants Move to Strike CoreCivic's Complaint Under California's Anti-SLAPP Statute—And Do <u>Not</u> Move in the Alternative to Dismiss Under Rule 12(b)(6).

Defendants filed a Special Motion to Strike CoreCivic's Complaint under California's Anti-SLAPP Statute. (DE 41.) Tacitly acknowledging that it conflicts with the Federal Rules of Civil Procedure (including Rules 8, 12, and 56), Defendants asked the court **<u>not</u>** to apply its statutory text, which requires a motion to strike to be granted unless "*the plaintiff has established* that there is a *probability* that [it] will prevail on the claim," based upon consideration of "the pleadings, *and* supporting and opposing affidavits." (*Compare* Cal. Code Civ. Proc. §425.16(b), *with* DE 41 at 8-9.) Instead, because Defendants only challenged the legal

sufficiency of CoreCivic's Complaint, Defendants asked the Court to "apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." (DE 41 at 8-9.) But **Defendants never moved to dismiss under Rule 12(b)(6)**; Defendants expressly concede they did not do so. (DE 72 at 2 n.1.)

CoreCivic opposed Defendants' Special Motion to Strike on multiple grounds, including on the ground that California's Anti-SLAPP Statute cannot apply in federal court in light of the U.S. Supreme Court's decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010)—as multiple Circuits have held. (*See infra* Argument Part I.)

### 3. Hours After the Hearing on Defendants' Special Motion to Strike, the District Court Grants It in a One-Paragraph Order That Ignores Half of CoreCivic's Claims.

On November 19, 2020, the district court heard oral argument on Defendants' Special Motion to Strike, during which it expressed "concern[] about [California's Anti-SLAPP Statute] applying in federal court." (ER-115:2-4.) Nevertheless, just hours later, the district court issued a one-paragraph Order granting Defendants' Special Motion to Strike:

> A multitude of issues have been tendered on defendants' motion to dismiss and to strike the complaint for defamation. It turns out, however, that **CoreCivic, Inc., did, in fact, operate detention facilities <u>for parents</u> separated from their children pursuant to the Border Patrol's family separation policy.** Thus, even though CoreCivic did not operate the detention facilities in which the children themselves were housed, CoreCivic did house the other half of the afflicted families or at last [*sic*] some of them. **Therefore, the allegedly defamatory**

> ***statements were true enough*** under the First Amendment and under
> California defamation law. Truth being a defense, the complaint is
> DISMISSED WITHOUT LEAVE TO AMEND. It is unnecessary to reach the
> remaining issues tendered.

(ER-139; *see also* ER-140–41.) (Although the court referred to Defendants' "motion

to dismiss" and "dismiss[al]," it later clarified that it struck CoreCivic's complaint

under California's Anti-SLAPP Statute. (*See infra* Part B.4.))

The court's order is problematic in two regards. *First*, in striking CoreCivic's

claims based on Defendants' Detaining Separated Children Statements, the court

incorrectly—and improperly—found as fact that "CoreCivic ... operate[s] detention

facilities for parents separated from their children pursuant to the Border Patrol's

family separation policy." (ER-139.) The court erred as a matter of fact: CoreCivic

does not house children separated from their parents at the border and does not house

or operate detention facilities for parents separated from their children pursuant to

the Government's family separation policy; CoreCivic houses adults irrespective of

parental status and has no decision-making authority about what adults the

Government detains or when, why, or how the Government detains them.

(ER-98:10–99:5; ER-153–154, ER-160, ¶¶42-44, 58; ER-219.) And the court erred

as a matter of law: the court impermissibly adopted Defendants' proffered

interpretation of their Detaining Separated Children Statements and ignored the

statements' reasonable interpretation as conveying that CoreCivic "operat[es]

immigrant detention facilities for children separated from their parents at the [U.S.]

border"—an interpretation that ***Defendants*** readily admitted is reasonable.  (ER-157–58, ¶55, ER-214.)

*Second*, the district court struck CoreCivic's complaint *in its entirety* but completely failed to address CoreCivic's claims based on Defendants' separate Lobbying Statements.  Although it held Defendants' Detaining Separated Children Statements "true enough," it did not even purport to address—much less find "true enough"—Defendants' Lobbying Statements.  (ER-139.)

The court entered Judgment for Defendants that same day.   (ER-138.) CoreCivic filed a Notice of Appeal.  (ER-234–38.)

> ### 4.     The District Court Grants Defendants' Motion for Attorneys' Fees Under the California Anti-SLAPP Statute and Makes Clear It Previously Granted Defendants' Special Motion to Strike Under That Statute—in an Opinion Acknowledging That California's Anti-SLAPP Statute May Not Apply in Federal Court.

After the district court entered judgment, Defendants moved for mandatory attorneys' fees under California's Anti-SLAPP Statute.  (DE 69.)  CoreCivic opposed, again arguing that the Act cannot apply in federal court.  (DE 70 at 7-11.) The district court held a hearing during which it heard argument on whether California's Anti-SLAPP Statute can apply in federal court under *Shady Grove*. (ER-78–137.)

On April 6, 2021, the court issued an Order Granting Defendants' Motion for Attorneys' Fees But Holding in Abeyance Final Calculation. (ER-16–26.) The court's order is noteworthy for multiple reasons.

*First*, the court clarified that notwithstanding the wording of its prior order, it had granted Defendants' Special Motion to Strike under California's Anti-SLAPP Statute—not a motion under Federal Rule 12(b)(6) that Defendants had not filed. (ER-22–23.)

*Second*, the court recognized that in light of *Shady Grove* and its holding that a state law cannot apply in federal court if a valid Federal Rule of Civil Procedure "answers the question in dispute," numerous Circuits have held that California's Anti-SLAPP Statute and "analogous" statutes cannot apply in federal court. (ER-19 (citing cases).) The court then made three key observations about this Circuit's (non)treatment of the issue:

- ***This Court "has not yet expressly decided how* Shady Grove *applies to a state anti-SLAPP statute."*** (ER-20.)

- The only time this Court addressed the question was when it divided four-to-four on whether to grant a petition to rehear *en banc* a case to decide that question, which was not presented to the panel in that case. (ER-20 (citing *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180 (9th Cir. 2013).)

- Although this Court applied California's Anti-SLAPP Statute in *Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*, 890 F.3d 828, 834 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018), ***"Shady Grove *was never mentioned in the opinion"* and *"Shady Grove *also went unmentioned in the appellate briefs."*** (ER-21.)

Nevertheless, the court felt constrained to apply California's Anti-SLAPP Statute—notwithstanding the overwhelming out-of-Circuit caselaw holding it and analogous statutes inapplicable in federal court—because this Court has applied it, even though this Court has not considered whether that application is permissible under *Shady Grove*. (ER-22.) However, the court held in abeyance the calculation of attorneys' fees "[i]n view of the possibility that the [Ninth Circuit] may disagree" and hold the Statute inapplicable, thereby mooting the fee issue. (ER-25.)[10]

CoreCivic's appeal thus presents to this Court for the first time the following question: Can California's Anti-SLAPP Statute apply in federal court under *Shady Grove*? CoreCivic also appeals the district court's striking of its complaint on the merits—but, because Defendants only moved to strike under California's Anti-SLAPP Statute and did not move to dismiss under Federal Rule 12(b)(6) (even in the alternative), if the Court holds California's Anti-SLAPP Statute inapplicable, it need not reach those merits and should remand for discovery to proceed.

## SUMMARY OF ARGUMENT

The district court reversibly erred in three ways. ***First***, the district court erred by applying California's Anti-SLAPP Statute. Although this Court held twenty

---

[10] Defendants and CoreCivic filed protective Notices of Appeal from the court's fee order in case this Court held appeals therefrom ripe notwithstanding the fee calculation being held in abeyance. (ER-4–12.) This Court dismissed those protective cross-appeals for lack of jurisdiction.

years ago in *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999), that the Statute can apply in federal court, it did so because, it concluded, the Act did not "directly collide" with and thus could "exist side by side" with Federal Rules of Civil Procedure 8, 12, and 56, and *Erie*'s twin purposes favored its application. *Id.* at 972. But the U.S. Supreme Court changed that analytical framework in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010). There, it held that if a state law and valid Federal Rule of Civil Procedure "answer the same question," then the state law cannot apply—full stop. *Id.* at 398-99. Courts "***do not*** wade into *Erie*'s murky waters unless the federal rule is inapplicable or invalid." *Id.* at 398. In so holding, *Shady Grove* abrogated *Newsham*. And as numerous Circuits have since held, California's Anti-SLAPP Statute and "analogous" state statutes cannot apply in federal court under *Shady Grove*. This Court has yet to decide that question, and should join its sister Circuits in so holding.

***Second***, the district court erred by choosing among reasonable interpretations of Defendants' Detaining Separated Children Statements and holding them "true enough" based on Defendants' proffered, made-for-litigation interpretation of them. At the pleading stage, courts may only determine "whether a [defamatory] statement is reasonably susceptible of ***an*** interpretation which implies a provably false assertion of actual fact"; if it is capable of conveying a false fact, then the jury must

27

"determine whether such an interpretation was in fact conveyed." *Bently Rsrv. LP v. Papaliolios*, 218 Cal. App. 4th 418, 428 (2013); *Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1040 (9th Cir. 1998). The district court held Defendants' defamatory statements about CoreCivic operating immigrant detention facilities "true enough" by adopting Defendants' proffered interpretation that they just "generally link CoreCivic to a broader movement against ... incarcerating immigrants and separating families." (DE 41 at 11; ER-139.) But as CoreCivic pled—and Defendants expressly admitted—***"the terminology of 'family separation' tends to focus on the detention of children."*** (ER-155, ER-157–58, ER-172–80, ER-182–89, ¶¶48, 55, 120, 135; ER-193–99, ER-209–14.) Thus, Defendants' defamatory statements were at least reasonably capable of conveying that CoreCivic "operat[es] immigrant detention facilities for children separated from their parents at the [U.S.] border"— which CoreCivic pled (and Defendants do not dispute) is false. (ER-146, ER-153–54, ¶¶2, 42-44.) Moreover, the district court improperly and incorrectly found as fact at the pleading stage that "CoreCivic ... operate[s] detention facilities for parents separated from their children pursuant to the Border Patrol's family separation policy." (ER-139.) The pleadings and record make clear that CoreCivic does not house children separated from their parents at the border and does not house or operate detention facilities for parents separated from their children pursuant to the Government's family separation policy; CoreCivic houses adults irrespective of

parental status and has no decision-making authority about what adults the Government detains or when, why, or how the Government detains them. (ER-98:10–99:5; ER-153–154, ER-160, ¶¶42-44, 58; ER-219.)

*Third*, the district court erred by striking CoreCivic's Complaint in its entirety because it failed to address CoreCivic's defamation claims based on Defendants' Lobbying Statements. A district court reversibly errs if it dismisses an action but "fail[s] to address" all of plaintiff's claims; in such circumstances, the proper course is to "remand ... to the district court for it to consider [plaintiff's] claim[] in the first instance." *E.g.*, *Riley v. Kernan*, 815 F. App'x 163, 165 (9th Cir. 2020); *M.M. v. Lafayette Sch. Dist.*, 767 F.3d 842, 862 (9th Cir. 2014). The district court's one-paragraph Order striking CoreCivic's Complaint makes clear that it did not address CoreCivic's claims based on Defendants' false and defamatory statements about CoreCivic's lobbying activities.

## STANDARD OF REVIEW

This Court reviews *de novo* questions of law, including statutory construction and "whether the district court properly interpreted and applied [a] state statute." *Invesco High Yield Fund v. Jecklin*, --- F. App'x ----, 2021 WL 2911739, at *1 (9th Cir. 2021) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000)); *City of Oakland v. BP PLC*, 969 F.3d 895, 903 (9th Cir. 2020).

If this Court were to hold California's Anti-SLAPP Statute applicable in federal court under *Shady Grove*—as explained below, it should hold, as a matter of first impression, that it is not—it would review *de novo* the "grant of defendants' motion to strike under [that] statute." *Barrett v. Negrete*, 126 F. App'x 816, 817 (9th Cir. 2005). Defendants first bear the burden of showing that the Act applies. *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 819 (1994). If Defendants make that showing, the Court looks at the merits of CoreCivic's claim—**_"the minimal merit prong."_** *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 675 (2005). Under this outdated framework in federal court, where, as here, defendants challenge only the legal sufficiency of a claim, the Court "appl[ies] the [FRCP] 12(b)(6) standard." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018).

Under Rule 12(b)(6), the complaint must be construed liberally and the "'court must accept as true all facts alleged [therein] and draw all reasonable inferences in favor of the plaintiff.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018). A claim need only be "plausible," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)—**_"a low standard,"_** *Shaver v. Operating Eng'rs Local 428 Pension Tr. Fund*, 332 F.3d 1198, 1203 (9th Cir. 2003). This "'does **not** impose a probability requirement,'" and "'a well-pleaded complaint may proceed

even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556. Courts "cannot resolve" factual questions or make "credibility determinations." *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1055 (9th Cir. 2008); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## ARGUMENT

I. **The District Court Reversibly Erred by Applying California's Anti-SLAPP Statute Because That Statute Cannot Apply in Federal Court Under the U.S. Supreme Court's Decision in *Shady Grove*—As Numerous Circuits Have Recognized (But This Court Has Yet to Consider).**

The district court reversibly erred by applying California's Anti-SLAPP Statute (California Code of Civil Procedure §425.16). Although this Court held twenty years ago in *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999), that the Statute can apply in federal court, it did so under a no-longer-valid test for determining when state statutes can apply in federal court. In *Newsham*, this Court held that California's Anti-SLAPP Statute applied in federal court because, it concluded, the Act did not "directly colli[de]" with and thus could "exist side by side" with Federal Rules of Civil Procedure 8, 12, and 56, and *Erie*'s twin purposes were served by its application. *Id.* at 972.

But eleven years after *Newsham*, the U.S. Supreme Court changed the relevant inquiry in its seminal decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010). In *Shady Grove*, the Supreme Court

held that if a state law and valid Federal Rule of Civil Procedure "answer the same question," then the Federal Rule applies and the state law cannot apply—full stop. *Id.* at 398-99. In undertaking that inquiry, courts "*do **not*** wade into *Erie*'s murky waters unless the federal rule is inapplicable or invalid." *Id.* at 398. In so holding, *Shady Grove* abrogated *Newsham*.

**Following Shady Grove*, five Circuits have considered whether California's Anti-SLAPP Statute or an "analogous" statute can apply in federal court under Shady Grove *and have held (in thorough, well-reasoned opinions) that it cannot.* *See La Liberte v. Reid*, 966 F.3d 79, 86-88 & n.1 (2d Cir. 2020) (California's Anti-SLAPP Statute cannot apply in federal court); *Klocke v. Watson*, 936 F.3d 240, 244-49 (5th Cir. 2019) (Texas's Anti-SLAPP Statute); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1349-57 (11th Cir. 2018) (Georgia's Anti-SLAPP Statute); *Los Lobos Renewable Power, LLC v. AmeriCulture, Inc.*, 885 F.3d 659, 673 (10th Cir. 2018) (New Mexico's Anti-SLAPP Statute); *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1333-37 (D.C. Cir. 2015) (Kavanaugh, J.) (D.C.'s Anti-SLAPP Statute). *And another Circuit has affirmed a district court decision holding the same. See Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1050 (N.D. Ill. 2013), *aff'd*, 791 F.3d 729 (7th Cir. 2015) (Washington's Anti-SLAPP Statute); *see also Lampo Grp., LLC v. Paffrath*, No. 18-cv-1402, 2019 WL 3305143, at *3 (M.D. Tenn. July 23, 2019) (California's Anti-SLAPP Statute). By contrast,

only the First Circuit has held otherwise, but its opinion, issued just months after *Shady Grove*, misread a one-Justice concurrence as the majority opinion.  S*ee Godin v. Schencks*, 629 F.3d 79, 88-90 (1st Cir. 2010); *see also Intercon Sols.*, 969 F. Supp. 2d at 1050 (explaining that *Godin* relied on Justice Stevens' single-Justice concurrence, not the majority opinion (Parts I and II-A of Justice Scalia's opinion), and the Court's prevailing (plurality) opinion rejected the portion of Justice Stevens' concurrence *Godin* relied on).

This Court, perhaps surprisingly, has not considered whether California's Anti-SLAPP Statute can apply in federal court under *Shady Grove*.  That question is squarely presented here.  As explained below, the Panel has full authority to answer it, and *Shady Grove* compels it to hold that California's Anti-SLAPP Statute ***cannot*** apply in federal court.

### A. This Court Holds in *Newsham*—Pre-*Shady Grove*—That California's Anti-SLAPP Statute Can Apply in Federal Court.

In this Court's Anti-SLAPP Statute jurisprudence, all roads lead back to *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999).  There, in 1999, this Court considered as a question "of first impression" the "issue of the application of [California's Anti-SLAPP Statute] in federal court." *Id.* at 971.

The Court first explained the operation of the Statute, which is triggered if a defendant makes "a prima facie showing that the [claim against him] arises from any

act by [him] 'in furtherance of [his] right of petition or free speech ... in connection

with a public issue.'"  *Id.* (quoting §425.16(b)(1)).  Once a defendant makes that

showing, ***"[t]he burden then shifts to the [] plaintiff" to "establish[] that there is a***

***probability that [he] will prevail on the claim,"*** *id.*; §425.16(b)(1), and "that

[defendant's] 'purported constitutional defenses are not applicable to the case as a

matter of law or by a prima facie showing of facts which, if accepted by the trier of

fact, would negate such defenses,'" *Newsham*, 190 F.3d at 971 (quoting *Wilcox v.

Superior Court*, 27 Cal. App. 4th 809, 824 (1994)).  "To make this determination,

***the court 'shall consider the pleadings*** <u>***and***</u> ***supporting and opposing affidavits***

stating the facts upon which the liability or defense is based.'"  *Id.*  A "prevailing

party on a special motion to strike is ***entitled to [mandatory] attorney's fees and***

***costs.***"  *Id.* (citing §425.16(c)(1)).

The Court then assessed whether California's Anti-SLAPP Statute could

apply in federal court.  The *Newsham* Court—eleven years before *Shady Grove*—

laid out the framework it used for its inquiry:

> In determining whether the relevant provisions of California's Anti-
> SLAPP statute may properly be applied in federal court, we begin by
> asking whether such an application would result in a "direct collision"
> with the Federal Rules. ... In the absence of a "direct collision" between
> a state enactment and the Federal Rules, we must make the "typical,
> relatively unguided *Erie* choice."

*Id.* at 972-73 (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749-50 (1980);

*Hanna v. Plumer*, 380 U.S. 460, 471 (1965)).

The *Newsham* Court then applied that test. Although the Court expressly recognized that California's Anti-SLAPP Statute and "[Federal] Rules 8, 12, and 56" share a ***"commonality of purpose,"*** it held that there is no "direct collision" between them because California's Anti-SLAPP Statute "and Rules 8, 12, and 56 can exist side by side." *Id.* at 972. The Court reasoned that, if successful, a special motion to strike under the Act will end the case, and, "[i]f unsuccessful, the litigant remains free to bring a Rule 12 motion to dismiss, or a Rule 56 motion for summary judgment." *Id.* Thus, it concluded, despite the "commonality of purpose" of the Statute and "[Federal] Rules 8, 12, and 56," "there is no 'direct collision.'" *Id.* at 972-73. The *Newsham* Court then made "the 'typical relatively unguided *Erie* choice,'" and concluded that "the twin purposes of the *Erie* rule—'discouragement of forum-shopping and avoidance of inequitable administration of the law'—favor application of California's Anti-SLAPP statute." *Id.* at 973 (quoting *Hanna*, 380 U.S. at 468, 471).

A few years after *Newsham*, this Court reaffirmed and expanded its holding in *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003)—another pre-*Shady Grove* decision. There, the Court held that "because California law recognizes the protection of the anti-SLAPP statute as substantive immunity from suit, this Court, sitting in diversity, will do so as well" and, thus, the denial of a special motion to strike under California's Anti-SLAPP Statute is immediately appealable in federal

court under the collateral order doctrine.  *Id.* at 1025-26.[11]  Since then, this Court has cited back to *Newsham* (or *Batzel* citing *Newsham*) to support its application of California's Anti-SLAPP Statute in federal court.  *See, e.g.*, *Clifford v. Trump*, 818 F. App'x 746, 747 (9th Cir. 2020) (citing *Newsham*: "We have long held that ... California's anti-SLAPP law appl[ies] in federal court."); *RLI Ins. Co. v. Langan Eng'g, Env't, Surveying & Landscape Architecture, D.P.C.*, 834 F. App'x 362, 363 (9th Cir. 2021) (citing *Batzel*: "We have consistently exercised jurisdiction over denials of anti-SLAPP motions to strike pursuant to the collateral order doctrine.").

## B.     The U.S. Supreme Court's Seminal *Shady Grove* Decision Changes the Inquiry for Determining Whether State Laws Can Apply in Federal Court.

Eleven years after *Newsham*, the U.S. Supreme Court, in its seminal decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), materially changed the framework for determining whether a state law can apply in federal court.  *E.g.*, *Stender v. Archstone-Smith Operating Tr.*, 958 F.3d 938, 945-46 (10th Cir. 2020) ("*Shady Grove* was a turning point in the Supreme Court's doctrine regarding the relationship between the Federal Rules and state law.").  Under *Shady Grove*, "the relevant inquiry isn't whether the federal and state

---

[11] *Batzel*'s holding is independently problematic:  The California Supreme Court has since squarely held that California's Anti-SLAPP Statute is <u>not</u> *"a substantive rule of law that grants absolute immunity,"* but rather *only "a procedural device* for screening out meritless claims." *Jarrow Formulas, Inc. v. LaMarche*, 74 P.3d 737, 743 (Cal. 2003); *Flatley v. Mauro*, 139 P.3d 2, 18 (Cal. 2006).

rules can coexist"—as the *Newsham* Court considered—"but whether [valid] Federal Rules 'answer[] the question in dispute.'" *E.g.*, *Gallivan v. United States*, 943 F.3d 291, 296 (6th Cir. 2019).

In *Shady Grove*, the U.S. Supreme Court addressed the question whether a New York law prohibiting class actions seeking penalties or statutory minimum damages applied in federal court sitting in diversity to preclude it from entertaining a class action under Federal Rule of Civil Procedure 23 where the claims sought penalties or statutory minimum damages. 559 U.S. at 396 & n.1. The district court held that the state law applied in federal court and, based on it, dismissed the case. *Id.* at 397. The Second Circuit affirmed. *Id.* at 398. Like this Court in *Newsham*, it held that because the state law did not "cause a direct collision with" Rule 23, and because "the twin aims of *Erie*" would be served, the state law applied in federal court. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 549 F.3d 137, 143-45 (2d Cir. 2008).

The Supreme Court reversed, holding that the New York law at issue ***cannot*** apply in federal court. *Shady Grove*, 559 U.S. at 416. In so doing, the Supreme Court set forth a new—or at least clarified—framework for determining when state laws can apply in federal court:

> *We must first determine whether [a Federal Rule of Civil Procedure] answers the question in dispute. If it does, it governs—[state] law notwithstanding—unless it exceeds statutory authorization or*

Congress's rulemaking power. We do not wade into *Erie*'s murky waters unless the federal rule is inapplicable or invalid.

*Id.* at 398.

With regard to the specific question to be decided, the Supreme Court majority (in Part II-A of Justice Scalia's opinion) explained that "[t]he question in dispute is whether [plaintiff's] suit may proceed as a class action." *Id.* The majority then held that "[Federal] Rule 23 provides an answer. It states that '[a] class action may be maintained' if two conditions are met," *id.* (quoting Fed. R. Civ. P. 23), such that it answers the question: When may a class action be brought in federal court? *See id.* Because the state law at issue "attempts to answer the same question"—by stating that the plaintiff's lawsuit "may *not* be maintained as a class action" because of the relief sought (notwithstanding satisfaction of the Rule 23 criteria)—"it cannot apply in diversity suits unless Rule 23 is ultra vires," which it is not. *Id.* at 398-99.

The majority emphasized that if a valid federal rule "answers the question in dispute, it governs" regardless of the "policies [the state law] pursue[s]" or the "subjective intention of the state legislature" in enacting it. *Id.* at 404-06; *Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1203 (10th Cir. 2012) ("If a federal rule applies, we need not embark upon an analysis of the state's purpose in passing the conflicting state law." (citing *Shady Grove*)). Although some Justices (including Justice Stevens in his one-Justice concurrence) would have instead looked to the substantive or procedural nature of the state law at issue to determine what law to

apply, *Shady Grove*, 559 U.S. at 417 (Stevens, J., concurring), only the test announced by Justice Scalia received the endorsement of five Justices, *id*. at 395 ("Justice Scalia ... delivered the opinion of the Court with respect to Parts I and II-A[.]"). Thus under the Supreme Court's majority decision, this Court "need not grapple with what 'substantive' means. In effect, the line between substantive and procedural is irrelevant so long as a Federal Rule is construed broadly enough to win, regardless of whatever a statute says." *Pledger v. Lynch*, --- F.4th ----, 2021 WL 3072861, at *16 (4th Cir. 2021). That is so under *Shady Grove* even if the result "could lead to forum shopping." *Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540, 546 (6th Cir. 2014).

> **C.** **Following *Shady Grove*, Numerous Circuits Hold That California's Anti-SLAPP Statute and "Analogous" Statutes Cannot Apply in Federal Court; The Only Circuit to Hold Otherwise Mistakenly Relied on a One-Justice Concurrence, Not the Majority Opinion in *Shady Grove*.**

Since *Shady Grove*, many Circuits have held that California's Anti-SLAPP Statute and "anti-SLAPP statutes [] analogous to California's" cannot apply in federal court—including in a D.C. Circuit opinion authored by now-Justice Kavanaugh. *See La Liberte v. Reid*, 966 F.3d 79, 86-88 & n.1 (2d Cir. 2020) (California); *Klocke v. Watson*, 936 F.3d 240, 244-49 (5th Cir. 2019) (Texas); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1349-57 (11th Cir. 2018) (Georgia); *Los Lobos Renewable Power, LLC v. AmeriCulture, Inc.*, 885 F.3d 659,

673 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 591 (2018) (New Mexico); *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1333-37 (D.C. Cir. 2015) (Kavanaugh, J.) (D.C.); *Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1042 (N.D. Ill. 2013), *aff'd*, 791 F.3d 729 (7th Cir. 2015) (Washington); *see also Lampo Grp., LLC v. Paffrath*, No. 18-cv-1402, 2019 WL 3305143, at *3 (M.D. Tenn. July 23, 2019) (California). ***In fact, every Circuit that has considered whether a state Anti-SLAPP Statute can apply under the* Shady Grove *majority's framework has held that it cannot, and not a single Circuit has held that an Anti-SLAPP Statute can apply in federal court under that framework.***[12] If this Court were to hold otherwise, it would create a clear Circuit-split—and it would stand alone.

The reason is simple. As these courts have explained, California's Anti-SLAPP Statute (and "analogous" statutes) "answer[s] the same question[s] as" Federal Rules 8, 11, 12, and 56—but "require[s] [a] plaintiff to make a showing that the Federal Rules do not require." *E.g.*, *La Liberte*, 966 F.3d at 87.

As the Second Circuit explained in addressing the very California Anti-SLAPP Statute at issue here, the Statute "requires outright dismissal unless ***the plaintiff*** can '***establish[] a probability*** that he or she will prevail on the claim,'" and

---

[12] Only the First Circuit has held otherwise but it mistakenly relied on a single-Justice concurrence in *Shady Grove*, not the majority opinion. *See Godin v. Schencks*, 629 F.3d 79, 88-90 (1st Cir. 2010); *Intercon Sols.*, 969 F. Supp. 2d at 1053.

thereby "establishes the circumstances under which a court must dismiss a plaintiff's claim before trial." *Id.* (quoting Cal. Code Civ. Proc. §425.16(b)(3)). But Rule 8 provides that a complaint need only "contain ... a short and plain statement of the claim showing that the pleader is entitled to relief," Fed R. Civ. P. 8(a)(2); *Carbone*, 910 F.3d at 1350. And under Rule 12(b)(6), a plaintiff need only "allege 'enough facts to state a claim to relief that is ***plausible*** on its face'"—which "'***does not impose a probability requirement at the pleading stage***,'" *La Liberte*, 966 F.3d at 87 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Moreover, ***Defendants—not Plaintiffs***—bear the burden of demonstrating that their Federal Rule 12(b)(6) motion to dismiss should be granted, *Raymond v. Avectus Healthcare Sols., LLC*, 859 F.3d 381, 383 (6th Cir. 2017); *Stavrianoudakis v. U.S. Dep't of Fish & Wildlife*, 435 F. Supp. 3d 1063, 1100 (E.D. Cal. 2020). California's Anti-SLAPP Statute "'abrogates that [standard] ... by requiring ***the plaintiff*** to establish that success is not merely plausible but ***probable***,'" ***and*** by changing the party who bears the burden of demonstrating entitlement to relief from defendant to plaintiff. *La Liberte*, 966 F.3d at 87 (quoting *Carbone*, 910 F.3d at 1353); *accord Abbas*, 783 F.3d at 1333-35.

As the Second Circuit further explained, California's Anti-SLAPP Statute also conflicts with Federal Rule 56 because it "nullifies" plaintiff's entitlement under Rule 56 to "proceed to trial by identifying ***any*** genuine dispute of material fact" by

instead "'***requiring the plaintiff to prove that it is likely,*** and not merely possible, that a reasonable jury would find in his favor.'" *La Liberte*, 966 F.3d at 87 (quoting *Carbone*, 910 F.3d at 1353). In sum, "[t]ogether, Rules 12 and 56 express with 'unmistakable clarity' that proof of probability of success on the merits is not required in federal courts to avoid pretrial dismissal." *Id.*

And that is not all. Federal Rules 11 and 12 answer the same question regarding awards of attorneys' fees as California's Anti-SLAPP Statute: When are defendants entitled to attorneys' fees if plaintiff's complaint fails to state a claim upon which relief can be granted? Under Federal Rules 11 and 12, the answer is: only if plaintiff's claims were frivolous or presented for an improper purpose. Fed. R. Civ. P. 11(b). But California's Anti-SLAPP Statute answers that same question differently by requiring a mandatory fee award even if plaintiff's claims were not frivolous or presented for an improper purpose. Cal. Code Civ. P. §425.16(b)-(c). Moreover, even to the extent that the California legislature's purpose in enacting California's Anti-SLAPP Statute of preventing "baseless lawsuit[s]," *id.* §425.16(a), is considered (and it should not be, *see Shady Grove*, 559 U.S. at 404-06), the Supreme Court has explained that Rule 11 has the same purpose: "the central purpose of Rule 11 is to deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990); *accord McComas v. Wallace*, No. 10-

cv-2622, 2011 WL 1230044, at *2 (N.D. Cal. Mar. 30, 2011).  As the Tenth Circuit

explained:

> Anyone who believes that a federal district court is ill-equipped to deal swiftly and harshly with the sort of lawsuits described in [an anti-SLAPP Statute] absent application of [the Statute] is seriously mistaken.  Those litigants and lawyers who seek to circumvent application of the [] anti-SLAPP statute by filing a baseless SLAPP lawsuit in federal district court are in for a rude awakening.

*Los Lobos*, 885 F.3d at 673 n.8.

Simply put, Rules 8, 11, 12, and 56 answer the same question as California's

Anti-SLAPP Statute, and, accordingly, it cannot apply in federal court.

### D.    The Panel Has the Authority to Hold California's Anti-SLAPP Statute Inapplicable in Federal Court Under *Shady Grove*.

Perhaps surprisingly, even though *Shady Grove* squarely abrogated *Newsham*,

this Court has yet to revisit it and **no panel of this Court (or the en banc Court) has**

**considered California's Anti-SLAPP Statute under Shady Grove*'s framework.***

The only time this Court addressed whether California's Anti-SLAPP Statute can

apply in federal court under *Shady Grove*'s framework was on consideration of a

petition to rehear *en banc* a case to decide that question, **which was neither**

**presented to the panel nor the en banc Court in the parties' briefing**.  *See Makaeff*

*v. Trump Univ., LLC*, 736 F.3d 1180 (9th Cir. 2013).  But this Court evenly split

four-to-four and did not hear the case to decide the question.  And although this

Court has applied California's Anti-SLAPP Statute since *Shady Grove*, it has done

so without even citing *Shady Grove*. For example, in *Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*, 890 F.3d 828 (9th Cir. 2018), this Court applied California's Anti-SLAPP Statute without citing or even mentioning *Shady Grove*. "In fact, *Shady Grove* also went unmentioned in the appellate briefs." (ER-21.)

The Panel thus has full authority to hold that California's Anti-SLAPP Act cannot apply in federal court under *Shady Grove*. Although bound by Circuit precedent, the Panel is not bound by precedent that is "abrogated or overruled by the Supreme Court." *Erotic Serv. Provider Legal Educ. & Rsch. Project v. Gascon*, 880 F.3d 450, 458 n.1 (9th Cir.), *amended*, 881 F.3d 792 (9th Cir. 2018). Notably, for such abrogation, "the issues decided by the higher court need not be identical in order to be controlling. Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (*en banc*); *accord Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1123 (9th Cir. 2002) ("[W]e may overrule prior circuit authority without taking the case *en banc* when 'an intervening Supreme Court decision undermines an existing precedent of the Ninth Circuit[.]'"). Similarly, the Panel is not bound by this Court's post-*Shady Grove* applications of California's Anti-SLAPP Statute because the question of the Statute's applicability in federal court under *Shady Grove* was not

"presented [in those cases] for review." *Chen v. Mukasey*, 524 F.3d 1028, 1033 (9th Cir. 2008).

**E.** **_Shady Grove_ Requires the Panel to Hold That California's Anti-SLAPP Statute Cannot Apply in Federal Court—And Compelling Reasons Exist to Do So.**

Simply put, *Shady Grove* dictates the outcome here. But even if it did not, many additional considerations support the conclusion that this Court should join its sister Circuits in holding that California's Anti-SLAPP Statute (and analogous statutes) cannot apply in federal court.

**This Court Has Already Held Many Parts of California's Anti-SLAPP Statute Inapplicable.** Since *Newsham*—even before *Shady Grove*—this Court has already held that numerous parts of California's Anti-SLAPP Statute cannot apply in federal court because they (in pre-*Shady Grove* terms) "directly colli[de]" with provisions of the Federal Rules. The Court's efforts to Band-Aid the Statute's infirmities just highlight the fact that it simply cannot apply in federal court under *Shady Grove*. Examples are many:

- *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001): Section 425.16(g), which limits discovery upon the filing of a special motion to strike, cannot apply in federal court because it "collide[s]" with the discovery-permitting provisions of Rule 56.

- *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004): California courts' construction of California's Anti-SLAPP Statute as prohibiting courts from granting leave to amend a complaint upon granting a special motion to strike, cannot apply in federal court because it

"would directly collide with [FRCP] 15(a)'s policy favoring liberal amendment."

- *Sarver v. Chartier*, 813 F.3d 891, 900 (9th Cir. 2016): Section 425.16(f), which imposes timing requirements on filing special motions to strike, cannot apply in federal court because it "directly collide[s] with the more permissive timeline FRCP 56 provides for the filing of a motion for summary judgment."

- *Hyan v. Hummer*, 825 F.3d 1043, 1046 (9th Cir. 2016): Section 425.15(i), which makes immediately appealable orders granting special motions to strike that do not dispose of an entire case, cannot apply in federal court because it conflicts with Rule 54(b), under which such orders are "not final" or appealable.

Finally, in *Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*, 890 F.3d 828 (9th Cir. 2018), this Court acknowledged that California's Anti-SLAPP Statute's burden-shifting framework and requirement that a motion to strike must be granted unless the "*plaintiff [can] establish[]* that there is a *probability* that [she] will prevail on [her] claim," based on "the pleadings *and* supporting and opposing affidavits" "colli[de] ... with federal procedural rules." *Id.* at 833. Thus, the Court held that, to avoid that "collision," it would evaluate special motions to strike challenging the legal sufficiency of a complaint under the Federal Rule 12(b)(6) standard and motions challenging the factual sufficiency of a complaint under the Federal Rule 56 standard. *Id.* at 833-34.

Notably, the Court neither cited nor considered *Shady Grove* in its decision. Nor was it asked to, as the parties did not even mention *Shady Grove* in their briefs. (ER-21–22.) And the *Planned Parenthood* Court's non-*Shady Grove* solution of

avoiding conflict between federal and state law by re-writing a state statute to impute federal Rule 12(b)(6) and Rule 56 procedural standards was itself problematic, as the U.S. and California Supreme Courts have since made clear.  *See Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) ("[I]t is not the proper role of the courts to rewrite [] laws."); *Iancu v. Brunetti*, 139 S. Ct. 2294, 2301 (2019) (Courts may not rewrite laws even to avoid constitutional issues.); *Wilson v. Cable News Network, Inc.*, 7 Cal. 5th 871, 892 (2019) ("[Courts] cannot [] rewrite [a] statute to create an exception the Legislature has not enacted.").   But the significance of *Planned Parenthood* is that this Court has already held a(nother) key provision of California's Anti-SLAPP Statute incompatible with the Federal Rules—thus further underscoring that Act's inapplicability in federal court under *Shady Grove*, and further showing that history has undermined *Newsham*'s goal of uniform application of California's Anti-SLAPP Statute in state and federal court to avoid forum shopping.

*__Newsham__ **Itself Supports Holding the Statute Inapplicable Under** __Shady Grove__.*  Although *Newsham* held California's Anti-SLAPP Statute applicable in federal court under the pre-*Shady Grove* conflicts framework, it acknowledged ***"the commonality of purpose"*** between California's Anti-SLAPP Statute and Federal Rules 8, 12, and 56, *Newsham*, 190 F.3d at 972—that, in *Shady Grove*'s terms, they "answer the same question."  *See La Liberte*, 966 F.3d at 88.

**<u>This Court's Split *Makaeff* Decision Supports Holding the Statute</u>**

**<u>Inapplicable.</u>** Although this Court split four-to-four on whether to hear *Makaeff v. Trump University, LLC*, 736 F.3d 1180 (9th Cir. 2013), *en banc* to decide whether California's Anti-SLAPP Statute can apply in federal court under *Shady Grove*, analysis of the Court's split opinions shows that they weigh in favor of **<u>in</u>**applicability. The four Judges who would have held the Act inapplicable would have done so on the same reasoned basis as this Court's sister Circuits. But the four Judges who would have applied the Act would have done so because, according to them, "California's anti-SLAPP statute, by creating a separate and additional theory upon which certain kinds of suits may be disposed of before trial, supplements rather than conflicts with the Federal Rules." *Id.* at 1182 (Wardlaw, Callahan, Fletcher, and Gould, JJ., concurring). But that is the exact reasoning rejected in *Shady Grove*. *E.g.*, 559 U.S. at 398-400. Further, those Judges argued it was necessary to apply California's Anti-SLAPP Statute in federal court "because the contrary result would create a circuit split." *Makaeff*, 736 F.3d at 1180. But history has shown the opposite is true: holding California's Anti-SLAPP Statute applicable in federal court would create, not prevent, a circuit split.

Moreover, Judge Gould, who voted in favor of applying the Act in *Makaeff*, has since expressly "recede[d] from" that position. *Travelers Cas. Ins. Co. of Am. v. Hirsh*, 831 F.3d 1179, 1186 (9th Cir. 2016) (Gould, J., concurring) ("I am now

persuaded by Judge Kozinski's reasoning, as well as that of the D.C. Circuit in [*Abbas*], that an anti-SLAPP motion has no proper place in federal court in light of the Federal Rules of Civil Procedure.").

**Many Ninth Circuit Judges Have Already Called to Revisit *Newsham* After *Shady Grove*.**  Many Judges on this Court have recognized that California's Anti-SLAPP Statute cannot apply in federal court under *Shady Grove*:

- *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 835 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018) (Gould, J., concurring; joined by Murguia, J.) ("Although the procedure followed in this case to allow an interlocutory appeal of a denial of an anti-SLAPP motion is clearly permitted by our past precedent, [*Batzel*], I write separately in this concurrence to challenge the appropriateness of our court reviewing denials of anti-SLAPP motions to strike on interlocutory appeal.").

- *Fallay v. First Am. Specialty Ins. Co.*, 706 F. App'x 439, 441 (9th Cir. 2017) (Kozinski, J., concurring) ("[A]s I've explained at length elsewhere, our decision to allow anti-SLAPP motions into federal court conflicts with Supreme Court precedent and permits California to override the Federal Rules of Civil Procedure—a hijacking of Congress' plenary power. ... Two decades with anti-SLAPP motions as a scourge on our docket is penance enough for our blunder in *Newsham*.  It's high time for a course correction.").

- *Travelers Cas. Ins. Co. of Am. v. Hirsh*, 831 F.3d 1179, 1182 (9th Cir. 2016) (Kozinski, J., concurring; joined by Gould, J.) ("I write once again to emphasize that our caselaw is wrong:  These interloping state procedures have no place in federal court.").

- *Travelers*, 831 F.3d at 1186 (Gould, J., concurring) ("Although I previously joined in part the *Batzel* precedent ... I am now persuaded by Judge Kozinski's reasoning, as well as that of the D.C. Circuit in [*Abbas*], that an anti-SLAPP motion has no proper place in federal court in light of the Federal Rules of Civil Procedure, and also that the collateral order

doctrine does not provide a good fit for immediate appeal of denial of anti-SLAPP motions. Having recognized that there was error in the position that I previously joined, I recede from it.").

- *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 272-75 (9th Cir. 2013) (Kozinski, C.J., concurring; joined by Paez, J.) (detailed analysis why "*Newsham* is wrong and should be reconsidered").

- *Makaeff*, 715 F.3d at 275-76 (Paez, J., concurring; joined by Kozinski, C.J.) ("I, too, believe that [*Newsham*], is wrong and should be reconsidered. I agree that California's anti-SLAPP statute is 'quintessentially procedural,' and its application in federal court has created a hybrid mess that now resembles neither the Federal Rules nor the original state statute.")

\*\*\*

Under *Shady Grove*, California's Anti-SLAPP Statute simply cannot apply in federal court, and this Panel should now hold so. And because Defendants did not move to dismiss under Rule 12(b)(6)—even in the alternative—this Court need not reach the merits of Defendants' inapplicable motion to strike. The Court should remand with instructions to proceed with discovery.

## II. The District Court Reversibly Erred in Striking CoreCivic's Claims on the Merits.

Even if California's Anti-SLAPP Statute could apply in federal court (it cannot), the district court nevertheless erred in striking CoreCivic's complaint on the merits by **(A)** impermissibly choosing among reasonable interpretations of Defendants' Detaining Separated Children Statements—a task reserved for the jury—and holding them "true enough" based on Defendants' proffered, made-for-

litigation interpretation; and **(B)** entirely failing to address CoreCivic's defamation claims based on Defendants' Lobbying Statements. But this Court need not reach these issues unless it concludes California's Anti-SLAPP Statute does apply in federal court.

A. **The District Court Erroneously Held Defendants' Detaining Separated Children Statements "True Enough"—by Improperly Selecting Among Multiple Reasonable Interpretations of Those Statements and Improperly Finding Facts.**

The district court reversibly erred in striking CoreCivic's defamation claims based on Defendants' Detaining Separated Children Statements because it impermissibly disregarded reasonable interpretations of those statements (that make them false) and instead accepted Defendants' proffered interpretation to hold them "true enough."

At the Rule 12(b)(6) stage, a court's role in assessing falsity is extremely limited. Whereas "it is a question of law for the court whether a challenged statement is reasonably susceptible of an interpretation which implies a provably false assertion of actual fact," it is up to the "jury"—not the court—"to determine whether such an interpretation was in fact conveyed." *Bently Rsrv. LP v. Papaliolios*, 218 Cal. App. 4th 418, 428 (2013). Stated differently,"[w]hether a statement is 'reasonably susceptible of [a false, defamatory] interpretation is a question for the court'; whether it 'was so understood is a question for the jury.'" *Balla v. Hall*, 59 Cal. App. 5th 652, 686 (2021), *rev. denied* (Apr. 14, 2021) (quoting

*MacLeod v. Tribune Publ'g Co.*, 343 P.2d 36, 41 (Cal. 1953)). "So long as the publication is reasonably susceptible of a defamatory meaning, a factual question for the jury exists." *Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1040 (9th Cir. 1998). "It is error for a court to rule that a publication cannot be defamatory on its face when by any reasonable interpretation the language is susceptible of a defamatory meaning." *Selleck v. Globe Int'l, Inc.*, 166 Cal. App. 3d 1123, 1131 (1985).

Moreover, "the issue of whether a statement is true or substantially true" is "a factual one." *Hughes v. Hughes*, 122 Cal. App. 4th 931, 936-37 (2004); *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1228 (7th Cir. 1993) ("Ordinarily the question whether a defamatory work is substantially true although erroneous in some details is for the jury."); *Global Relief Found., Inc. v. N.Y. Times Co.*, 390 F.3d 973, 987 (7th Cir. 2004) ("The defense of substantial truth is normally a jury question."). Thus, the "court must accept as true" CoreCivic's allegations of falsity. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018); *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993) ("On a motion to dismiss a libel suit ... the court must of course credit the plaintiff's allegation of the factual falsity of a statement.").

Here, CoreCivic not only pled *that* Defendants' Detaining Separated Children Statements "falsely convey that CoreCivic operates immigrant detention facilities

for children separated from their parents at the border" (ER-180, ER-189, ¶¶121, 136), but pled *how* they can more than reasonably be interpreted as conveying that false fact.

Defendants conveyed that false fact by claiming that "CoreCivic ... manag[es] some of the detention centers that have been at the heart of the controversy over the separation of families and incarceration of individuals for crossing the US border" and has "profit[ed] off the pain and separation of families"—and expressly stating that **"*the terminology of 'family separation' tends to focus on the detention of children.*"** (ER-155, ER-157–58, ER-161, ER-172–80, ¶¶48, 55, 66, 120, 135; ER-193–99, ER-214.) A picture is worth a thousand words, and Defendants drove home their connection of CoreCivic to family separation *and* "the detention of children" visually, discussing CoreCivic alongside a photo of protestors holding baby clothes and a sign reading "I AM A CHILD":



(ER-194.)

Defendants further discussed CoreCivic in the context of "numerous cases" of "verbal, physical and sexual abuse of migrant children within detention facilities" and "particular concern over privately managed facilities." (ER-172–80, ER-182–89, ¶¶120, 135; ER-196.) Defendants stated that CoreCivic "has come under fire []by activists," including the "#FamiliesBelongTogether movement," which, Defendants explain, "emerged in response to the family detention crisis, starting with the recent separation of families at the border"—a crisis that Defendants conceded ***tends to focus on the detention of children.*** (ER-155, ER-157–58, ER-172–80, ER-182–89, ¶¶48, 55, 120, 135; ER-193–99, ER-214.) And Defendants

connected various banks' withdrawals of funding from CoreCivic to the detention of immigrant children.  (ER-156, ¶51; ER-200–03.)

Defendants thereby accused CoreCivic of "operat[ing] immigrant detention facilities for children separated from their parents at the border," even though "CoreCivic does not and has never operated immigration detention facilities for children separated from their parents at the border."  (ER-146, ER-153–54, ER-181, ER-190, ¶¶2, 42-44, 123, 138.)  CoreCivic thus more than adequately pled that Defendants' Detaining Separated Children Statements are false.

The district court, however, held those statements "true enough" by improperly and incorrectly finding as fact that CoreCivic may operate detention facilities housing *parents* separated from their children pursuant to the Government's family separation policy:

> It turns out, however, that CoreCivic, Inc., did, in fact, operate detention facilities for parents separated from their children pursuant to the Border Patrol's family separation policy.  Thus, even though CoreCivic did not operate the detention facilities in which the children themselves were housed, CoreCivic did house the other half of the afflicted families or at least some of them.  Therefore, the allegedly defamatory statements were true enough[.]

(ER-139.)

In so holding, the district court reversibly erred in two ways.  *First*, it accepted Defendants' proffered, made-for-litigation interpretation of their defamatory statements: that they just "generally link CoreCivic to a broader movement against

private prison operators [and] to an overall criticism of incarcerating immigrants and separating families." (DE 41 at 11.) But even if that interpretation were reasonable—and it is not because, as Defendants wrote (before litigation) in their "Clarification" to their March 2018 Article, "the terminology of 'family separation' *tends to focus on the detention of children*" (ER-157–58, ER-172–80, ER-182–89, ¶¶55, 120, 135; ER-214)—the district court erred by accepting it. The court may not choose among reasonable interpretations of Defendants' defamatory statements. The court may only determine "whether a challenged statement is reasonably susceptible of ***an*** interpretation which implies a provably false assertion of actual fact," after which only ***the jury—not the court—***may "determine whether such an interpretation was in fact conveyed." *Bently*, 218 Cal. App. 4th at 428; *accord Balla*, 59 Cal. App. 5th at 686; *MacLeod*, 343 P.2d at 41; *Selleck*, 166 Cal. App. 3d at 1131; *Kaelin*, 162 F.3d at 1040. The district court thus usurped the role of the jury and reversibly erred.

*Second*, the court impermissibly found as fact that "CoreCivic ... operate[s] detention facilities for parents separated from their children pursuant to the Border Patrol's family separation policy." (ER-139.) But that fact is *not* true and has no basis in the pleadings. Rather, the pleadings and record make clear that CoreCivic does not house children separated from their parents at the border and does not house or operate detention facilities for parents separated from their children pursuant to

the Government's family separation policy; CoreCivic houses adults irrespective of parental status and has no decision-making authority about what adults the Government detains or when, why, or how the Government detains them. (ER-98:10–99:5; ER-153–154, ER-160, ¶¶42-44, 58; ER-219.)

## B. The District Court Reversibly Erred Because It Failed to Consider CoreCivic's Defamation Claims Based on Defendants' Lobbying Statements.

The district court also reversibly erred in striking CoreCivic's Complaint in its entirety because it failed to address CoreCivic's defamation and defamation-by-implication claims based on Defendants' Lobbying Statements.

This Court's precedent is clear: A district court reversibly errs if it dismisses an action in its entirety but "fail[s] to address"—or even does "not explicitly address"—all of the plaintiff's claims; in such circumstances the proper course is to "remand ... to the district court for it to consider the claim in the first instance." *E.g.*, *Riley v. Kernan*, 815 F. App'x 163, 165 (9th Cir. 2020) ("[T]he district court did not address [plaintiff's] ... retaliation claim[s].... We remand for ... the district court to consider [plaintiff's] ... retaliation claims in the first instance."); *M.M. v. Lafayette Sch. Dist.*, 767 F.3d 842, 862 (9th Cir. 2014), *as amended* (Oct. 1, 2014) (reversing and remanding; district court "erred by not explicitly addressing [plaintiffs'] §504 claim"); *Tecza v. Univ. of S.F.*, 532 F. App'x 667, 669 (9th Cir. 2013) ("[T]he district court failed to address [plaintiff's invasion-of-privacy] claim in its decision. ... We

thus remand to the district court for its consideration of this claim in the first instance."); *Sherman v. Network Com. Inc.*, 346 F. App'x 211, 214 (9th Cir. 2009) ("For reasons not clear from the record, the district court failed to address this claim. ... As a result, we remand to the district court to address it in the first instance."); *Brown v. Potter*, 457 F. App'x 668, 673-74 (9th Cir. 2011) ("Nor did the district court discuss [plaintiff's intimidation claim] when dismissing [his] complaint. Since we do not review issues raised for the first time on appeal, a reversal and remand is appropriate." (citation omitted)); *see also Planned Parenthood v. U.S. Dep't of Health & Hum. Servs*., 946 F.3d 1100, 1110 (9th Cir. 2020) ("In general, an appellate court does not decide issues that the trial court did not decide.").[13]

As detailed in CoreCivic's Complaint, CoreCivic pled defamation and defamation-by-implications claims based on **two distinctsets of statements** published by Defendants. CoreCivic pled that in addition to falsely stating and implying that CoreCivic "operat[es] immigrant detention facilities for children separated from their parents at the [U.S.] border" (**Defendants' "Detaining Separated Children Statements"**) (ER-146, ER-154–62, ER-172–80, ER-182–89, ¶¶2, 46-48, 54-56, 58-68, 120-21, 135-36), Defendants also **separately** defamed

---

[13] *See also, e.g.*, *Davis v. Flores*, 484 F. App'x 108, 110 (9th Cir. 2012); *Bryant v. Ochoa*, 460 F. App'x 624, 625 (9th Cir. 2011); *Holestine v. Cal. Dep't of Corr.*, 32 F. App'x 372, 372 (9th Cir. 2002); *Unanka v. DEA*, 65 F.3d 176 (9th Cir. 1995); *In re Intermagnetics Am., Inc.*, 926 F.2d 912, 918 (9th Cir. 1991).

CoreCivic by falsely stating and implying that CoreCivic "spen[t] $25M on lobbying over the past three decades to push for harsher criminal justice and immigration laws" to enrich itself by keeping its detention-center "beds [] filled" (Defendants' **"Lobbying Statements"**) (ER-146, ER-162–67 ER-172–80, ER-182–89, ¶¶3, 69-91, 120-21, 135-36).

Moreover, not only did CoreCivic's complaint set forth Defendants' false and defamatory Lobbying Statements (ER-172–80, ER-182–89), but CoreCivic's complaint discussed them, in detail, completely separately from Defendants' false statements about detaining minors separated from their parents:

- "Second, ... Defendants have recklessly and repeatedly promoted the myth that the company lobbies to incarcerate as many people as possible for as long as possible." (ER-146, ¶3.)

- "Defendants launched a smear campaign against CoreCivic on a second front: falsely accusing the company of lobbying for harsher sentences and immigration laws." (ER-162, ¶69.)

- "For example, in their [March 2019 Article], Defendants wrote:

   GEO Group and CoreCivic have a long history of profiting from mass incarceration: they make money when beds are filled, justly or unjustly, which is why they've spent $25M on lobbying over the past three decades to push for harsher criminal justice and immigration laws." (ER-162, ¶71.)

- "Defendants also published this false claim in their [September 2019 Article]:

   Given [CoreCivic's and GEO Group's] business model depends on keeping a consistent number of people incarcerated, it's been speculated and critiqued that this is

why GEO Group and CoreCivic have spent $25M on lobbying over the past three decades to push for harsher criminal justice and immigration laws." (ER-162–63, ¶72.)

- "In publishing their false claims about CoreCivic's lobbying activity, Defendants knew and recklessly disregarded the facts." (ER-164, ¶79; *see also* ER-164–67, ¶¶80-91 (citing evidence Defendants' knew their Lobbying Statements were false).)

- "Defendants' statements were intended to and did falsely convey that CoreCivic operates immigrant detention facilities for children separated from their parents at the border ***and*** that CoreCivic lobbies for harsher sentencing and immigration laws." (ER-180, ER-189, ¶¶121, 136.)

Notably, Defendants devoted a distinct portion of their Special Motion to Strike to arguing that their "Lobbying Statements Are Not Actionable." (DE 41 at 8, 15-18), and CoreCivic specifically responded that they *are* actionable. (DE 50 at 18-20.)

CoreCivic likewise pled facts demonstrating that Defendants' Lobbying Statements are false: "Under long-standing policy, CoreCivic does not lobby for harsher sentencing or immigration laws." (ER-146, ER-181, ER-190, ¶¶123, 138.) Moreover, as CoreCivic explained below, those statements are not non-actionable "pure" opinion because "a reasonable factfinder could conclude that the[y] 'impl[y] an assertion of objective fact.'" *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990). Defendants' presented their Lobbying Statements as *facts*, including as part of "a brief historical recap" (ER-206); they have no hyperbolic or figurative language; and they are capable of being proven true or false: Either CoreCivic

"spent $25M on lobbying over the past three decades to push for harsher criminal justice and immigration laws" to enrich itself by keeping its detention-center "beds [] filled," or it did not. Tellingly, Defendants admitted below that their Lobbying Statements contain "factual assertions" and even argued that they are true. (DE 41 at 11-13, 16.) And CoreCivic further explained that those statements can have a defamatory meaning. Indeed, Defendants' entire purpose in publishing them was to "expose[] [CoreCivic] to hatred, contempt, ridicule, or obloquy," or "cause[] [CoreCivic] to be shunned or avoided," or "tend to injure [CoreCivic] in [its] [business]," Cal. Civ. Code §45—to cause public outrage against CoreCivic to redirect investors' and potential investors' capital to Defendants' "socially-conscious" investments. (ER-146, ER-154, ¶¶2, 46.)

Nevertheless, the district court wholly failed to consider CoreCivic's claims based on Defendants' Lobbying Statements in its one-paragraph Order striking CoreCivic's complaint. The district court only addressed CoreCivic's claims based on Defendants' Housing Separated Children Statements, concluded that *those* statements are "true enough," and struck CoreCivic's entire complaint. Because the district court "failed to address" CoreCivic's claims based on Defendants' Lobbying Statements, it reversibly erred and "remand ... for it to consider [the] claim in the first instance" is required. *E.g.*, *Riley*, 815 F. App'x at 165; *M.M.*, 767 F.3d at 862;

*Tecza*, 532 F. App'x at 669; *Sherman*, 346 F. App'x at 214; *Brown*, 457 F. App'x at 673-74.

## CONCLUSION

Plaintiff-Appellant CoreCivic respectfully requests that the Court reverse the district court's judgment and remand this case with instructions to proceed to discovery.

Date:  August 16, 2021     Respectfully Submitted,

           */s/ Elizabeth M. Locke, P.C.*
          ELIZABETH M. LOCKE, P.C.
          JOSEPH R. OLIVERI
          DANIEL D. MAULER
          CLARE LOCKE LLP
          10 Prince Street
          Alexandria, VA 22314
          (202) 628-7400
          libby@clarelocke.com
          joe@clarelocke.com
          dan.mauler@clarelocke.com

          *Attorneys for Plaintiff-Appellant*
          *CoreCivic, Inc.*

# CERTIFICATE OF COMPLIANCE

## 1.     Type Volume

[X]     This document complies with type-volume limits of FRAP 32(a)(7)(B) and Circuit Rule 32-1(a) because, excluding the parts of the document exempted by FRAP 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, statutory addendum, signature block, certificates of counsel, and proof of service), this document contains <u>13,999</u> words.

## 2.     Typeface and Type-Style

[X]     This document complies with the typeface requirements of FRAP 32(a)(5)(A) and the type-style requirements of FRAP 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.


  */s/ Joseph. R. Oliveri*
Joseph. R. Oliveri
*Attorney for Plaintiff-Appellant CoreCivic, Inc.*

Dated:  August 16, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2021, I caused the foregoing Principal Brief of Plaintiff-Appellant CoreCivic, Inc. to be electronically filed with the Clerk of the Court by using the Court's CM/ECF system.  I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated:  August 16, 2021          By:    */s/ Elizabeth M. Locke, P.C.*

                                               Elizabeth M. Locke, P.C.
                                               *Attorney for Plaintiff-Appellant*
                                               *CoreCivic, Inc.*

No. 20-17285

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CORECIVIC, INC.

*Plaintiff-Appellant*

v.

CANDIDE GROUP, LLC AND
MORGAN SIMON

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of California at San Francisco
(Case No. 3:20-cv-03792-WHA, Hon. William Alsup)

# STATUTORY ADDENDUM TO
# PRINCIPAL BRIEF OF PLAINTIFF-APPELLANT CORECIVIC, INC.

ELIZABETH M. LOCKE, P.C.
JOSEPH R. OLIVERI
DANIEL D. MAULER
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
(202) 628-7400
libby@clarelocke.com
joe@clarelocke.com
dan.mauler@clarelocke.com

*Attorneys for Plaintiff-Appellant
CoreCivic, Inc.*

August 16, 2021

# TABLE OF CONTENTS

I.    California Code of Civil Procedure §425.16: Anti-SLAPP Motion .............. 1

II.   Federal Rule of Civil Procedure 8:  General Rules of Pleading ................... 4

III.  Federal Rule of Civil Procedure 11:  Signing Pleadings, Motions, and Other Papers; Representations to the Court; Sanctions.................................. 7

IV.   Federal Rule of Civil Procedure 12:  Defenses and Objections: When and How Presented; Motion for Judgment on the Pleadings; Consolidating Motions; Waiving Defenses; Pretrial Hearing ............................................ 10

V.    Federal Rule of Civil Procedure 56:  Summary Judgment .......................... 14

CERTIFICATE OF SERVICE.............................................................................. 17

# I.  California Code of Civil Procedure §425.16: Anti-SLAPP Motion

(a)  The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly.

(b)

(1)  A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

(2)  In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

(3)  If the court determines that the plaintiff has established a probability that he or she will prevail on the claim, neither that determination nor the fact of that determination shall be admissible in evidence at any later stage of the case, or in any subsequent action, and no burden of proof or degree of proof otherwise applicable shall be affected by that determination in any later stage of the case or in any subsequent proceeding.

(c)

(1)  Except as provided in paragraph (2), in any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5.

(2)     A defendant who prevails on a special motion to strike in an action subject to paragraph (1) shall not be entitled to attorney's fees and costs if that cause of action is brought pursuant to Section 6259, 11130, 11130.3, 54960, or 54960.1 of the Government Code. Nothing in this paragraph shall be construed to prevent a prevailing defendant from recovering attorney's fees and costs pursuant to subdivision (d) of Section 6259, or Section 11130.5 or 54960.5, of the Government Code.

(d)     This section shall not apply to any enforcement action brought in the name of the people of the State of California by the Attorney General, district attorney, or city attorney, acting as a public prosecutor.

(e)     As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

(f)     The special motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper. The motion shall be scheduled by the clerk of the court for a hearing not more than 30 days after the service of the motion unless the docket conditions of the court require a later hearing.

(g)     All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. The court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision.

(h)     For purposes of this section, "complaint" includes "cross-complaint" and "petition," "plaintiff" includes "cross-complainant" and "petitioner," and "defendant" includes "cross-defendant" and "respondent."

(i)     An order granting or denying a special motion to strike shall be appealable under Section 904.1.

(j)

   (1)     Any party who files a special motion to strike pursuant to this section, and any party who files an opposition to a special motion to strike, shall, promptly upon so filing, transmit to the Judicial Council, by e-mail or facsimile, a copy of the endorsed, filed caption page of the motion or opposition, a copy of any related notice of appeal or petition for a writ, and a conformed copy of any order issued pursuant to this section, including any order granting or denying a special motion to strike, discovery, or fees.

   (2)     The Judicial Council shall maintain a public record of information transmitted pursuant to this subdivision for at least three years, and may store the information on microfilm or other appropriate electronic media.

## II.    Federal Rule of Civil Procedure 8:  General Rules of Pleading

(a)    **Claim for Relief.**  A pleading that states a claim for relief must contain:

    (1)    a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

    (2)    a short and plain statement of the claim showing that the pleader is entitled to relief; and

    (3)    a demand for the relief sought, which may include relief in the alternative or different types of relief.

(b)    **Defenses; Admissions and Denials.**

    (1)    **In General.**  In responding to a pleading, a party must:

        (A)    state in short and plain terms its defenses to each claim asserted against it; and

        (B)    admit or deny the allegations asserted against it by an opposing party.

    (2)    **Denials--Responding to the Substance.**  A denial must fairly respond to the substance of the allegation.

    (3)    **General and Specific Denials.**  A party that intends in good faith to deny all the allegations of a pleading--including the jurisdictional grounds--may do so by a general denial.  A party that does not intend to deny all the allegations must either specifically deny designated allegations or generally deny all except those specifically admitted.

    (4)    **Denying Part of an Allegation.**  A party that intends in good faith to deny only part of an allegation must admit the part that is true and deny the rest.

    (5)    **Lacking Knowledge or Information.**  A party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial.

(6) **Effect of Failing to Deny.** An allegation--other than one relating to the amount of damages--is admitted if a responsive pleading is required and the allegation is not denied. If a responsive pleading is not required, an allegation is considered denied or avoided.

(c) **Affirmative Defenses.**

(1) **In General.** In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including:

- accord and satisfaction;

- arbitration and award;

- assumption of risk;

- contributory negligence;

- duress;

- estoppel;

- failure of consideration;

- fraud;

- illegality;

- injury by fellow servant;

- laches;

- license;

- payment;

- release;

- res judicata;

- statute of frauds;

- statute of limitations; and

- waiver.

    (2) **Mistaken Designation.** If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so.

(d) **Pleading to Be Concise and Direct; Alternative Statements; Inconsistency.**

    (1) **In General.** Each allegation must be simple, concise, and direct. No technical form is required.

    (2) **Alternative Statements of a Claim or Defense.** A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

    (3) **Inconsistent Claims or Defenses.** A party may state as many separate claims or defenses as it has, regardless of consistency.

(e) **Construing Pleadings.** Pleadings must be construed so as to do justice.

## III. Federal Rule of Civil Procedure 11: Signing Pleadings, Motions, and Other Papers; Representations to the Court; Sanctions

(a) **Signature.** Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name--or by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number. Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit. The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention.

(b) **Representations to the Court.** By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

    (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

    (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

    (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

    (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

(c) **Sanctions.**

    (1) **In General.** If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly

responsible for a violation committed by its partner, associate, or employee.

(2) **Motion for Sanctions.** A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

(3) **On the Court's Initiative.** On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).

(4) **Nature of a Sanction.** A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

(5) **Limitations on Monetary Sanctions.** The court must not impose a monetary sanction:

(A) against a represented party for violating Rule 11(b)(2); or

(B) on its own, unless it issued the show-cause order under Rule 11(c)(3) before voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned.

(6) **Requirements for an Order.** An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction.

(d) **Inapplicability to Discovery.** This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37.

**IV.** **Federal Rule of Civil Procedure 12: Defenses and Objections: When and How Presented; Motion for Judgment on the Pleadings; Consolidating Motions; Waiving Defenses; Pretrial Hearing**

(a) **Time to Serve a Responsive Pleading.**

    (1) **In General.** Unless another time is specified by this rule or a federal statute, the time for serving a responsive pleading is as follows:

        (A) A defendant must serve an answer:

            (i) within 21 days after being served with the summons and complaint; or

            (ii) if it has timely waived service under Rule 4(d), within 60 days after the request for a waiver was sent, or within 90 days after it was sent to the defendant outside any judicial district of the United States.

        (B) A party must serve an answer to a counterclaim or crossclaim within 21 days after being served with the pleading that states the counterclaim or crossclaim.

        (C) A party must serve a reply to an answer within 21 days after being served with an order to reply, unless the order specifies a different time.

    (2) **United States and Its Agencies, Officers, or Employees Sued in an Official Capacity.** The United States, a United States agency, or a United States officer or employee sued only in an official capacity must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the United States attorney.

    (3) **United States Officers or Employees Sued in an Individual Capacity.** A United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the officer or employee or service on the United States attorney, whichever is later.

(4) **Effect of a Motion.** Unless the court sets a different time, serving a motion under this rule alters these periods as follows:

   (A) if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action; or

   (B) if the court grants a motion for a more definite statement, the responsive pleading must be served within 14 days after the more definite statement is served.

(b) **How to Present Defenses.** Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

   (1) lack of subject-matter jurisdiction;

   (2) lack of personal jurisdiction;

   (3) improper venue;

   (4) insufficient process;

   (5) insufficient service of process;

   (6) failure to state a claim upon which relief can be granted; and

   (7) failure to join a party under Rule 19.

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

(c) **Motion for Judgment on the Pleadings.** After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings.

(d) **Result of Presenting Matters Outside the Pleadings.** If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented

to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

(e)  **Motion for a More Definite Statement.**  A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.  The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.  If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

(f)  **Motion to Strike.**  The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  The court may act:

   (1)  on its own; or

   (2)  on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

(g)  **Joining Motions.**

   (1)  **Right to Join.**  A motion under this rule may be joined with any other motion allowed by this rule.

   (2)  **Limitation on Further Motions.**  Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

(h)  **Waiving and Preserving Certain Defenses.**

   (1)  **When Some Are Waived.**  A party waives any defense listed in Rule 12(b)(2)-(5) by:

      (A)  omitting it from a motion in the circumstances described in Rule 12(g)(2); or

(B) failing to either:

    (i) make it by motion under this rule; or

    (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.

(2) **When to Raise Others.** Failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised:

    (A) in any pleading allowed or ordered under Rule 7(a);

    (B) by a motion under Rule 12(c); or

    (C) at trial.

(3) **Lack of Subject-Matter Jurisdiction.** If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.

(i) **Hearing Before Trial.** If a party so moves, any defense listed in Rule 12(b)(1)-(7)--whether made in a pleading or by motion--and a motion under Rule 12(c) must be heard and decided before trial unless the court orders a deferral until trial.

# V.    Federal Rule of Civil Procedure 56:  Summary Judgment

(a)   **Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

(b)   **Time to File a Motion.** Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.

(c)   **Procedures.**

    (1)   **Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

        (A)   citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

        (B)   showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

    (2)   **Objection That a Fact Is Not Supported by Admissible Evidence.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

    (3)   **Materials Not Cited.** The court need consider only the cited materials, but it may consider other materials in the record.

    (4)   **Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

(d) **When Facts Are Unavailable to the Nonmovant.**  If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

   (1)   defer considering the motion or deny it;

   (2)   allow time to obtain affidavits or declarations or to take discovery; or

   (3)   issue any other appropriate order.

(e) **Failing to Properly Support or Address a Fact.**  If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

   (1)   give an opportunity to properly support or address the fact;

   (2)   consider the fact undisputed for purposes of the motion;

   (3)   grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or

   (4)   issue any other appropriate order.

(f) **Judgment Independent of the Motion.**  After giving notice and a reasonable time to respond, the court may:

   (1)   grant summary judgment for a nonmovant;

   (2)   grant the motion on grounds not raised by a party; or

   (3)   consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

(g) **Failing to Grant All the Requested Relief.**  If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact--including an item of damages or other relief--that is not genuinely in dispute and treating the fact as established in the case.

(h) **Affidavit or Declaration Submitted in Bad Faith.**  If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely

for delay, the court--after notice and a reasonable time to respond--may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result.  An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2021, I caused the foregoing Statutory Addendum to Principal Brief of Plaintiff-Appellant CoreCivic, Inc. to be electronically filed with the Clerk of the Court by using the Court's CM/ECF system. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated:  August 16, 2021          By:      */s/ Elizabeth M. Locke, P.C.*
                                          Elizabeth M. Locke, P.C.