No. 20-17285

---

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

CORECIVIC, INC.,

*Plaintiff-Appellant,*

v.

CANDIDE GROUP, LLC; and
MORGAN SIMON,

*Defendants-Appellees.*

---

On Appeal from United States District Court
U.S. District Court for Northern California, San Francisco
The Honorable William Alsup
Civ. No. 3:20-cv-03792-WHA

---

**CORRECTED** BRIEF OF *AMICI CURIAE*
MEMBERS OF "PROTECT THE PROTEST" TASK FORCE ("PTP")
IN SUPPORT OF DEFENDANTS-APPELLEES SEEKING AFFIRMANCE
**(Change made only to Appendix A)**

---

Lauren C. Regan
The Civil Liberties Defense Center
1430 Willamette St. #359
Eugene, Oregon 97401
(541) 687-9180
lregan@cldc.org

## RULE 28(a)(2)(B) DISCLOSURE STATEMENT

*Amici Curiae* are members of Protect the Protest ("PTP"), a task force of legal defense nonprofit organizations, each of which certifies it has no parent corporation and has not issued any shares of stock to any publicly held corporation.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................iv

IDENTITY & INTERESTS OF *AMICI CURIAE* .......................................... 1

INTRODUCTION .................................................................................... 4

ARGUMENT........................................................................................... 7

    I.      APPELLANT'S DEFAMATION CLAIMS ARE A
           QUINTESSENTIAL "SLAPP" SUIT .......................................... 7

    II.    THE MOTION-TO-STRIKE PROVISION OF CALIFORNIA'S
           ANTI-SLAPP LAW APPLIES TO FEDERAL DIVERSITY
           CLAIMS ................................................................................. 10

           A.  The motion-to-strike provision of the California anti-
               SLAPP law does not conflict with federal rules .................... 11

           B.  The motion-to-strike provision is substantive under *Erie* 13

           C.  This Court should decline to follow the analysis of other
                federal circuits that have concluded that state anti-SLAPP
                dismissal provisions do not apply in federal court .................. 15

CONCLUSION ..................................................................................... 18

APPENDIX A -- SPECIFIC IDENTITIES AND INTERESTS OF *AMICI
CURIAE* "PROTECT THE PROTEST" TASK FORCE............................. 19

CERTIFICATE OF COMPLIANCE (WORD COUNT) ........................... 24

CERTIFICATE OF SERVICE ................................................................. 25

# TABLE OF AUTHORITIES

## Cases

Abbas v. Foreign Policy Group, 783 F.3d 1328 (D.C. Cir. 2015) ......... 15, 16

Adelson v. Harris, 774 F.3d 803 (2014) ...................................................... 15

Braun v. Chronicle Publ'g Co., 52 Cal. App. 4th 1036 (1997) ...................... 8

Carbone v. Cable News Network, 910 F.3d 1345 (11th Cir. 2018) ...... 15, 16

DC Comics v. Pac. Pictures Corp., 706 F.3d 1009 (9th Cir. 2013) .............. 7

Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1838) ............................. 10, 13, 14

Godin v. Schencks, 629 F.3d 79 (1st Cir. 2010) .................................... 13, 15

Hanna v. Plumer, 380 U.S. 460 (1965) ................................................. 10, 14

Henry v. Lake Charles Am. Press, LLC, 566 F.3d 164 (5th Cir. 2009) ...... 15

Klocke v. Watson, 936 F.3d 240 (5th Cir. 2019) .................................. 15, 16

Los Lobos Renewable Power, LLC v. Americulture, Inc., 885 F.3d 659 (10th Cir. 2018) ................................................................................................. 15

Makaeff v. Trump University, LLC, 736 F.3d 1180 (9th Cir. 2013) ........... 13

Planned Parenthood Fed'n of Am., Inc. v. Ctr for Med. Progress, 890 F.3d 828 (9th Cir. 2018) ..................................................................................... 11

Sarver v. Chartier, 813 F.3d 891 (9th Cir. 2016) ........................................ 4

Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393 (2010) ....................................................................................... 10, 12-14, 16

U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963 (9th Cir. 1999) ............................................................................................... 5, 11-15

Verizon Delaware v. Covad Communications, 377 F.3d 1081 (9th Cir. 2004) .................................................................................................. 11

Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097 (9th Cir. 2003) ........... 11, 14

Walker v. Armco Steel Corp., 446 U.S. 740 (1980) .................................... 12

**Statutes**

California Code of Procedure (C.C.P.) 425.16 ................. 4, 5, 6, 8 ,9, 13, 14

**Rules**

Fed. R. Civ. Proc. 12.................................................................12-14, 16, 17

Fed. R. Civ. Proc. 56................................................................ 12, 13, 16, 17

**Journal Articles**

George Pring, *SLAPPs: Strategic Lawsuits against Public Participation*, 7 PACE ENVTL L. REV. 3, 4 (September 1989) .......................................................... 7

**IDENTITY & INTEREST OF *AMICI CURIAE***

*Amici curiae* are members of "Protect the Protest" (PTP) Task Force, a coalition of nonprofit nongovernmental human rights, environmental, civil rights, and free speech organizations that have joined together to provide direct representation and other forms of advocacy protecting the First Amendment rights of public interest advocates against the threat of Strategic Lawsuits Against Public Participation ("SLAPP suits"). A more detailed description of *Amici* is set forth in Appendix A.

*Amici*, members of PTP, have substantial experience representing individuals and groups who have been "SLAPPed." PTP's members have defended activists from the oil and energy industry's attempts to use RICO-based SLAPPs to attack and silence people and groups who are attempting to protect land, water, and Indigenous rights from exploitation and corporate profiteering.[1] SLAPPs are not limited to environmental activism, and PTP's members have provided legal defense to nonprofit organizations, activists, community organizers, media organizations, and journalists in SLAPP cases around the country. *Amici* have successfully defended citizens and groups from bullying lawsuits, advocate for anti-SLAPP

---

[1] *How a Corporate Assault on Greenpeace is Spreading,* BLOOMBERG BUSINESSWEEK, https://www.bloomberg.com/news/articles/2017-08-28/how-a-corporate-assault-on-greenpeace-is-spreading (last visited September 29, 2021).

laws, and educate activists and lawyers nationally on how to avoid and defend against SLAPPs. PTP also actively engages in SLAPP policy discussions and advocates for the adoption of Anti-SLAPP laws at the federal level, as well as the state level. Recently PTP's members assisted with the drafting of Anti-SLAPP laws or amendments to laws in Texas, Kentucky, Virginia, and Colorado.[2]

*Amici* have relevant, first-hand knowledge of the consequences of abusive SLAPP lawsuits, which have the purpose and effect of chilling important perspectives on issues of significant public concern. California's Anti-SLAPP statute is one of the strongest such laws in the country. *Amici* write to contextualize the protections afforded by that statute to citizens of California engaged in the exercise of their First Amendment rights, to explain why such protection is crucially needed, and to urge the Court to uphold the applicability of the motion-to-strike provision of the California anti-SLAPP statute to diversity claims in federal court.

Plaintiff-Appellant Corecivic invites this Court to disregard over twenty years of precedent regarding the applicability of California's anti-SLAPP law in

---

[2] Joe Mullin, *Critical Free Speech Protections Are Under Attack in Texas*, ELECTRONIC FRONTIER FOUNDATION (March 14, 2019), https://www.eff.org/deeplinks/2019/03/critical-free-speech-protections-are-under-attack-texas (last visited September 29, 2021); *Factsheet: Kentucky's Anti-SLAPP Legislation*, Protect The Protest, http://www.protecttheprotest.org/wp-content/uploads/2020/02/Kentucky-SLAPP-Factsheet.pdf (last visited September 29, 2021).

federal court. *Amici curiae* write to urge the Court to reject this invitation, and to uphold the application of the state of California's anti-SLAPP statute to federal diversity cases. In doing so, this court will uphold the right of the public to engage in protected activity in furtherance of the right of advocacy on issues of public interest.

*Amici* have obtained consent to file this brief from counsel for the Appellees and counsel for Appellant, pursuant to Federal Rule of Appellate Procedure 29(a)(2).

In accordance with Federal Rule of Appellate Procedure 29(a)(4)(E), *amici* state that no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money intended to fund preparing or submitting this brief; and no person, other than *amici* or their counsel, contributed money intended to fund preparing or submitting this brief.

<u>**INTRODUCTION AND SUMMARY OF ARGUMENT**</u>

"Strategic Lawsuits Against Public Participation" ("SLAPPs") pose particular dangers not only to the individuals and organizations they target, but also to our society, human rights, and the rule of law. SLAPPs present an existential threat to civil society, free speech, and democracy. Without protection from SLAPPs, many ordinary citizens and public interest advocates would likely stay silent rather than run the risk of being punished for speaking out against the powerful. It is for that reason that many states, including California, have passed "Anti-SLAPP" statutes to protect against the continued proliferation of these lawsuits.

California's anti-SLAPP statute recognizes "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." California Code of Procedure (C.C.P.) 425.16(a). The mechanism by which the California Anti-SLAPP Statute ("the Statute") mitigates the economic and human cost of these frivolous lawsuits is the creation of a special motion to strike the pleadings that requires a minimum evidentiary showing early in the litigation process. The Statute creates a two-prong procedure. First, the movant-defendant must demonstrate that the plaintiff's (the "SLAPPer's") claims arise from conduct protected under the statute. *Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016). Upon satisfying this first prong, the

4

court examines the merits of the claim, and the burden is shifted to the plaintiff to "establish a probability that the plaintiff will prevail on the claim." C.C.P. 425.16(b)(1).

In the instant case, Plaintiff-Appellant Corecivic sued Defendants-Appellees over Forbes.com internet articles posted on September 25, 2018, March 5, 2019, and September 30, 2019. The Plaintiff's claims were based solely on the theory that Defendants-Appellees' speech amounted to defamation and "defamation by implication." The District Court correctly applied California's anti-SLAPP statute and found that Corecivic had failed to carry its evidentiary burden, because the allegedly defamatory statements were true statements, protected under the First Amendment and California law. In so finding, the Court granted the Appellees' Special Motion to Strike and properly ordered the matter dismissed. As this Court has previously explained, the motion-to-strike provision complements (and does not conflict with) the Federal Rules of Civil Procedure. *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972-73 (9th Cir. 1999).

*Amici* urge this Court to find that the motion-to-strike provision of California anti-SLAPP Statute is a substantive state law designed to protect the exercise of constitutional speech rights that is in harmony with the Federal Rules of Civil Procedure. As such, the Court should hold that California's anti-SLAPP law continues to apply to federal diversity claims, and uphold the decision of the

District Court. Reversal of the District Court's decision would eviscerate the protections afforded by the California Anti-SLAPP Statute and disregard decades of precedent in this Circuit.

**ARGUMENT**

**I.    THE APPELLANT'S DEFAMATION CLAIMS ARE A QUINTESSENTIAL "SLAPP" LAWSUIT**

It is difficult to find a value of higher order than the constitutionally-protected rights to free speech and petition that are at the heart of California's Anti-SLAPP Act, codified at C.C.P. § 425.16(b)(1). *See DC Comics v. Pac. Pictures Corp.,* 706 F.3d 1009, 1015-16 (9th Cir. 2013). The goal of a SLAPP is to stop citizens or groups from exercising their political right to free speech, to punish them for engaging in such speech, and/or to deter others from doing the same in the future. SLAPPs accomplish this nefarious goal by masquerading as legitimate lawsuits designed to survive a motion to dismiss for failure to state a claim, thus forcing defendants into expensive and lengthy litigation. SLAPPS usually are camouflaged as torts: defamation, business torts such as interference with business relations, judicial torts, conspiracy, RICO claims, and nuisance.

Over three decades ago, Professor George Pring warned of a new and disturbing trend he had observed: American citizens were being sued simply for "speaking out on political issues." George Pring, *SLAPPs: Strategic Lawsuits against Public Participation*, 7 PACE ENVTL L. REV. 3, 4 (September 1989). Chillingly, Pring described SLAPPS as "dispute transformation devices, a use of the court system to empower one side of a political issue, giving it the unilateral ability to transform both the forum and the issue in dispute." *Id.* at 12.

Unfortunately, SLAPPs have proliferated since Pring first coined the term. Indeed, as reflected in Appellant's suit, SLAPPs continue to be a tool deployed by powerful interests to silence those who disagree with them.

SLAPPs strike at a wide variety of traditional American political activities. Historically, people and organizations have been sued for reporting violations of law, writing to government officials, attending public hearings, testifying before government bodies, circulating petitions for signature, lobbying for legislation, campaigning in initiative or referendum elections, filing agency protests or appeals, or even speaking out on social media. Most troubling to *Amici,* however, is the growing trend of powerful corporations and political entities suing those who engage in First Amendment protected protests and boycotts. California's Anti-SLAPP law recognizes the deleterious effects of SLAPP lawsuits:

> The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly.

C.C.P. § 425.16(a). The California legislature followed this recognition of the chilling effects of such suits by creating a statutory scheme designed to quickly dispose of claims that target exercise of these constitutional rights. *Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036, 1043 (1997).

The defamation tort suit brought by Plaintiff-Appellant against Ms. Simon and Candide Group is a quintessential SLAPP: a brazen attempt to silence and punish those who publish factual content and advocacy for a matter of public interest, masquerading as a legitimate defamation lawsuit. Every claim in the underlying complaint arose out of published statements of fact and opinion concerning the Appellant's business model and political activity. Every hallmark of a SLAPP can be found in Appellant's claims. Indeed, the District Court easily and correctly held that Appellees were acting in furtherance of the right of advocacy on issues of public interest, and that the statements published by Appellees Candide and Simon were true, protected under the First Amendment and California law.

*Amici* have seen SLAPP lawsuits become endemic and epidemic; laws like the California Anti-SLAPP Statute are the only bulwark against them. Without such strong anti-SLAPP protections – and without adherence to the "special motion to strike" procedures codified at C.C.P. § 425.16(b)(1) – anyone who has the courage to speak out on political issues against the interests of powerful corporations runs the risk of being subjected to SLAPP harassment via the lengthy and expensive process of defending themselves from a frivolous lawsuit. Anti-SLAPP statutes are one of the few mechanisms that exist to mitigate the effects of such bullying litigation aimed at thwarting lawful First Amendment activities.

California's Anti-SLAPP Statute is one of the strongest in the United States, and *Amici* now respectfully urge this Court to keep it that way.

## II.  THE MOTION-TO-STRIKE PROVISION OF CALIFORNIA'S ANTI-SLAPP LAW APPLIES TO FEDERAL DIVERSITY CLAIMS

As a general rule, federal courts sitting in diversity cases apply state substantive law and federal procedural law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1838). Federal courts exercising diversity jurisdiction engage in a two-step analysis, in sequence, to determine whether to apply a state law. First, courts ask whether the Federal Rules of Civil Procedure answer the question in dispute. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). If so, then the federal rules govern, so long as the specific rule does not violate the Rules Enabling Act. *Id*.

If no federal rule answers the question in dispute, then the federal court moves to the second step of the analysis and must determine whether the state law is substantive within the meaning of *Erie*. *Id.* The reviewing court asks whether the state statute seeks to protect important substantive interests. In making that determination, courts look to the twin aims of *Erie*: the discouragement of forum shopping and the avoidance of the inequitable administration of the laws. *Hanna v. Plumer*, 380 U.S. 460, 468 (1965).

The Ninth Circuit has repeatedly confirmed that defendants sued in federal courts can bring anti-SLAPP motions to strike state law claims and are entitled to attorneys' fees and costs when they prevail. *See Verizon Delaware v. Covad Communications*, 377 F.3d 1081, 1091 (9th Cir. 2004); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003); *Newsham*, 190 F.3d at 971. *Shady Grove* did not change this analysis. The Court should affirm over twenty years of precedent and uphold the district court's determination that the motion-to-strike provision of California's anti-SLAPP statute is applicable to federal diversity claims.

**A.      The Motion-to-Strike Provision Does Not Conflict with Federal Rules**

The Ninth Circuit has repeatedly analyzed California's Anti-SLAPP provisions and found that the motion-to-strike provision does not conflict with the federal rules. *Planned Parenthood Fed'n of Am., Inc. v. Ctr for Med. Progress,* 890 F.3d 828, *as amended*, 897 F.3d 1224 (9th Cir. 2018); *Newsham*, 190 F.3d at 971. Although these opinions did not explicitly mention the *Shady Grove* opinion or analysis, the Court correctly based its analyses of whether a direct collision exists between the anti-SLAPP provisions and the federal rules on the on the long-standing principles re-articulated in *Shady Grove.*

The first step in the *Shady Grove* analysis is to determine whether a federal rule answers the legal question in dispute, such that it occupies the field and leaves

no room for the operation of state law. 559 U.S. at 398. *See also Walker v. Armco Steel Corp.*, 446 U.S. 740, 749-50 (1980) ("The first question must therefore be whether the scope of the Federal Rule in fact is sufficiently broad to control the issue before the Court," creating a "direct collision" that "leave[s] no room for the operation of [state] law."). In *Shady Grove* the Supreme Court analyzed such an alleged "direct collision" between a New York state statute and Federal Rule of Civil Procedure 23. When determining whether there is a "direct collision" between state and federal law, a court should determine whether the state statute "attempts to answer the same question" as the federal rule. *Shady Grove*, 559 U.S. at 399 (2010).

As this Court first recognized in *Newsham*, "there is no indication that Rules 8, 12, and 56 were intended to 'occupy the field' with respect to pretrial procedures aimed at weeding out meritless claims." 190 F.3d at 972-73. The question in dispute when considering an anti-SLAPP motion to strike is whether a complaint should be dismissed because the plaintiff has filed a frivolous claim targeting the defendant's protected speech activity. That is different from the questions posed by Fed. R. Civ. Proc. 12, which addresses whether a complaint states a plausible claim on which relief can be granted, or by Fed. R. Civ. Proc. 56, which looks at whether, following discovery, there remains a dispute of material fact requiring a trial.

Appellant acknowledges in its opening brief that Defendants-Appellees only moved the district court to strike under California's Anti- SLAPP Statute, and not to dismiss under Fed. R. Civ. Proc. 12(b)(6). All parties have clearly understood and contemplated the anti-SLAPP motion to strike pursuant to C.C.P. § 425.16(b) as a remedy crafted to serve an interest not directly addressed by the Federal Rules: the protection of "the constitutional rights of freedom of speech and petition for redress of grievances." *Newsham*, 190 F.3d at 972-73. Compared to Fed. R. Civ. Proc. 12 and 56, the anti-SLAPP motion to strike "serves the entirely distinct function of protecting those specific defendants that have been targeted with litigation on the basis of their protected speech." *Godin v. Schencks*, 629 F.3d 79, 89 (1st Cir. 2010). "California's anti-SLAPP statute, by creating a separate and additional theory upon which certain kinds of suits may be disposed of before trial, supplements rather than conflicts with the Federal Rules." *Makaeff v. Trump University, LLC*, 736 F.3d 1180, 1182 (9th Cir. 2013) (Wardlaw, J., concurring in the denial of rehearing *en banc*, joined by Callahan, Fletcher, and Gould, JJ.)

**B.      The Motion-to-Strike Provision Is Substantive Under *Erie***

Under *Shady Grove*, if a reviewing court determines that the federal rules do not answer the question in dispute, the second step of the *Shady Grove* analysis requires the Court to determine whether the state law is substantive within the meaning of *Erie*. *Shady Grove*, 559 U.S. at 398. When determining whether the

state statute seeks to protect important substantive interests, courts look to the twin aims of *Erie*: the discouragement of forum shopping and the avoidance of the inequitable administration of the laws. *Hanna*, 380 U.S. at 468.

"The purpose of the anti-SLAPP statute is 'to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation.' *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003). The motion-to-strike provision of California's anti-SLAPP law is substantive because it is essential to the statute's purpose of "encourag[ing] continued participation in matters of public significance" in the face of "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." C.C.P. § 425.16(a). Moreover, the California legislature enacted C.C.P. § 430.10, which functions as an analog to Fed. R. Civ. Proc. 12 and allows for courts to dismiss legally deficient claims for a variety of reasons.

Failing to apply the motion-to-strike provision in the Ninth Circuit would undermine the twin aims of *Erie*, incentivizing forum shopping, both between federal and state court, and between federal courts in different circuits. *See Newsham,* 190 F.3d at 973 ("Plainly, if the anti-SLAPP provisions are held not to apply in federal court, a litigant interested in bringing meritless SLAPP claims would have a significant incentive to shop for a federal forum."). The California

anti-SLAPP law's motion-to-strike provision is thus substantive within the

meaning of *Erie* and should apply in federal court.

   **C.**   **This Court Should Decline to Follow the Analysis of Other Federal Circuit Courts that Have Concluded that State Anti-SLAPP Dismissal Provisions Do Not Apply in Federal Court**

*Amici* are aware of the circuit split cited by the Appellant on whether anti-

SLAPP statutes, when used for their dismissal provisions, should be applied in

federal courts. The First Circuit (*Godin*, 629 F.3d 79, applying Maine law); Second

Circuit (*Adelson v. Harris*, 774 F.3d 803 (2014), applying Nevada law); and this

Circuit (*see, e.g.*, *Newsham*, 190 F.3d 963, applying California law), have held that

federal courts should apply state SLAPP statutes. But the D.C.,; Fifth, Tenth, and

Eleventh Circuits have each held that at least one state's anti-SLAPP law, when

used to dismiss claims, should not be applied by their district courts. *See Abbas v.*

*Foreign Policy Group*, 783 F.3d 1328 (D.C. Cir. 2015) (declining to apply D.C.

law); *Klocke v. Watson*, 936 F.3d 240 (5th Cir. 2019) (declining to apply Texas

law); *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659 (10th

Cir. 2018) (declining to apply New Mexico law); *Carbone v. Cable News Network*,

910 F.3d 1345 (11th Cir. 2018) (declining to apply Georgia law). *But see Henry v.*

*Lake Charles Am. Press, LLC*, 566 F.3d 164, 169 (5th Cir. 2009) (applying

Louisiana law).

The D.C., Fifth, and Eleventh Circuits each found that the motion-to-dismiss provisions of the anti-SLAPP statutes they reviewed conflicted with Fed. R. Civ. Proc. 12 and 56. *See Abbas*, 783 F.3d at 1335; *Klocke*, 936 F.3d at 247; *Carbone*, 910 F.3d at 1354.

Respectfully, these cases were wrongly decided, and *Amici* now urge this Court not to follow them. In each matter, at the first step of the *Shady Grove* analysis, the federal appellate courts posed the questions that Fed. R. Civ. Proc. 12 and 56 answer at an extremely high level of generality: What are the circumstances in which a case can be terminated before trial? *See, e.g.*, *Abbas*, 783 F.3d at 1333-34 ("Federal Rules of Civil Procedure 12 and 56 'answer the same question' about the circumstances under which a court must dismiss a case before trial."). This analytical framing chosen by the sister Circuits in these matters has given Fed. R. Civ. Proc. 12 and 56 an overly expansive construction, leaving considerably less room for substantive state laws to operate in federal court. The resulting displacement of state law is contrary to *Erie*'s goal of giving state interests greater purchase in federal diversity cases.

The Supreme Court's divided opinion in *Shady Grove* demonstrates that the Federal Rules should be construed narrowly to leave space in federal courts for substantive state policies. In *Shady Grove*, Justice Stevens and three other justices joined in the first part of the opinion of the Court authored by Justice Scalia, in

which the Court explained the two-step analysis for determining whether a state law should be applied by a federal court sitting in diversity. 559 U.S. at 398. A majority of the Court – Justice Stevens in his separate concurrence and the four dissenting justices – warned that when a state law "is part of a State's framework of substantive rights or remedies," it is problematic under the Rules Enabling Act for a federal rule to displace the state law, even if that state law is nominally procedural. 559 U.S. at 419 (Stevens, J., concurring). In such a situation, the federal court should endeavor to read the Federal Rule narrowly to avoid the conflict. *Id.* at 422-23. That is, "[w]hen a federal rule appears to abridge, enlarge, or modify a substantive right, federal courts must consider whether the rule can reasonably be interpreted to avoid that impermissible result." *Id.*

Because California's anti-SLAPP statute, including the motion-to-strike provision, is a substantive remedy for SLAPP defendants, this Court should continue to interpret Fed. R. Civ. Proc. 12 and 56 more narrowly than the D.C., Second, Fifth, and Eleventh Circuits have. Under this appropriate reading of Fed. R. Civ. Proc. 12 and 56, the California anti-SLAPP statute's motion-to-strike provision operates in tandem with the Federal Rules, rather than conflicting with them.

# CONCLUSION

For the foregoing reasons and those set forth in Defendants-Appellants'

brief, *Amici Curiae* respectfully urge this Court to affirm the decision below.

Respectfully submitted October 22, 2021.

AMICI CURIAE
MEMBERS OF PROTECT THE PROTEST TASK FORCE
By Counsel
/s/ Lauren C. Regan
Lauren C. Regan
The Civil Liberties Defense Center
1430 Willamette St. #359
Eugene, Oregon 97401
(541) 687-9180
lregan@cldc.org

## APPENDIX A
## SPECIFIC IDENTITIES AND INTERESTS OF AMICI CURIAE
## MEMBERS OF "PROTECT THE PROTEST" TASK FORCE

The following *Amici Curaie* submit this brief:

All *Amici* who join this brief are members of "Protect the Protest," a coalition of nonprofit organizations dedicated to protecting free speech, freedom of assembly, and peaceful dissent from meritless lawsuits designed to chill the exercise of those fundamental rights.

**MEMBERS OF THE "PROTECT THE PROTEST" TASK FORCE JOINING THIS BRIEF:**

**Amazon Watch** is a nonprofit organization founded in 1996 to protect the rainforest and advance the rights of Indigenous people in the Amazon Basin. Amazon Watch is an active member of the PTP coalition and partners with environmental organizations in campaigns for human rights, corporate accountability, education, outreach, and the preservation of the Amazon's ecological systems.

**The Center for Constitutional Rights (CCR)** is dedicated to advancing and protecting the rights guaranteed by the United States Constitution and the Universal Declaration of Human Rights. CCR is a PTP member committed to the creative use of law as a positive force for social change, combining cutting-edge

litigation, advocacy and strategic communications in work on a broad range of civil and human rights issues.

**The Civil Liberties Defense Center (CLDC)** is a nonprofit organization that defends environmental and social justice activists against SLAPP suits and other constitutional attacks in state and federal courts around the country. CLDC is an active participant in the PTP coalition's litigation, advocacy, education and outreach work.

**Direct Action Everywhere (DXE)** is a global grassroots network of animal rights activists dedicated to creating a world where all animals are viewed and treated with respect and have autonomy over their own bodies through direct action, education, and legislative advocacy.

**The Electronic Frontier Foundation (EFF)** is an active participant in the PTP coalition and the leading nonprofit organization defending civil liberties in the digital world. Founded in 1990, EFF champions user privacy, free expression, and innovation through impact litigation, policy analysis, grassroots activism, and technology development. EFF's mission is to ensure that technology supports freedom, justice, and innovation for all people of the world.

**International Corporate Accountability Roundtable (ICAR)** is a coalition of 40+ member and partner organizations committed to ending corporate abuse of people and the planet. ICAR is a PTP member that engages in advocacy

for real protections and strong enforcement of the law to protect the public by enacting reasonable safeguards against corporate abuse, protecting those who speak out against corporate wrongdoing, and combatting the rise of the corporate state

**Mosquito Fleet** is a regional network of activists fighting for climate justice and a fossil-free Salish Sea through on-water direct action and grassroots movement building.

**Palestine Legal** is a non-profit legal and advocacy organization specifically dedicated to protecting the civil and constitutional rights of people in the U.S. who speak out for Palestinian freedom. Palestine Legal is a member of the PTP Coalition which advises and advocates for people whose rights have been violated because of censorship campaigns targeting speech supporting Palestinian rights.

**Portland Rising Tide** promotes community-based solutions to the climate crisis and takes direct action to confront the root causes of climate change. It works to promote people's right to speak out and protest when environmental or social harm occurs. It is deeply concerned by litigation that seeks to silence and prevent communities who are resisting from having a voice.

**Presente.org** is the largest national Latinx online organization advancing social justice with technology, media, and culture. Presente's mission is to advance Latinx power and create winning campaigns that amplify Latinx voices; expand the

political imagination and traditional boundaries; and foster inspiration for freedom, equity, and justice.

**Rainforest Action Network (RAN)** is a nonprofit organization that campaigns for the forests, their inhabitants and the natural systems that sustain life through education, grassroots organizing, and non-violent direct action. RAN's work includes informing and educating people about environmental and social justice issues, including legal cases such as the lawsuit in Ecuador against Chevron and Chevron's obligation to compensate its victims in Ecuador. RAN has campaigned around the case to support the Ecuadorians who continue to suffer from the effects of ongoing pollution.

**Rising Tide North America** is a grassroots network of groups and individuals in North America organizing action against the root causes of climate change and work toward a non-carbon society.

**The Sierra Club** is a national nonprofit organization with 67 chapters and more than 800,000 members dedicated to exploring, enjoying, and protecting the wild places of the earth, and to using all lawful means—including protest—to carry out its mission. The Sierra Club and its members have participated in countless environmental protests over our more than 100-year history, and the Sierra Club expects to consider participation in protests from time to time in the future as part

of its overall advocacy efforts. The Sierra Club is also concerned about the

growing use of meritless litigation to chill lawful environmental protest.

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** No. 21-15813

I am the attorney or self-represented party.

**This brief contains 3631 words,** excluding the items exempted by Fed. R.

App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify that this brief *(select only one)*:
[ ] complies with the word limit of Cir. R. 32-1.
[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
[X] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5),
   Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
   [ ] it is a joint brief submitted by separately represented parties;
   [ ] a party or parties are filing a single brief in response to multiple briefs; or
   [ ] a party or parties are filing a single brief in response to a longer joint brief.
[ ] complies with the length limit designated by court order dated _____.
[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Lauren C. Regan          **Date** October 22, 2021

Lauren C. Regan
The Civil Liberties Defense Center
1430 Willamette St. #359
Eugene, Oregon 97401
(541) 687-9180

# CERTIFICATE OF SERVICE

I certify that, on October 25, 2021, I electronically filed the foregoing with

the Clerk of the Court for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and

that service will be accomplished by the appellate CM/ECF system.

**Signature** /s/ Lauren C. Regan                    **Date** October 25, 2021

Lauren C. Regan
The Civil Liberties Defense Center
1430 Willamette St. #359
Eugene, Oregon 97401
(541) 687-9180