No. 20-17285

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CORECIVIC, INC.,

*Plaintiff-Appellant*,

v.

CANDIDE GROUP, LLC
AND MORGAN SIMON,

*Defendants-Appellees*.

On Appeal from the U.S. District Court for the
Northern District of California
Case No. 3:20-cv-03792-WHA (Hon. William Alsup)

**[CORRECTED] BRIEF OF AMICI CURIAE
THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS
AND 33 MEDIA ORGANIZATIONS
IN SUPPORT OF APPELLEES SEEKING AFFIRMANCE**

Katie Townsend
  *Counsel of Record*
Sarah S. Matthews
Charles Hogle*
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Telephone: (202) 795-9300
Facsimile: (202) 795-9310
ktownsend@rcfp.org
*Of counsel

# CORPORATE DISCLOSURE STATEMENT

The Reporters Committee for Freedom of the Press is an unincorporated association of reporters and editors with no parent corporation and no stock.

The Associated Press is a global news agency organized as a mutual news cooperative under the New York Not-For-Profit Corporation law.  It is not publicly traded.

The Atlantic Monthly Group LLC is a privately-held media company, owned by Emerson Collective and Atlantic Media, Inc.  No publicly held corporation owns ten percent or more of its stock.

BuzzFeed Inc. is a privately owned company, and National Broadcasting Company (NBC) owns ten percent or more of its stock.

Cable News Network, Inc. ("CNN") is a Delaware corporation that owns and operates numerous news platforms and services.  CNN is ultimately a wholly-owned subsidiary of AT&T Inc., a publicly traded corporation.  AT&T Inc. has no parent company and, to the best of CNN's knowledge, no publicly held company owns ten percent or more of AT&T Inc.'s stock.

California News Publishers Association ("CNPA") is a mutual benefit corporation organized under state law for the purpose of promoting and preserving the newspaper industry in California.  No entity or person has an ownership interest of ten percent or more in CNPA.

Californians Aware is a nonprofit organization with no parent corporation and no stock.

Courthouse News Service is a privately held corporation with no parent corporation, and no publicly held corporation holds more than ten percent of its stock.

The E.W. Scripps Company is a publicly traded company with no parent company. No individual stockholder owns more than ten percent of its stock.

First Amendment Coalition is a nonprofit organization with no parent company. It issues no stock and does not own any of the parties' or amici's stock.

Forbes Media LLC is a privately owned company, and no publicly held corporation owns ten percent or more of its stock.

Fox Television Stations, LLC (FTS) is an indirect subsidiary of Fox Corporation, a publicly held company. No other publicly held company owns ten percent or more of the stock of Fox Corporation.

Freedom of the Press Foundation does not have a parent corporation, and no publicly held corporation owns ten percent or more of the stock of the organization.

Gannett Co., Inc. is a publicly traded company and has no affiliates or subsidiaries that are publicly owned. BlackRock, Inc. and the Vanguard Group, Inc. each own ten percent or more of the stock of Gannett Co., Inc.

Hearst Corporation is privately held, and no publicly held corporation owns ten percent or more of Hearst Corporation.

The International Documentary Association is a not-for-profit organization with no parent corporation and no stock.

Los Angeles Times Communications LLC is wholly owned by NantMedia Holdings, LLC.

The Media Institute is a 501(c)(3) non-stock corporation with no parent corporation.

MediaNews Group Inc. is a privately held company.  No publicly-held company owns ten percent or more of its equity interests.

The Foundation for National Progress, dba Mother Jones, is a nonprofit, public benefit corporation.  It has no publicly-held shares.

MPA - The Association of Magazine Media has no parent companies, and no publicly held company owns more than ten percent of its stock.

National Newspaper Association is a non-stock nonprofit Florida corporation.  It has no parent corporation and no subsidiaries.

National Press Photographers Association is a 501(c)(6) nonprofit organization with no parent company.  It issues no stock and does not own any of the parties' or amici's stock.

The New York Times Company is a publicly traded company and has no affiliates or subsidiaries that are publicly owned. No publicly held company owns ten percent or more of its stock.

The News Leaders Association has no parent corporation and does not issue any stock.

News Media Alliance is a nonprofit, non-stock corporation organized under the laws of the commonwealth of Virginia. It has no parent company.

Online News Association is a not-for-profit organization. It has no parent corporation, and no publicly traded corporation owns ten percent or more of its stock.

POLITICO LLC's parent corporation is Capitol News Company. No publicly held corporation owns ten percent or more of POLITICO LLC's stock.

Radio Television Digital News Association is a nonprofit organization that has no parent company and issues no stock.

The Society of Environmental Journalists is a 501(c)(3) non-profit educational organization. It has no parent corporation and issues no stock.

Society of Professional Journalists is a non-stock corporation with no parent company.

Tribune Publishing Company is a publicly held corporation. Alden Global Capital and affiliates own over ten percent of Tribune Publishing Company's

common stock.  Nant Capital LLC, Dr. Patrick Soon-Shiong and California Capital Equity, LLC together own over ten percent of Tribune Publishing Company's stock.

The Tully Center for Free Speech is a subsidiary of Syracuse University.

Vox Media, LLC has no parent corporation.  NBCUniversal Media, LLC, a publicly held corporation, owns at least ten percent of Vox's stock.

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT.........................................................i

TABLE OF AUTHORITIES................................................................ vii

IDENTITY AND INTEREST OF AMICI CURIAE AND SOURCE OF
THEIR AUTHORITY TO FILE THIS BRIEF ........................................xi

INTRODUCTION ................................................................................1

ARGUMENT ......................................................................................5

I. Anti-SLAPP laws protect against meritless, retaliatory litigation that
chills newsgathering and threatens press freedom. ......................................5

    A. Libel plaintiffs have long used SLAPPs to try to intimidate
journalists and silence critical reporting. ...........................................5

    B. Thirty-one states and the District of Columbia have adopted
anti-SLAPP laws to protect and foster free speech..........................6

    C. Fee-shifting provisions are a vital, substantive protection
against SLAPPs. .............................................................10

II. This Court has long held that the motion-to-strike and attorney fee
provisions of California's anti-SLAPP law apply in federal court. ............12

    A. The district court already applied the Federal Rules in
dismissing this case—as it was required to do—rendering
CoreCivic's argument irrelevant to the disposition of its
claims. .......................................................................12

    B. *Planned Parenthood* controls this case and aligns with *Shady
Grove* and *Erie*.................................................................14

    C. Applying California's substantive anti-SLAPP protections in
federal court advances the twin aims of *Erie* and upholds
federalism principles.................................................................18

CONCLUSION .................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
  421 U.S. 240 (1975) ......................................................................................17

*Batzel v. Smith*,
  333 F.3d 1018 (9th Cir. 2003) .......................................................................13

*Breazeale v. Victim Servs., Inc.*,
  878 F.3d 759 (9th Cir. 2017) .........................................................................13

*Chen v. Mukasey*,
  524 F.3d 1028 (9th Cir. 2008) .......................................................................15

*Clifford v. Trump*,
  818 F. App'x 746 (9th Cir. 2020) ..................................................................14

*CoreCivic Inc. v. Candide Grp. LLC*,
  No. C-20-03792-WHA, 2021 WL 1267259 (N.D. Cal. Apr. 6, 2021)......3, 12, 18

*Davis v. Elec. Arts Inc.*,
  775 F.3d 1172 (9th Cir. 2015) .......................................................................13

*DC Comics v. Pac. Pictures Corp.*,
  706 F.3d 1009 (9th Cir. 2013) .......................................................................13

*Drexler v. Billet*,
  784 F. App'x 548 (9th Cir. 2019)...............................................................13, 14

*Erie R.R. Co. v. Tompkins*,
  304 U.S. 64 (1938) ..........................................................................................2

*Hanna v. Plumer*,
  380 U.S. 460 (1965) ............................................................................ *passim*

*Herring Networks, Inc. v. Maddow*,
  8 F.4th 1148 (9th Cir. 2021)................................................................2, 14, 16

*Makaeff v. Trump Univ., LLC*,
  715 F.3d 254 (9th Cir. 2013), *reh'g denied*,
  736 F.3d 1180 (2013) ...............................................................................13, 15

*Makaeff v. Trump Univ., LLC*,
  736 F.3d 1180 (9th Cir. 2013) ............................................................. *passim*

*Metabolife Int'l, Inc. v. Wornick*,
   264 F.3d 832 (9th Cir. 2001) ................................................................13

*Mindys Cosmetics, Inc. v. Dakar*,
   611 F.3d 590 (9th Cir. 2010) ................................................................13

*Mohawk Indus., Inc. v. Carpenter*,
   558 U.S. 100 (2009) ..............................................................................13

*N.Y. Times Co. v. Sullivan*,
   376 U.S. 254 (1964) ...........................................................................5, 6

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   890 F.3d 828, *amended*,
   897 F.3d 1224 (9th Cir. 2018) .................................................... *passim*

*RLI Ins. Co. v. Langan Eng'g, Envtl., Surveying & Landscape
   Architecture, D.P.C.*,
   834 F. App'x 362 (9th Cir. 2021) .........................................................13

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) .................................................................... *passim*

*Travelers Cas. Ins. Co. of Am. v. Hirsh*,
   831 F.3d 1179 (9th Cir. 2016) .......................................................13, 15

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*,
   190 F.3d 963 (9th Cir. 1999) ...................................................12, 13, 17

*Wynn v. Bloom*,
   852 F. App'x 262 (9th Cir. 2021) .........................................................14

*Z.F. v. Ripon Unified Sch. Dist.*,
   482 F. App'x 239 (9th Cir. 2012) .........................................................14

**Statutes**

28 U.S.C. § 2072 ..........................................................................................17

Cal. Civ. Proc. Code § 425.16 .............................................................1, 9, 17

**Other Authorities**

About Morgan Simon, Forbes,
   https://bit.ly/3iJ1y0t.............................................................................3

Austin Vining & Sarah Matthews, *Overview of Anti-SLAPP Laws*, Reporters Comm. for Freedom of the Press, https://www.rcfp.org/introduction-anti-slapp-guide/ ..............................................9

Clara Jeffery & Monika Bauerlein, *We Were Sued by a Billionaire Political Donor. We Won. Here's What Happened.*, Mother Jones (Oct. 8, 2015), https://bit.ly/3BkufIx ..............................................11

D. Victoria Baranetsky & Alexandra Gutierrez, *What a costly lawsuit against investigative reporting looks like*, Colum. Journalism Rev. (Mar. 30, 2021), https://bit.ly/3AjdlbO..............................................8, 10

Editorial Board, *New York's Chance to Combat Frivolous Lawsuits*, N.Y. Times (Nov. 4, 2020), https://nyti.ms/3uSgPAZ ..............................................7

Jonathan Peters & Jared Schroeder, *Here's how to stop thin-skinned bullies suing the media constantly*, Colum. Journalism Rev. (Apr. 29, 2019), https://bit.ly/3Bpl8Gi..............................................7

Justin Jouvenal, *Devin Nunes, Johnny Depp lawsuits seen as threats to free speech and press*, Wash. Post (Dec. 22, 2019), https://perma.cc/5XJR-4ZUT ..............................................10

Meagan Flynn, *A small-town Iowa newspaper brought down a cop. His failed lawsuit has now put the paper in financial peril.*, Wash. Post (Oct. 10, 2019), https://wapo.st/3oDwl2u..............................................11

Michael M. Grynbaum, *Lawsuits Take the Lead in Fight Against Disinformation*, N.Y. Times (Feb. 6, 2021), https://nyti.ms/3uKxh6c ..............................................5

Morgan Simon, *GEO Group Running Out of Banks as 100% of Known Banking Partners Say 'No' to the Private Prison Sector*, Forbes (Oct. 10–11, 2019), https://perma.cc/2J4U-EX2C..............................................3

Morgan Simon, *JPMorgan Chase Is Done With Private Prisons*, Forbes (Mar. 5, 2019), https://perma.cc/F58Q-YUP2..............................................3

Morgan Simon, *What Do Big Banks Have To Do With Family Detention? #FamiliesBelongTogether Explains*, Forbes (Sept. 25, 2018), https://perma.cc/32LB-XA7C ..............................................3

Paul Farhi, *What really gets under Trump's skin? A reporter questioning his net worth*, Wash. Post (Mar. 8, 2016), https://wapo.st/3ahm0RB ...................................................................7

Penelope Canan & George W. Pring, *Strategic Lawsuits Against Public Participation*, 35 Soc. Probs. 506 (1988), https://www.jstor.org/stable/800612 ...................................................8

Samantha Barbas, *A major Supreme Court First Amendment decision could be at risk*, Wash. Post (July 13, 2021), https://wapo.st/3AfGsNd ...............................................................5, 6

*SLAPPed but not silenced: Defending Human Rights in the Face of Legal Risks*, Business & Human Rights Resource Centre (June 2021), https://bit.ly/3uSNdmV ....................................................7

Ted Johnson, *Judge Orders Transfer Of Devin Nunes' CNN Case From Virginia To New York*, Deadline (May 22, 2020), https://bit.ly/3iEQQYX ...................................................10

Trevor Timm, *Devin Nunes Has a Cow, and Free Speech Is Endangered*, GEN (Mar. 21, 2019), https://bit.ly/2Yt33si ....................................................7

Trevor Timm, *Lawsuits against the media aren't new. But Thiel blueprint sets a disturbing precedent*, Colum. Journalism Rev. (Sept. 7, 2016), https://bit.ly/3DiPf2N .......................................8

*Understanding Anti-SLAPP Laws*, Reporters Comm. for Freedom of the Press, https://www.rcfp.org/resources/anti-slapp-laws/............................7, 11

William H.J. Hubbard, *An Empirical Study of the Effect of* Shady Grove v. Allstate *on Forum Shopping in the New York Courts*, 10 J. L. Econ. & Pol'y 151 (2013) ...............................................19

## IDENTITY AND INTEREST OF AMICI CURIAE AND SOURCE OF THEIR AUTHORITY TO FILE THIS BRIEF

Amici curiae have obtained consent to file this brief from both parties and therefore may file it pursuant to Federal Rule of Appellate Procedure 29(a)(2).

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), amici state that no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money intended to fund preparing or submitting this brief; and no person, other than amici, their members or counsel, contributed money intended to fund preparing or submitting this brief.

Amici are the Reporters Committee for Freedom of the Press, The Associated Press, The Atlantic Monthly Group LLC, BuzzFeed, Cable News Network, Inc., California News Publishers Association, Californians Aware, Courthouse News Service, The E.W. Scripps Company, First Amendment Coalition, Forbes Media LLC, Fox Television Stations, LLC, Freedom of the Press Foundation, Gannett Co., Inc., Hearst Corporation, International Documentary Assn., Los Angeles Times Communications LLC, The Media Institute, MediaNews Group Inc., Mother Jones, MPA - The Association of Magazine Media, National Newspaper Association, National Press Photographers Association, The New York Times Company, The News Leaders Association, News Media Alliance, Online News Association, POLITICO LLC, Radio Television Digital News Association, Society of Environmental Journalists,

Society of Professional Journalists, Tribune Publishing Company, Tully Center for Free Speech, and Vox Media, LLC (collectively "amici"). As members and representatives of the news media, amici are frequently the targets of strategic lawsuits against public participation ("SLAPPs") designed to chill their constitutionally protected newsgathering and reporting activities. Even with no hope of succeeding on the merits, SLAPPs can impose significant litigation costs on defendants, and discourage the exercise of First Amendment rights. Amici therefore have a strong interest in ensuring that federal courts sitting in diversity properly apply state anti-SLAPP laws intended to stop such meritless suits.

Plaintiff-Appellant CoreCivic, Inc. argues that California citizens should be stripped of all anti-SLAPP protections afforded them under state law when sued in federal court. If the Court adopted this position—which is inconsistent with prior Ninth Circuit precedent—it would have broad ramifications for amici, emboldening plaintiffs to pursue harassing and meritless federal court litigation that could impair amici's ability to report the news and keep the public informed. Amici write to underscore the importance of federal courts in this Circuit continuing to apply the substantive protections of California's anti-SLAPP statute.

## INTRODUCTION

Our system of self-governance depends on open debate among an informed public. But strategic lawsuits against public participation—or "SLAPPs"—threaten the free exchange of ideas. Even when SLAPP plaintiffs cannot prevail on the merits, they can punish their targets with time-consuming and costly litigation, thereby deterring future speech on matters of public concern. Would-be speakers are forced into a perverse cost-benefit analysis, weighing the value of participating in the public square against the burden of defending against a lawsuit. Likewise, SLAPPs hamper the ability of journalists to deliver the news, with the specter of frivolous lawsuits hanging over their reporting on the rich and powerful.

To combat this trend, California was among the first states to adopt an anti-SLAPP law. Today, there are anti-SLAPP laws in thirty-one states and the District of Columbia. Generally, the most significant, substantive protection these laws provide is fee-shifting. In California, for instance, defendants are entitled to attorney fees when they prevail on an anti-SLAPP motion to strike a claim based on protected speech or petitioning activities. Cal. Civ. Proc. Code § 425.16(b)(1), (c)(1). In this way, California alleviates the financial burden of defending against a SLAPP.

This Court has repeatedly upheld California's interest in protecting its citizens from SLAPPs, requiring district courts to apply the state's anti-SLAPP

1

law—including its fee-shifting provision—while adjudicating motions to strike under the Federal Rules. *See, e.g.*, *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833, *amended*, 897 F.3d 1224 (9th Cir. 2018); *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1156 (9th Cir. 2021). This approach comports with the "broad command of *Erie*" that federal courts sitting in diversity must "apply state substantive law and federal procedural law." *Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

Plaintiff-Appellant CoreCivic, Inc. asks the Court to defy this binding precedent in the hopes that it can evade its obligation to pay attorney fees following the dismissal of the SLAPP it filed against Defendants-Appellees. Although the question of attorney fees is not currently before the Court, *see* Order, *CoreCivic, Inc. v. Candide Grp., LLC*, Nos. 21-15813, 21-15822, Dkt. No. 15 (9th Cir. July 14, 2021), it lurks beneath CoreCivic's argument that no provision of California's anti-SLAPP law can apply in federal court. Amici write to urge the Court to reject CoreCivic's argument, which is legally incorrect and, if adopted, would deprive Californians of vital, substantive protections against claims arising out of the exercise of their First Amendment rights.

This case is a classic SLAPP and illustrates the need to uphold California's anti-SLAPP law in federal court. Defendant-Appellee Morgan Simon, a journalist-

2

activist and investor,[1] reported on CoreCivic's ownership and management of

private prisons that detained migrants who had been separated from their

families—a matter of significant public concern.[2] CoreCivic sued, despite the

truthfulness of Simon's reporting, and even after she provided clarifications to the

articles at the company's request.[3] Simon moved to strike under California's anti-

SLAPP law. The district court granted Simon's motion, construing it as a motion

to dismiss under Federal Rule of Civil Procedure 12(b)(6), consistent with *Planned

Parenthood*. 2021 WL 1267259 at *5. The district court also concluded that

Simon is entitled to attorney fees, though it held off on calculating those fees

pending resolution of this appeal. *Id.* at *7.

CoreCivic now urges the Court to reverse, contending, among other things,

that the district court erred by allowing Simon to file an anti-SLAPP motion

because such motions purportedly conflict with the Federal Rules of Civil

---

[1]  *See* About Morgan Simon, Forbes, https://bit.ly/3iJ1y0t.
[2]  E.R. 193–214; Morgan Simon, *What Do Big Banks Have To Do With Family Detention? #FamiliesBelongTogether Explains*, Forbes (Sept. 25, 2018), https://perma.cc/32LB-XA7C; Morgan Simon, *JPMorgan Chase Is Done With Private Prisons*, Forbes (Mar. 5, 2019), https://perma.cc/F58Q-YUP2; Morgan Simon, *GEO Group Running Out of Banks as 100% of Known Banking Partners Say 'No' to the Private Prison Sector*, Forbes (Oct. 10–11, 2019), https://perma.cc/2J4U-EX2C.
[3]  *See CoreCivic Inc. v. Candide Grp. LLC*, No. C-20-03792-WHA, 2021 WL 1267259, at *5 (N.D. Cal. Apr. 6, 2021) ("dismiss[ing] the case" because "the alleged defamation was true: CoreCivic admitted that it had, indeed, facilitated the family-separation policy by holding parents of the separated families"); E.R. 214 (appending clarifications that quote a responsive statement from CoreCivic).

Procedure under *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010).  Opening Br. 31.  But the district court already applied the Federal Rules in dismissing this case, rendering CoreCivic's argument moot for purposes of this appeal.  And in any event, this Court's binding precedent—post-*Shady Grove*—harmonizes the motion-to-strike procedures of California's anti-SLAPP law with the Federal Rules, eliminating any conflict.  *Planned Parenthood*, 890 F.3d at 833.  Significantly, *Planned Parenthood* does not strip SLAPP defendants of their ability to recover attorney fees—thus respecting important state interests, as required by *Erie* and *Shady Grove*.

To exclude California's anti-SLAPP law *in toto* from federal courts, as CoreCivic urges, would run afoul of this jurisprudence and undermine *Erie*'s twin aims by triggering forum-shopping and the inequitable administration of the laws. *Hanna*, 380 U.S. at 468.  Plaintiffs would, predictably, find ways to bring SLAPPs in federal court—such as by inflating their claimed damages to exceed $75,000. *See infra* Part II.C.  By the same token, denying protections in federal court from speech-chilling litigation—which most states properly view as an essential safeguard for free speech and public discourse—is simply "bad policy."  *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1187 (9th Cir. 2013) ("*Makaeff II*") (Wardlaw, J., concurring).  Anti-SLAPP protections advance our "profound national commitment to the principle that debate on public issues should be

uninhibited, robust, and wide-open." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). Accordingly, amici urge the Court to affirm.[4]

## ARGUMENT

**I.     Anti-SLAPP laws protect against meritless, retaliatory litigation that chills newsgathering and threatens press freedom.**

**A.     Libel plaintiffs have long used SLAPPs to try to intimidate journalists and silence critical reporting.**

Powerful individuals and corporations have long used libel suits to discourage critical news coverage, retaliate against the press, and stymie public discourse. As Harvard Law School Professor Yochai Benkler recently explained, "the history of defamation is certainly one in which people in power try to slap down critics." Michael M. Grynbaum, *Lawsuits Take the Lead in Fight Against Disinformation*, N.Y. Times (Feb. 6, 2021), https://nyti.ms/3uKxh6c. In the late 1950s and early 1960s, for example, Southern segregationists filed libel suits against news outlets aimed at stifling "coverage of the civil rights movement and local officials' repressive and often brutal responses to it." Samantha Barbas, *A major Supreme Court First Amendment decision could be at risk*, Wash. Post (July 13, 2021), https://wapo.st/3AfGsNd. By 1961, *The New York Times* faced "$7 million in potential libel judgments and the possibility of bankruptcy," and just

---

[4]     Amici do not address CoreCivic's remaining arguments for reversal. As Defendants-Appellees ably explain in their brief, the district court properly rejected them. Opp. Br. 35–58.

three years later, "CBS, the Saturday Evening Post and the Associated Press faced over $200 million in potential damages." *Id.* The tactic worked for a time, prompting newspapers to pull reporters out of the South and kill stories "for fear of being slapped with potentially ruinous libel suits." *Id.*

Recognizing that civil litigation can threaten the freedom of the press to report on matters of significant public concern, the U.S. Supreme Court in 1964 issued its landmark *New York Times v. Sullivan* decision, recognizing that the First Amendment imposes limits on state libel laws. 376 U.S. at 279–80 (holding that public officials may not recover damages in libel cases unless they prove "actual malice" by the defendant). In so doing, the Court warned against litigation's potential chilling effect, cautioning that "would-be critics of official conduct may be deterred from voicing their criticism, even though it is believed to be true and even though it is in fact true, because of doubt whether it can be proved in court or fear of the expense of having to do so." *Id.* The Court stressed that such self-censorship "dampens the vigor and limits the variety of public debate," undermining the purpose of the First Amendment. *Id*.

**B.      Thirty-one states and the District of Columbia have adopted anti-SLAPP laws to protect and foster free speech.**

Despite the important constitutional protections recognized by the Supreme Court in *Sullivan*, the rich and powerful have continued to use the courts as a tool

to harass and retaliate against members of the press.[5]  SLAPP plaintiffs often know their cases are meritless, but pursue them anyway "to drain their critics' bank accounts, knowing their opponents will have to spend a fortune on lawyers to defend themselves, which means defendants are essentially punished for speech protected under the Constitution."  Trevor Timm, *Devin Nunes Has a Cow, and Free Speech Is Endangered*, GEN (Mar. 21, 2019), https://bit.ly/2Yt33si; *see also* Paul Farhi, *What really gets under Trump's skin? A reporter questioning his net worth*, Wash. Post (Mar. 8, 2016), https://wapo.st/3ahm0RB (reporting that former President Donald Trump admitted to suing a book author knowing he could not win but to make the author's life "miserable").  Thus, even when defendants "win," they still lose because SLAPPs can cost millions to litigate.

SLAPPs also can take a non-financial toll on those forced to defend themselves in court.  Journalists "will never be able to recover the time that could

---

[5]    *See, e.g.*, *SLAPPed but not silenced: Defending Human Rights in the Face of Legal Risks*, Business & Human Rights Resource Centre (June 2021), https://bit.ly/3uSNdmV (recognizing U.S. as among the countries "with the highest number of SLAPPs," following Thailand, Honduras, and Peru); Editorial Board, *New York's Chance to Combat Frivolous Lawsuits*, N.Y. Times (Nov. 4, 2020), https://nyti.ms/3uSgPAZ (describing SLAPPs and noting that they have become "pervasive"); Jonathan Peters & Jared Schroeder, *Here's how to stop thin-skinned bullies suing the media constantly*, Colum. Journalism Rev. (Apr. 29, 2019), https://bit.ly/3Bpl8Gi (describing SLAPPs); *Understanding Anti-SLAPP Laws*, Reporters Comm. for Freedom of the Press, https://www.rcfp.org/resources/anti-slapp-laws/ (collecting stories of SLAPPs).

have been spent on reporting, or forget the stress" that drawn-out litigation inflicts. D. Victoria Baranetsky & Alexandra Gutierrez, *What a costly lawsuit against investigative reporting looks like*, Colum. Journalism Rev. (Mar. 30, 2021), https://bit.ly/3AjdlbO (noting that discovery in connection with a SLAPP filed against the authors' nonprofit newsroom was so "burdensome" it required "two reporters and one editor working full time" on it over the course of nearly two years). This, all too often, is the point: to warn journalists that "reporting on powerful or deep-pocketed organizations isn't worth the risk." *Id.*; *see also* Trevor Timm, *Lawsuits against the media aren't new. But Thiel blueprint sets a disturbing precedent*, Colum. Journalism Rev. (Sept. 7, 2016), https://bit.ly/3DiPf2N (describing chilling effect from tort suit that drove news outlet into bankruptcy and speculating that media organizations may "spike stories involving controversial figures just to avoid years of legal hassle and skyrocketing legal bills"). In this way, SLAPPs threaten to silence reporting on matters of public concern.

State legislatures began to craft solutions to this problem in the late 1980s, soon after sociologists coined the term "SLAPP" to refer to civil lawsuits "aimed at preventing citizens from exercising their political rights or punishing those who have done so." Penelope Canan & George W. Pring, *Strategic Lawsuits Against Public Participation*, 35 Soc. Probs. 506 (1988), https://www.jstor.org/stable/800612. In 1992, California was among the first states to adopt an anti-SLAPP

law, in response to what the state legislature called "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Civ. Proc. Code § 425.16(a). The law recognized "that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process." *Id.*

In the decades since, a national consensus has begun to emerge, as thirty-one states and the District of Columbia have adopted some form of anti-SLAPP protections. Austin Vining & Sarah Matthews, *Overview of Anti-SLAPP Laws*, Reporters Comm. for Freedom of the Press, https://www.rcfp.org/introduction-anti-slapp-guide/. While anti-SLAPP laws differ from jurisdiction to jurisdiction, they share a common goal: to discourage the filing of SLAPPs and prevent them from imposing litigation costs on members of the public and press merely for engaging in First Amendment-protected activities. Anti-SLAPP laws typically (1) provide a mechanism to swiftly dismiss SLAPPs before costly discovery begins, (2) automatically stay discovery once the defendant has filed an anti-SLAPP motion, (3) allow defendants to immediately appeal a trial court's denial of an anti-SLAPP motion, and—critically—(4) permit defendants who win their anti-SLAPP motions to recover attorney fees and costs. *Id.*

## C. Fee-shifting provisions are a vital, substantive protection against SLAPPs.

Plaintiffs are less likely to file frivolous litigation in the first place if they know they will have to pay defendants' attorney fees and litigation costs. At the same time, the possibility of recouping fees makes it much easier for SLAPP defendants to find attorneys willing to represent them. This is particularly essential for small news outlets and freelance journalists who often have few resources to muster a legal defense, even against meritless claims.

Journalists and news organizations have faced an onslaught of retaliatory and meritless defamation litigation in recent years. *See supra* note 5. Yet strong fee-shifting provisions have been so effective at disincentivizing SLAPP suits in states that have them that plaintiffs frequently engage in state-to-state forum-shopping to evade them.[6] In jurisdictions without fee-shifting provisions, plaintiffs

---

[6] *See, e.g.*, Justin Jouvenal, *Devin Nunes, Johnny Depp lawsuits seen as threats to free speech and press*, Wash. Post (Dec. 22, 2019), https://perma.cc/5XJR-4ZUT (describing "a string of splashy defamation claims by politicians and [Johnny Depp] seeking nearly $1 billion in damages in Virginia courts this year, even though many of the cases have only loose connections to the state"); Baranetsky & Gutierrez, *supra* (explaining that Planet Aid tried "at least five times" to bring a libel suit in Maryland against a California-based nonprofit newsroom, explaining that Maryland has a "far weaker" anti-SLAPP law that does not permit the winning party to secure attorney fees); Ted Johnson, *Judge Orders Transfer Of Devin Nunes' CNN Case From Virginia To New York*, Deadline (May 22, 2020), https://bit.ly/3iEQQYX (reporting that federal judge transferred libel suit from Virginia to New York, saying he had "significant concerns about forum shopping").

can continue to use meritless libel suits to harass members of the press, often targeting news outlets engaged in accountability reporting. *See, e.g.*, Clara Jeffery & Monika Bauerlein, *We Were Sued by a Billionaire Political Donor. We Won. Here's What Happened.*, Mother Jones (Oct. 8, 2015), https://bit.ly/3BkufIx (describing SLAPP filed by political donor against news outlet in Idaho—which does not have an anti-SLAPP law—shortly after it broke a story critical of the candidate supported by the donor, leading to multi-year and multi-million-dollar litigation, even though the outlet ultimately won); *see generally Understanding Anti-SLAPP Laws*, Reporters Comm. for Freedom of the Press, https://www.rcfp.org/resources/anti-slapp-laws/. In Iowa, for example, a small, family-owned newspaper published accurate reporting about a local police officer who was having inappropriate relationships with teenagers. Meagan Flynn, *A small-town Iowa newspaper brought down a cop. His failed lawsuit has now put the paper in financial peril.*, Wash. Post (Oct. 10, 2019), https://wapo.st/3oDwl2u. The officer resigned but filed suit against the newspaper. *Id.* Even though the paper won, it was forced to spend $140,000 on its defense, putting the paper in "financial peril." *Id.*

Strong anti-SLAPP protections, including fee-shifting provisions, are thus essential for members of the news media, protecting their ability to inform the public about wrongdoing and shine a light on abuses of power.

**II.** **This Court has long held that the motion-to-strike and attorney fee provisions of California's anti-SLAPP law apply in federal court.**

    **A.** **The district court already applied the Federal Rules in dismissing this case—as it was required to do—rendering CoreCivic's argument irrelevant to the disposition of its claims.**

As an initial matter, even if the motion-to-strike provision of California's anti-SLAPP law did not apply in federal court—as CoreCivic erroneously contends—the result here would be the same. When the district court dismissed CoreCivic's claims, it applied the standard governing motions to dismiss under Rule 12(b)(6), as *Planned Parenthood* requires. *CoreCivic Inc.*, 2021 WL 1267259, at *5 ("The movant had moved under the California anti-SLAPP law but the Court was obliged to treat it as [a] Rule 12 motion and did, as per *Planned Parenthood*."). Thus, the district court has already determined that CoreCivic's claims fail under the Federal Rules. Thus, *even if* no provision of the anti-SLAPP law applied in federal court, CoreCivic's failure to state a claim would remain just that. CoreCivic's attempt to challenge the applicability of California's anti-SLAPP law is thus a waste of judicial resources, and the Court should not indulge it.

In any event, this Court's binding precedent quickly forecloses CoreCivic's argument. For decades, beginning with *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999), this Court has held that the motion-to-strike and attorney fee provisions of California's anti-SLAPP law apply

in federal diversity cases.[7]  In *Planned Parenthood*, decided eight years after *Shady Grove*, this Court clarified that district courts must apply federal procedure when adjudicating such motions under California's anti-SLAPP law, while emphasizing that "the attorney's fee provision of § 425.16(c)" still "applies":

> If a defendant makes an anti-SLAPP motion to strike founded on purely legal arguments, then the analysis is made under Fed. R. Civ. P. 8 and 12 standards; if it is a factual challenge, then the

---

[7]  *Id.* at 972; *see also Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 845–46 (9th Cir. 2001) (confirming that motion-to-strike and attorney fee provisions of California anti-SLAPP statute apply in federal court, but holding that certain discovery provisions do not); *Batzel v. Smith*, 333 F.3d 1018, 1025–26 (9th Cir. 2003) (holding that California's anti-SLAPP statute confers a substantive protection from suit, such that denial of motion to strike is immediately appealable); *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 598 (9th Cir. 2010) (affirming denial of motion to strike under California anti-SLAPP statute); *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 271 (9th Cir. 2013) ("*Makaeff I*") (reversing denial of motion to strike under California anti-SLAPP statute), *reh'g denied*, 736 F.3d 1180 (2013); *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1013 (9th Cir. 2013) (holding that *Batzel* remained good law following *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009)); *Davis v. Elec. Arts Inc.*, 775 F.3d 1172, 1176 (9th Cir. 2015) (affirming denial of motion to strike under California anti-SLAPP statute); *Travelers Cas. Ins. Co. of Am. v. Hirsh*, 831 F.3d 1179, 1180 (9th Cir. 2016) (affirming decision to strike amended complaint under California anti-SLAPP statute); *Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 767 (9th Cir. 2017) (holding that  Court "must follow" California legislature's "substantive determination" that in public interest cases anti-SLAPP law does not provide immunity from suit, and denials of motions to strike in these cases "are no longer immediately appealable"); *Planned Parenthood*, 890 F.3d at 833 (affirming district court's application of California anti-SLAPP statute); *Drexler v. Billet*, 784 F. App'x 548, 549 (9th Cir. 2019) (affirming dismissal under California anti-SLAPP statute); *RLI Ins. Co. v. Langan Eng'g, Envtl., Surveying & Landscape Architecture, D.P.C.*, 834 F. App'x 362, 363 (9th Cir. 2021) (affirming denial of motion to strike under California anti-SLAPP statute).

> motion must be treated as though it were a motion for summary judgment and discovery must be permitted.

890 F.3d at 833–34 (quoting *Z.F. v. Ripon Unified Sch. Dist.*, 482 F. App'x 239, 240 (9th Cir. 2012)). The Court has repeatedly reaffirmed *Planned Parenthood*, including in a precedential decision only two months ago. *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1156 (9th Cir. 2021) (affirming grant of motion to strike, explaining that *Planned Parenthood*'s "interpretation eliminates conflicts between California's anti-SLAPP law's procedural provisions and the Federal Rules of Civil Procedure"); *see also Drexler*, 784 F. App'x at 549 (applying *Planned Parenthood* in case arising under California anti-SLAPP law); *Wynn v. Bloom*, 852 F. App'x 262, 263 (9th Cir. 2021) (applying *Planned Parenthood* in case arising under Nevada anti-SLAPP law); *Clifford v. Trump*, 818 F. App'x 746, 747 (9th Cir. 2020) (applying *Planned Parenthood* in case arising under Texas anti-SLAPP law).

## B. *Planned Parenthood* controls this case and aligns with *Shady Grove* and *Erie*.

This Court's published decisions in *Planned Parenthood* and *Herring Networks* are binding and require affirmance. Nevertheless, CoreCivic urges the Court to disregard its precedent, including both pre- and post-*Shady Grove*. Opening Br. 44–45. In effect, CoreCivic argues that *Shady Grove* has nullified virtually all of this Court's anti-SLAPP jurisprudence. This is flatly wrong.

14

First, the Court's pre-*Shady Grove* opinions are not nullities.  Indeed, in a 2013 petition for rehearing en banc, the Ninth Circuit expressly considered whether to revisit two of its foundational anti-SLAPP opinions, *Newsham* and *Batzel*, in light of *Shady Grove*.  *Makaeff II*, 736 F.3d at 1181.  A majority of judges voted "no," reaffirming that Federal Rules 8, 12, and 56 do not prevent defendants from bringing motions to strike under California's anti-SLAPP statute.  *Id.* (Wardlaw, J., concurring in denial of rehearing en banc) (explaining that *Shady Grove* "does not change" the Court's analysis in *Newsham*); *cf. Makaeff I*, 715 F.3d at 272 (Kozinski, J., concurring) (disagreeing with *Newsham* while recognizing that it has not been nullified); *Travelers Cas. Ins. Co.*, 831 F.3d at 1183 (Kozinski, J., concurring) (same).

Second, the Court's published, post-*Shady Grove* opinions requiring district courts to apply California's anti-SLAPP law remain binding.  According to CoreCivic, these opinions—*Planned Parenthood* among them—cannot control this case because they do not discuss *Shady Grove*.  Opening Br. 44–45.  To support this assertion, CoreCivic relies on *Chen v. Mukasey*, 524 F.3d 1028, 1033 (9th Cir. 2008).  But *Mukasey* is inapposite.  There, this Court observed that when an opinion contains an "offhand observation" on a matter not before the panel—in other words, *dicta*—the observation is not binding.  *Id.*  Here, CoreCivic does not urge the Court to disregard an offhand observation but to overturn the core

15

holdings of multiple published opinions, including its recent decision in *Herring Networks*, which applied *Planned Parenthood*.  8 F.4th at 1156.  Neither *Mukasey* nor any other Circuit authority permits that outcome.

Furthermore, the Court in *Planned Parenthood* did not need to explicitly address *Shady Grove*.  *Planned Parenthood*'s framework—adjudicating anti-SLAPP motions under the Federal Rules—is entirely consistent with *Shady Grove*. Federal courts sitting in diversity "apply state substantive law and federal procedural law," *Hanna*, 380 U.S. at 465, using a two-step analysis to determine whether a state law applies.  First, courts ask whether a federal rule "answers the question in dispute." *Shady Grove*, 559 U.S. at 398.  If so, the rule governs, so long as it does not violate the Rules Enabling Act.  *Id*.

Because the *Planned Parenthood* framework eliminates conflicts between California's motion-to-strike provision and the Federal Rules, it raises no questions that *Shady Grove* is equipped to answer.  It assumes the Federal Rules answer the question of how a motion to strike should be adjudicated and applies them, while at the same time preserving, *inter alia*, Californians' substantive right to secure attorney fees—precisely as *Erie* and its progeny require.

California law provides that a defendant who prevails on a motion to strike under the anti-SLAPP law is entitled to attorney fees when the plaintiff's claim arose from the defendant's protected speech or petitioning activities "in connection

16

with a public issue." Cal. Civ. Proc. Code § 425.16(b)(1), (c)(1). This provision unquestionably creates a substantive right. *See, e.g.*, *Newsham*, 190 F.3d at 972–73 (recognizing that fee-shifting provision in California anti-SLAPP law is substantive and applies in federal court); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975) (recognizing that state law awarding attorney fees "reflects a substantial policy of the state" and "should be followed" in diversity cases (citations omitted)). Californians must be able to vindicate this right in federal diversity cases. Applying the Federal Rules in a way that blocks Californians from doing so would not only contravene *Erie* but also the Rules Enabling Act, which states that the Federal Rules must not "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b).

Notably, a majority of justices in *Shady Grove* recognized that when federal courts sitting in diversity interpret and apply the Federal Rules, they must do so with "sensitivity to important state interests." 559 U.S. at 421 n.5 (Stevens, J., concurring in part and concurring in the judgment) (indicating he agreed in relevant part with the four dissenting justices); *see also Makaeff II*, 736 F.3d at 1183–84 (Wardlaw, J., concurring) (citing Justice Stevens's concurrence and stating that "state interests are significant, even in determining whether there is a conflict"). *Planned Parenthood* is faithful to that instruction: it applies federal procedure in a way that respects California's interest in deterring SLAPP suits via

17

fee-shifting.  To do otherwise "would arguably enlarge state law causes of action and abridge state law speech protections."  *Makaeff II*, 736 F.3d at 1187 n.8 (Wardlaw, J., concurring) (citing *Shady Grove*, 559 U.S. at 416–17 (Stevens, J., concurring)).

And the district court's application of this framework demonstrates its workability in practice.  *CoreCivic Inc.*, 2021 WL 1267259, at *6 (dismissing claims under Rule 12(b)(6) and concluding that prevailing defendants are entitled to attorney fees under California anti-SLAPP law since alleged defamation "touches on a public issue").

To cast doubt on the Court's precedent, CoreCivic relies heavily on out-of-circuit authority.  Opening Br. 39–43.  Notably, however, the circuits to which CoreCivic turns did not consider a harmonizing approach like that adopted in *Planned Parenthood*.  In any event, Ninth Circuit law controls this case.  And in this Circuit, district courts must entertain a defendant's motion to strike under California's anti-SLAPP law—exactly as the district court in this case did.

**C.** **Applying California's substantive anti-SLAPP protections in federal court advances the twin aims of *Erie* and upholds federalism principles.**

It is well-settled that *Erie*'s mandate to apply state substantive law and federal procedure promotes two key goals: discouraging forum-shopping and avoiding the "inequitable administration of the laws."  *Shady Grove*, 559 U.S. at

417 n.2 (Stevens, J., concurring) (citing, *inter alia*, *Hanna*, 380 U.S. at 468).

These principles are significant. As Justice Harlan explained, *Erie* is "one of the

modern cornerstones of our federalism, expressing policies that profoundly touch

the allocation of judicial power between the state and federal systems." *Hanna*,

380 U.S. at 474–75 (Harlan, J., concurring).

Applying California's anti-SLAPP protections in federal court advances

both goals. As Judge Wardlaw explained:

> Without anti-SLAPP protections in federal courts, SLAPP
> plaintiffs would have an incentive to file or remove to federal
> courts strategic, retaliatory lawsuits that are more likely to have
> the desired effect of suppressing a SLAPP defendant's speech-
> related activities. Encouraging such forum-shopping chips away
> at "one of the modern cornerstones of our federalism."

*Makaeff II*, 736 F.3d at 1187 (Wardlaw, J., concurring) (quoting *Hanna*, 380 U.S.

at 474 (Harlan, J., concurring)). Just as SLAPP plaintiffs have engaged in lateral

forum-shopping across states, *see* Part I.C *supra*, they could also be expected to

engage in vertical forum-shopping from state to federal court if the federal forum

allowed them to evade California's fee-shifting provision. *Cf.* William H.J.

Hubbard, *An Empirical Study of the Effect of* Shady Grove v. Allstate *on Forum

Shopping in the New York Courts*, 10 J. L. Econ. & Pol'y 151, 152–53 (2013)

(documenting "fairly dramatic" increase in "vertical" forum-shopping from state to

federal courts induced by *Shady Grove*). Where diversity among the parties exists,

plaintiffs would merely have to inflate the value of their claims to bring suit in

federal court. This could "put the federal courts at risk of being swept away in a rising tide of frivolous state actions that would be filed in [this] circuit's federal courts." *Makaeff II*, 736 F.3d at 1187 (Wardlaw, J., concurring).

Applying California's anti-SLAPP protections in federal court also promotes the equitable administration of the laws. Californians can rely on these protections without fear that they may be unavailable in federal court. Under CoreCivic's proffered approach, Californians would be faced with "two conflicting systems of law controlling" their activity, giving rise "to a debilitating uncertainty in the planning of everyday affairs." *Hanna*, 380 U.S. at 474 (Harlan, J., concurring).

Indeed, refusing to recognize "how states have limited" SLAPPs in federal court is "bad policy." *Makaeff II*, 736 F.3d at 1187 (Wardlaw, J., concurring). And it undermines federalism principles by threatening to "flush away state legislatures' considered decisions on matters of state law." *Id.* The Court should thus reject CoreCivic's invitation to revisit its approach in *Planned Parenthood*.

## CONCLUSION

For the foregoing reasons, amici respectfully urge the Court to affirm.

Dated: October 26, 2021

Respectfully submitted,

*s/ Katie Townsend*
*Counsel of Record*
Sarah S. Matthews
Charles Hogle*
REPORTERS COMMITTEE FOR
    FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Telephone: (202) 795-9300
Facsimile: (202) 795-9310
ktownsend@rcfp.org
*\*Of counsel*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s):** 20-17285

I am the attorney for *amici curiae* the Reporters Committee for Freedom of the Press and 33 media organizations.

**This brief contains    5,227    words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[  ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[**X**] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [  ] it is a joint brief submitted by separately represented parties;
    [  ] a party or parties are filing a single brief in response to multiple briefs; or
    [  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** *s/ Katie Townsend*      **Date** October 26, 2021