# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CORECIVIC, INC.

*Plaintiff-Appellant*

v.

CANDIDE GROUP, LLC AND
MORGAN SIMON

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of California at San Francisco
(Case No. 3:20-cv-03792-WHA, Hon. William Alsup)

# REPLY BRIEF OF
# PLAINTIFF-APPELLANT CORECIVIC, INC.

ELIZABETH M. LOCKE, P.C.
JOSEPH R. OLIVERI
DANIEL D. MAULER
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
(202) 628-7400
libby@clarelocke.com
joe@clarelocke.com
dan.mauler@clarelocke.com

*Attorneys for Plaintiff-Appellant*
November 15, 2021          *CoreCivic, Inc.*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ............................................................................. 1

ARGUMENT ..................................................................................... 4

I.    Defendants Cannot Avoid The Conclusion That California's Anti-SLAPP Statute Cannot Apply In Federal Court Under *Shady Grove*. ........................ 4

II.   Defendants Offer No Valid Reason To Affirm The District Court's Judgment Striking CoreCivic's Claims On The Merits. .............................. 11

      A.    Defendants Cannot Avoid the District Court's Error in Holding Defendants' Detaining Separated Children Statements "True Enough." .................................................................. 12

      B.    Defendants Cannot Rescue the District Court's Erroneous Dismissal of CoreCivic's Defamation Claims Based on Defendants' Lobbying Statements. .................................... 16

            1.    Remand Is Required Because the District Court Did Not Consider CoreCivic's Claims Based on Defendants' Lobbying Statements. ........................................................... 16

            2.    Defendants' Lobbying Statements Are Capable of a Defamatory Meaning. ............................................... 17

            3.    Defendants' Lobbying Statements Are Not Non-Actionable Opinion. ....................................................... 20

      C.    Defendants Are Wrong That CoreCivic Failed to Adequately Plead Actual Malice. .................................................................... 23

            1.    The Actual Malice Standard Is Not Prohibitive, Especially at the Pleadings Stage. .................................................. 23

            2.    CoreCivic Pled Facts Constituting Direct Evidence of Actual Malice—Which Defendants Ignore. ........................................ 25

i

3.  CoreCivic Pled Facts Constituting Circumstantial Evidence of Actual Malice—Which Defendants Mischaracterize.......... 28

CONCLUSION ...................................................................................... 32

CERTIFICATE OF COMPLIANCE ..................................................... 33

CERTIFICATE OF SERVICE................................................................ 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Foreign Policy Grp., LLC*,
   783 F.3d 1328 (D.C. Cir. 2015) ................................................................ 1, 5, 7

*Antonovich v. Superior Court*,
   234 Cal. App. 3d 1041 (1991) ........................................................................ 29

*Aversa v. United States*,
   99 F.3d 1200 (1st Cir. 1996) .......................................................................... 17

*Barry v. State Bar of Cal.*,
   2 Cal. 5th 318 (2017) ........................................................................................ 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 554 (2007) .......................................................................................... 6

*Bently Rsrv. LP v. Papaliolios*,
   218 Cal. App. 4th 418 (2013) ................................................................... 12, 15

*Biro v. Conde Nast*,
   963 F. Supp. 2d 255 (S.D.N.Y. 2013),
   *aff'd*, 807 F.3d 541 (2d Cir. 2015),
   *aff'd*, 622 F. App'x 67 (2d Cir. 2015) ........................................................... 31

*Borg v. Boas*,
   231 F.2d 788 (9th Cir. 1956) .......................................................................... 22

*Carbone v. Cable News Network, Inc.*,
   910 F.3d 1345 (11th Cir. 2018) ............................................................ 1, 5, 6, 7

*Chen v. Mukasey*,
   524 F.3d 1028 (9th Cir. 2008) .......................................................................... 9

*Cochran v. NYP Holdings, Inc.*,
   58 F. Supp. 2d 1113 (C.D. Cal. 1998) ........................................................... 22

*Eastwood v. Nat'l Enquirer, Inc.*,
   123 F.3d 1249 (9th Cir. 1997) ........................................................................ 24

*Flatley v. Mauro,*
   139 P.3d 2 (Cal. 2006) .................................................................... 2, 7

*Flowers v. Carville,*
   310 F.3d 1118 (9th Cir. 2002) ............................................................ 23

*Harris v. City of Seattle,*
   152 F. App'x 565 (9th Cir. 2005) ................................................... 24, 30

*Harte-Hanks Commc'ns, Inc. v. Connaughton,*
   491 U.S. 657 (1989) ................................................ 24, 25, 28, 29, 30

*Herbert v. Lando,*
   441 U.S. 153 (1979) ......................................................................... 24

*Herring Networks, Inc. v. Maddow,*
   8 F.4th 1148 (9th Cir. 2021) ..................................................... 2, 8, 22

*Hutchinson v. Proxmire,*
   443 U.S. 111 (1979) ......................................................................... 25

*Iancu v. Brunetti,*
   139 S. Ct. 2294 (2019) ........................................................................ 9

*Ibarra v. Carpinello,*
   No. B220934, 2011 WL 925719 (Cal. Ct. App. 2011) ...................... 32

*Intercon Sols. v. Basel Action Network,*
   969 F. Supp. 2d 1026 (N.D. Ill. 2013),
   *aff'd*, 791 F.3d 729 (7th Cir. 2015) ................................................ 1, 5

*Jankovic v. Int'l Crisis Grp.,*
   822 F.3d 576 (D.C. Cir. 2016) ........................................................... 30

*Jarrow Formulas, Inc. v. LaMarche,*
   74 P.3d 737 (Cal. 2003) ....................................................................... 7

*Johnson v. Riverside Healthcare Sys., LP,*
   534 F.3d 1116 (9th Cir. 2008) ........................................................... 17

*Kaelin v. Globe Commc'ns Corp.,*
   162 F.3d 1036 (9th Cir. 1998) .................................................... 25, 31

iv

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ............................................................. 15

*Klocke v. Watson*,
  936 F.3d 240 (5th Cir. 2019) ........................................................... 1, 5

*La Liberte v. Reid*,
  966 F.3d 79 (2d Cir. 2020) .................................................... 1, 5, 6, 7

*Lampo Grp., LLC v. Paffrath*,
  No. 18-cv-1402, 2019 WL 3305143 (M.D. Tenn. 2019) ................. 1, 5

*Lawrence v. Bauer Publ'g & Printing Ltd.*,
  459 U.S. 999 (1982) ........................................................................... 25

*Los Lobos Renewable Power, LLC v. AmeriCulture, Inc.*,
  885 F.3d 659 (10th Cir. 2018) ........................................................ 1, 5

*Manzari v. Associated Newspapers Ltd.*,
  830 F.3d 881 (9th Cir. 2016) ............................................................. 24

*Masson v. New Yorker Mag., Inc.*,
  960 F.2d 896 (9th Cir. 1992) ............................................................. 29

*McFarlane v. Sheridan Square Press, Inc.*,
  91 F.3d 1501 (D.C. Cir. 1996) .......................................................... 31

*Med. Marijuana, Inc. v. ProjectCBD.com*,
  46 Cal. App. 5th 869 (2020) .............................................................. 18

*Milkovich v. Lorain J. Co.*,
  497 U.S. 1 (1990) ............................................................................... 21

*Miller v. Gammie*,
  335 F.3d 889 (9th Cir. 2003) ............................................................... 9

*Monster Energy Co. v. Schechter*,
  7 Cal. 5th 781 (2019) ....................................................................... 2, 8

*N.Y. Times v. Sullivan*,
  376 U.S. 254 (1964) ........................................................................... 31

*Nasrallah v. Barr*,
    140 S. Ct. 1683 (2020) ........................................................................ 9

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
    151 Cal. App. 4th 688 (2007) ...................................................... 24, 25

*Palin v. N.Y. Times Co.*,
    940 F.3d 804 (2d Cir. 2019) ................................................. 23, 26, 28

*Partington v. Buglosi*,
    56 F.3d 1147 (9th Cir. 1995) ............................................................ 22

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828 (9th Cir. 2018) ...................................................... 2, 8, 9

*Planned Parenthood of Greater Wash. & N. Idaho v.*
*U.S. Dep't of Health & Human Servs.*,
    946 F.3d 1110 (9th Cir. 2020) ......................................................... 17

*Rand Res., LLC v. City of Carson*,
    6 Cal. 5th 610 (2019) ........................................................................ 8

*Raymond v. Avectus Healthcare Sols., LLC*,
    859 F.3d 381 (6th Cir. 2017) ............................................................. 6

*Riley v. Kernan*,
    815 F. App'x 163 (9th Cir. 2020) ................................................... 16

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ................................... 1, 2, 3, 4, 5, 6, 7, 8, 10, 11

*Sherman v. Network Com. Inc.*,
    346 F. App'x 211 (9th Cir. 2009) ................................................... 16

*Shoen v. Shoen*,
    48 F.3d 412 (9th Cir. 1995) ............................................................ 30

*Solano v. Playgirl, Inc.*,
    292 F.3d 1078 (9th Cir. 2002). ............................................. 24, 25, 30

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) ................................................................... 25, 28

*Sundance Image Tech., Inc. v. Inkjetmall.com, Ltd.*,
No. 02-cv-2258, 2006 WL 8455346 (S.D. Cal. 2006) ...................................... 19

*Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*,
330 F.3d 1110 (9th Cir. 2003) ...................................... 23, 28, 30

*Sweetwater Union High Sch. Dist. v. Gilbane Bldg. Co.*,
6 Cal. 5th 931 (2019) ...................................... 8

*Tavoulareas v. Piro*,
763 F.2d 1472 (D.C. Cir. 1985) ...................................... 31, 32

*Tavoulareas v. Piro*,
817 F.2d 762 (D.C. Cir. 1987) ...................................... 24, 30

*Unelko Corp. v. Rooney*,
912 F.2d 1049 (9th Cir. 1990) ...................................... 21

*Ventura v. Kyle*,
63 F. Supp. 3d 1001 (D. Minn. 2014),
*rev'd on other grounds*, 825 F.3d 876 (8th Cir. 2016) ...................................... 31

*White v. Fraternal Order of Police*,
909 F.2d 512 (D.C. Cir. 1990) ...................................... 17

*Wilson v. Cable News Network, Inc.*,
7 Cal. 5th 871 (2019) ...................................... 10

*Zerangue v. TSP Newspapers, Inc.*,
814 F.2d 1066 (5th Cir. 1987) ...................................... 31

**Statutes**

Cal. Civ. Code §45 ...................................... 18

Cal. Civ. Code §48 ...................................... 19

Cal. Code Civ. Proc. §425.16 ...................................... 4, 5, 7, 10

Cal. Penal Code §26 ...................................... 18

Cal. Welf. & Inst. Code §602.1 ...................................... 18

D.C. Code §16-5502 ...................................... 5

Ga. Code §9-11-11.1 ............................................................... 5

Tex. Civ. Prac. & Rem. Code §27.005 .................................... 5

Wash. Rev. Code §4.24.525 ................................................... 5

**Rules**

Fed. R. Civ. P. 11 ......................................................... 1, 2, 11

Fed. R. Civ. P. 12 ............................................ 1, 2, 3, 6, 9, 11

Fed. R. Civ. P. 56 ................................................... 1, 2, 6, 9

Fed. R. Civ. P. 8 ...................................................... 1, 2, 6

**Other Authorities**

1 Rodney Smolla, *Law of Defamation* §3:71 ...................... 30

1 Rodney Smolla, *Law of Defamation* §4:4 ........................ 17

Restatement (Second) of Torts §559 .................................. 17

Restatement (Second) of Torts §580A .............................. 32

## **INTRODUCTION**

Defendants' (and their media-*Amici*'s) efforts to avoid the Federal Rules of Civil Procedure—and the Supreme Court's binding precedent explaining when they apply—are remarkable. Defendants go to great lengths to side-step the Supreme Court's analytical framework in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), because every Circuit to consider whether state Anti-SLAPP statutes—including California's—can apply in federal court under it have held that they cannot because they "answer the same question" as Federal Rules 8, 11, 12, and 56.[1]

Defendants thus turn *Shady Grove*'s analytical framework on its head by arguing California's Anti-SLAPP Statute applies in federal court because it is "substantive" under *Erie*. (Defs.' Br. 22-29.) But Defendants put the cart before the horse: Under *Shady Grove,* courts "***do not*** wade into *Erie*'s murky waters ***unless*** the federal rule is inapplicable or invalid." 559 U.S. at 398.[2] And Defendants do

---

[1] *La Liberte v. Reid*, 966 F.3d 79, 86-88 & n.1 (2d Cir. 2020) (California's Statute); *Klocke v. Watson*, 936 F.3d 240, 244-49 (5th Cir. 2019); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1349-57 (11th Cir. 2018); *Los Lobos Renewable Power, LLC v. AmeriCulture, Inc.*, 885 F.3d 659, 673 (10th Cir. 2018); *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1333-37 (D.C. Cir. 2015) (Kavanaugh, J.); *Intercon Sols. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1050 (N.D. Ill. 2013), *aff'd*, 791 F.3d 729 (7th Cir. 2015); *see also Lampo Grp., LLC v. Paffrath*, No. 18-cv-1402, 2019 WL 3305143, at *3 (M.D. Tenn. 2019) (California's Statute).

[2] Emphasis added unless otherwise noted.

not contest that California's Anti-SLAPP Statute "answer[s] the same question[s] as" Federal Rules 8, 11, 12, and 56 or contend that those rules are invalid. Nor could they. But even if Defendants could skip *Shady Grove*'s first step, they ask this Court to ignore the placement of California's Anti-SLAPP Statute within California's statutory code (California Code of ***Civil Procedure***) and the California Supreme Court's holding that California's Anti-SLAPP Statute is ***not*** "a substantive rule of law," *Flatley v. Mauro*, 139 P.3d 2, 18 (Cal. 2006), and "only provides a ***procedure*** for weeding out, at an early stage, meritless claims," *Monster Energy Co. v. Schechter*, 7 Cal. 5th 781, 788 (2019).

Because Defendants cannot dispute that *Shady Grove*'s analysis compels the conclusion that six other Circuits have reached—state Anti-SLAPP statutes cannot apply in federal court—they attempt to change the conversation. *First*, Defendants argue (remarkably) that this Panel lacks authority to follow *Shady Grove* because other Ninth Circuit panels have applied the Anti-SLAPP statute since *Shady Grove* was decided. (Defs.' Br. 22-26 (citing *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828 (9th Cir. 2018), and *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148 (9th Cir. 2021)).) But, respectfully, this Panel lacks the authority ***not*** to follow binding Supreme Court precedent, including *Shady Grove*, especially where, as here, no panel or *en banc* decision of this Court has analyzed— much less decided—whether California's Anti-SLAPP statute can apply in federal

court under *Shady Grove*. Indeed, no party's brief even cited *Shady Grove*. (These decisions just assumed the statute applies under pre-*Shady Grove* precedent.)

*Second*, Defendants suggest (incorrectly) that this case is only about attorneys' fees. (Defs.' Br. 22.) But this appeal does ***not*** arise from an order on attorneys' fees; it arises from the district court's order granting Defendants' *Special Motion to Strike* under California's Anti-SLAPP Statute. Although the statute also provides that "prevailing defendant[s] *on a special motion to strike* shall be entitled to recover [their] attorney's fees and costs," only the predicate question is at issue: Whether California's Anti-SLAPP Statute applies in federal court such that Defendants could file—and the district court could grant—a special motion to strike under it? Defendants know that, because this Court dismissed Defendants' appeal of the district court's subsequent, non-final attorneys'-fees order for lack of jurisdiction.[3] (If California's Anti-SLAPP Statute does not apply and Defendants therefore cannot bring a Special Motion to Strike, any fee issue will be moot.)

*Finally*, Defendants spend the bulk of their brief attempting to shift the conversation to the merits of Plaintiff's complaint. But Defendants did not file a Rule 12(b)(6) motion to dismiss—only a Special Motion to Strike under California's

---

[3] *CoreCivic, Inc. v. Candide Grp., LLC*, No. 21-15813 (9th Cir. 2021) [Dkt. 11].

(inapplicable) Anti-SLAPP Statute. Thus, this Court can only reach the merits if California's Anti-SLAPP Statute applies in federal court—but it does not.

Even if the Court were to consider the merits, it should reverse. *First*, Defendants offer no valid reason to excuse the district court's error in holding Defendants' statements that CoreCivic "operat[es] immigrant detention facilities for children separated from their parents at the [U.S.] border" (Defendants' "Detaining Separated Children" Statements) "true enough" by finding facts at the pleadings stage and adopting Defendants' proffered construction of those statements to the exclusion of reasonable constructions that render them demonstrably false. And contrary to Defendants' assertion, CoreCivic made no admission that it separates immigrant parents from their children (it does not), and no such "facts" are part of the record. *Second*, Defendants cannot avoid the district court's error in striking CoreCivic's complaint in its entirety without considering CoreCivic's distinct claims based on Defendants' Lobbying Statements. *Third*, CoreCivic adequately pled actual malice—even the district court did not hold otherwise.

## ARGUMENT

### I. Defendants Cannot Avoid The Conclusion That California's Anti-SLAPP Statute Cannot Apply In Federal Court Under *Shady Grove*.

Although Defendants try to distract from the key issue, this appeal presents a straightforward question: Under *Shady Grove*, can California's Anti-SLAPP Statute (California Code of Civil Procedure §425.16) apply in federal court such that

Defendants could file—and the district court could grant—a Special Motion to Strike under it? Every Circuit that has considered California's Anti-SLAPP Statute (or "analogous" anti-SLAPP statutes) under *Shady Grove*'s majority opinion—six Circuits in all—has answered the question the same way: **_No._** *La Liberte*, 966 F.3d at 86-88 & n.1; *Klocke*, 936 F.3d at 244-49; *Carbone*, 910 F.3d at 1349-57; *Los Lobos*, 885 F.3d at 673; *Abbas*, 783 F.3d at 1333-37 (Kavanaugh, J.) *Intercon*, 969 F. Supp. 2d at 1050, *aff'd*, 791 F.3d 729; *Lampo*, 2019 WL 3305143, at *3.[4]

Defendants concede that *Shady Grove* "called for a shift in how federal courts evaluate conflicts" between federal and state law. (Defs.' Br. 22.) Under *Shady Grove*, federal courts:

> *must first determine whether [a Federal Rule of Civil Procedure] answers the question in dispute. If it does, it governs—[state] law notwithstanding*—unless it exceeds statutory authorization or Congress's rulemaking power. We do ***not*** wade into *Erie*'s murky waters unless the federal rule is inapplicable or invalid.

559 U.S. at 398. If a valid Federal Rule "answers the question in dispute," "it governs" regardless whether the state law is putatively substantive or procedural

---

[4] Defendants half-heartedly assert that some of these cases are distinguishable because they address Anti-SLAPP statutes other than California's. (Defs.' Br. 32.) But those other statutes are directly "analogous" (and materially similar) to California's Statute: they impose substantially the same pleading burdens, discovery limitations, and fee-shifting. *La Liberte*, 966 F.3d at 86 n.1. *Compare* Cal. Code Civ. Proc. §425.16(b), *with* Ga. Code §9-11-11.1(b), D.C. Code §16-5502(a), Tex. Civ. Prac. & Rem. Code §27.005, *and* Wash. Rev. Code §4.24.525 (subsequently repealed).

under *Erie* and regardless of the "policies [it] pursue[s]" or "subjective intention of the state legislature" enacting it. *Id.* at 404-06.[5]

Defendants do not contest that California's Anti-SLAPP Statute "answer[s] the same question[s] as" Federal Rules 8, 12, and 56. *E.g.*, *La Liberte*, 966 F.3d at 87. Of course it does. Rule 8 sets forth the pleading standard for complaints, requiring only that they "contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2); *Carbone*, 910 F.3d at 1350. And under Rule 12(b)(6), plaintiffs need only "allege 'enough facts to state a claim to relief that is ***plausible*** on its face'"—which "'***does not impose a probability requirement at the pleading stage***.'" *La Liberte*, 966 F.3d at 87 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007)). Moreover, ***defendants—not plaintiffs—*** bear the burden of demonstrating that a Rule 12(b)(6) motion to dismiss should be granted. *Raymond v. Avectus Healthcare Sols., LLC*, 859 F.3d 381, 383 (6th Cir. 2017).

By contrast, as the Second Circuit explained in addressing the very California Anti-SLAPP Statute at issue here, that Statute answers the same questions as Rules 8 and 12 but "requires outright dismissal unless ***the plaintiff*** can '***establish[] a probability*** that he or she will prevail on the claim,'" and thereby "establishes the

---

[5] *Amici* emphasize the goals of anti-SLAPP statutes, but those are irrelevant to the *Shady Grove* analysis.

circumstances under which a court must dismiss a plaintiff's claim before trial." *La Liberte,* 966 F.3d at 87 (quoting Cal. Code Civ. Proc. §425.16(b)(3)). And California's Anti-SLAPP Statute "'abrogates [federal standards] ... by requiring ***the plaintiff*** to establish that success is not merely plausible but ***probable***,'" ***and*** by changing the burden of proof on the pleadings from defendant to plaintiff. *Id.* (quoting *Carbone*, 910 F.3d at 1353); *Abbas*, 783 F.3d at 1333-35. Defendants understand these differences—they parroted the stricter Anti-SLAPP Statute standard in their Special Motion to Strike. (DE 41 at 2.)

Defendants have no response to this straightforward *Shady Grove* analysis, so they attempt to avoid it.

***First***, Defendants and *Amici* turn *Shady Grove* on its head by arguing California's Anti-SLAPP Statute applies in federal court because it (or at least its attorneys'-fees provision) is "substantive" under *Erie*. (Defs.' Br. 25-29.) But *Shady Grove* is clear: courts "***do not*** wade into *Erie*'s murky waters ***unless*** the federal rule is inapplicable or invalid." 559 U.S. at 398. And even if the question of procedure-versus-substance were relevant, the California Supreme Court has held that California's Anti-SLAPP Statute—codified in California's Code of ***Civil Procedure***—is ***not*** ***"a substantive rule of law"*** but rather ***is "a procedural device*** for screening out meritless claims." *Flatley*, 139 P.3d at 18; *Jarrow Formulas, Inc. v. LaMarche*, 74 P.3d 737, 743 (Cal. 2003). Indeed, the Court recently reiterated

that "section 425.16 sets out *a procedure* for striking complaints in harassing lawsuits"; "[t]he anti-SLAPP statute does not insulate defendants from any liability.... *It only provides a procedure* for weeding out, at an early stage, meritless claims." *Monster*, 7 Cal. 5th at 788; *Sweetwater Union High Sch. Dist. v. Gilbane Bldg. Co.*, 6 Cal. 5th 931, 940 (2019); *accord Rand Res., LLC v. City of Carson*, 6 Cal. 5th 610, 615 (2019) ("the anti-SLAPP statute procedurally protect[s] statements"); *Barry v. State Bar of Cal.*, 2 Cal. 5th 318, 328 (2017) ("procedural protections"). Defendants admit "the procedural provisions of California's anti-SLAPP statute do not apply in federal court." (Defs.' Br. 25.)

**Second**, Defendants and *Amici* cite this Court's decisions in *Planned Parenthood* and *Herring Networks* and contend, incredulously, that because this Court applied California's Anti-SLAPP Statute since *Shady Grove*, the Panel lacks authority to follow the Supreme Court's *Shady Grove* decision. Nonsense. As the district court acknowledged, the question of the Statute's applicability under *Shady Grove* was not presented for decision in either case (or any other case) or even briefed, much less actually decided. (*See* ER-20 ("Our own court of appeals, however, has not yet expressly decided how *Shady Grove* applies to a state anti-SLAPP statute."); ER-21 ("[T]he relationship between California's anti-SLAPP statute and *Shady Grove* remains an expressly undecided issue in our circuit, including as to attorney's fees"; "*Shady Grove* also went unmentioned in the

[*Planned Parenthood*] appellate briefs[.]"))  The Court simply assumed the Statute

applied under now-abrogated, pre-*Shady Grove* precedent.  This Panel is not bound

by abrogated precedent or applications of California's Anti-SLAPP Statute where

the question of its applicability under *Shady Grove* was not "presented for review."

*Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003); *Chen v. Mukasey*, 524 F.3d

1028, 1033 (9th Cir. 2008).  This Panel *is* bound by Supreme Court precedent.

It is irrelevant that this Court in *Planned Parenthood* essentially re-wrote

California's Anti-SLAPP Statute by construing it to apply either a Rule 12(b)(6) or

Rule 56 standard—contrary to the Statute's plain text that a special motion to strike

shall be granted "unless ... the plaintiff has established that there is a probability that

[she] will prevail on [her] claim" based on "the pleadings, and supporting and

opposing affidavits."   The relevant question is ***not*** whether the statute

"unavoidabl[y] conflict[s]" with the Federal Rules (Defs.' Br. 25-28), only whether

the Statute and Federal Rules "answer the same question."  Even as re-written in

*Planned Parenthood*, the Statute and Federal Rules plainly do.  In any event,

judicially rewriting California's Anti-SLAPP Statute is independently problematic.

The U.S. Supreme Court made clear following *Planned Parenthood* that "it is not

the proper role of the courts to rewrite [] laws."  *Nasrallah v. Barr*, 140 S. Ct. 1683,

1692 (2020); *accord Iancu v. Brunetti*, 139 S. Ct. 2294, 2301 (2019).  And the

California Supreme Court expressly held that courts "cannot ... rewrite the [Anti-

SLAPP] statute to create an exception the Legislature has not enacted." *Wilson v. Cable News Network, Inc.*, 7 Cal. 5th 871, 892 (2019). Indeed, the *Shady Grove* majority itself admonished that courts may not rewrite statutes to avoid conflicts with Federal Rules: "The manner in which the law 'could have been written' has no bearing; what matters is the law the Legislature *did* enact. We cannot rewrite that[.]" 559 U.S. at 493.

**Third**, Defendants attempt a sleight-of-hand: They assert that "the sole provision of [California's Anti-SLAPP Statute] at issue in this case" is its "attorneys' fees provision." (Defs.' Br. 22.)[6] But this appeal does ***not*** arise from an order on attorneys' fees; plainly, it arises from the district court's order granting Defendants' *Special Motion to Strike* under California's Anti-SLAPP Statute (§425.16(b)). Although California's Anti-SLAPP Statute *also* contains a provision relating to attorneys' fees, that provision is linked to—and secondary to—the Statute's provision establishing special motions to strike: only "a prevailing defendant *on a special motion to strike* shall be entitled to recover his or her attorney's fees and costs." Cal. Code. Civ. Proc. §425.16(c). Thus, Defendants can only obtain attorneys' fees under the Statute if they can bring (and prevail on) a special motion

---

[6] Defs.' Br. 2 ("sole provision at issue"), 18 ("fee-shifting provision solely at issue"), 28 ("attorneys' fees provision at issue"), 32 ("fees provision ... at issue"), 35 ("only relevant provision of the anti-SLAPP statute [is] ... the fees provision").

to strike under it. But under *Shady Grove*, they cannot; accordingly, Defendants' motion should have been denied.

In any event, Defendants ignore that Federal Rules 11 and 12 "answer the same question" regarding attorneys' fees as California's Anti-SLAPP Statute: When are defendants entitled to fees if plaintiff's complaint fails to state a claim? (Opening Br. 42-43.) The district court recognized exactly that, explaining "[b]oth Rule 11 and Section 425.16(c) address when to award fees for abusive [*i.e.*, non-meritorious] litigation tactics, but employ different standards" (ER-23), but then failed to apply *Shady Grove* and undertook a substance-versus-procedure *Erie* analysis. Defendants similarly try to avoid *Shady Grove* by arguing that the Anti-SLAPP Statute's fee provision applies because it and Rule 11 do not directly collide and are thus "compatible." (Defs.' Br. 29-30 (citing *Erie*).) But that is the precise analysis from the Second Circuit's *Shady Grove* decision and *Newsham* that the Supreme Court reversed and abrogated, respectively. Under *Shady Grove*, this Court cannot "wade into *Erie*'s murky waters" unless the Federal Rules are invalid—and they are not.

## II. Defendants Offer No Valid Reason To Affirm The District Court's Judgment Striking CoreCivic's Claims On The Merits.

Because Defendants strategically filed only a Special Motion to Strike under California's inapplicable Anti-SLAPP Statute—and did not, even alternatively, move to dismiss under Rule 12(b)(6) (*see* DE 72 at 21 n.1)—the Panel should reject

Defendants' invitation to consider the merits of this case. But even if the Court considers the merits, it should reverse.

### A. Defendants Cannot Avoid the District Court's Error in Holding Defendants' Detaining Separated Children Statements "True Enough."

Defendants' attempt to avoid the district court's error in holding their Detaining Separated Children Statements "true enough" is remarkable. Defendants concede "CoreCivic does not and has never operated immigration detention facilities for children separated from their parents at the border." (ER-146, ER-153–54, ER-181, ER-190, ¶¶2, 42-44, 123, 138.) And Defendants do not dispute that on the pleadings a court may only determine "whether a challenged statement is reasonably susceptible of **_an_** interpretation which implies a provably false assertion of actual fact," after which only **_the jury—not the court—_**may "determine whether such an interpretation was in fact conveyed." *Bently Rsrv. LP v. Papaliolios*, 218 Cal. App. 4th 418, 428 (2013). Thus, Defendants assert that their Detaining Separated Children Statements are true because they "do not by any reasonable measure convey to a lay reader that CoreCivic houses *children* separated from their families," and CoreCivic "houses adult members of separated families." (Defs.' Br. 35-40.) But Defendants blink reality.

Review of Defendants' publications confirms they are reasonably capable of conveying that "CoreCivic operates immigrant detention facilities for children

separated from their parents at the border."  (ER-180, ER-189, ¶¶121, 136.)

***And Defendants admitted exactly that.***  Defendants wrote that "CoreCivic ... manag[es] some of the detention centers that have been at the heart of the controversy over the separation of families ... crossing the US border" and has "profit[ed] off the pain and separation of families"—and in the "Clarification" Defendants added to their March 5 Article, ***Defendants expressly admit that "the terminology of 'family separation' tends to focus on the detention of <u>children</u>."*** (ER-155–58, ER-161, ER-172–82, ¶¶48, 55, 66, 120, 135; ER-193–99, ER-209–14.) Defendants do not even acknowledge that dispositive admission.[7]

But there's more.  Defendants specifically connected CoreCivic to "the detention of children" by discussing CoreCivic alongside a photo of protestors holding baby clothes and signs reading "I AM A CHILD":

---

[7] Although Simon *also* wrote that she *personally* "view[s] the phenomena of family separation as more broad," that does nothing to change her acknowledgement that the issue "tends to focus on the detention of *children*."  (ER-214.)



(ER-194.)  Defendants then discussed CoreCivic in the context of "numerous cases" of "abuse of migrant *children* within detention facilities" and "particular concern over privately managed facilities."  (ER-172–89, ¶¶120, 135; ER-196.)  Defendants even connected various banks' withdrawals of funding from CoreCivic to the detention of children.  (ER-156, ¶51; ER-200–03.)

Thus, even if Defendants' Detaining Separated Children Statements *could* convey that CoreCivic "houses adult members of separated families," those statements can *also* reasonably convey that CoreCivic houses *children* separated

from their families. The district court erred by choosing among interpretations; only a jury may do so. *Bently*, 218 Cal. App. 4th at 428.

But either way, the court erred by improperly finding as fact at the pleadings stage that CoreCivic houses parents of children separated at the border. (ER-23.) That "fact" has no basis in the pleadings, and "courts may not consider material outside the pleadings when assessing the sufficiency of a complaint." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Defendants' attempt to twist counsel's statements during oral argument that "CoreCivic does operate immigrant detention facilities for adults" (ER-133:22-23) cannot change that. Although CoreCivic operates detention facilities for adults, its policies have remained consistent: CoreCivic does ***not*** house or operate detention facilities for parents separated from their children pursuant to the Government's family separation policy; CoreCivic only houses adults regardless of parental status and has no decision-making authority about what adults the Government detains or when, why, or how the Government detains them. (ER-98:10–99:5; ER-153–154, ER-160, ¶¶42-44, 58; ER-215–22.) Even if, speculatively, CoreCivic housed adults who happen to have children, that does not connect CoreCivic to "family separation." At the very least, it presents a jury question.

**B. Defendants Cannot Rescue the District Court's Erroneous Dismissal of CoreCivic's Defamation Claims Based on Defendants' Lobbying Statements.**

**1. Remand Is Required Because the District Court Did Not Consider CoreCivic's Claims Based on Defendants' Lobbying Statements.**

The record is clear: The district court, in its one-paragraph order, struck CoreCivic's entire Complaint based solely on its (incorrect) conclusion that Defendants' *Detaining Separated Children Statements* were "true enough"; it did not recognize, much less consider, CoreCivic's claims based on Defendants' *Lobbying Statements*. (ER-139.) And this Circuit's law is clear: When a district court dismisses an entire action but "fail[s] to address" all claims, it reversibly errs and this Court must "remand ... for [the district court] to consider [the claim] in the first instance." *Riley v. Kernan*, 815 F. App'x 163, 165 (9th Cir. 2020); Opening Br. 57-58 (collecting cases).

Defendants do not (and cannot) distinguish that precedent, but instead invite this Court to ignore it by citing the general principle that appellate courts "may affirm based on any ground supported by the record." (Defs.' Br. 40-41.) But Defendants invite error; even Defendants' caselaw requires remand for consideration of CoreCivic's claim in the first instance.[8]

---

[8] *Sherman v. Network Com. Inc.*, 346 F. App'x 211, 214 (9th Cir. 2009) ("remand[ing] to the district court to address [claim] in the first instance" where court "failed to address th[e] claim"); *Johnson v. Riverside Healthcare Sys., LP*, 534

## 2. Defendants' Lobbying Statements Are Capable of a Defamatory Meaning.

Even if this Court were to address in the first instance Defendants' argument that their Lobbying Statements are not defamatory, it must reject Defendants' argument. According to Defendants, their Lobbying Statements are not defamatory because it is not defamatory to suggest CoreCivic "engaged in legal lobbying to benefit its business" by advocating for "tough-on-crime laws and harsh immigration policies," and CoreCivic supposedly failed to plead special damages. But Defendants fundamentally mischaracterize their Lobbying Statements and ignore CoreCivic's well-pled facts.

To begin, that allegation *can* be defamatory. To be defamatory, a statement need not "expose[] [CoreCivic] to hatred [or] contempt" in everyone's eyes; "it is enough that [it] would tend to prejudice [CoreCivic] in the eyes of a substantial and respectable minority of [readers]." Restatement (Second) of Torts §559 cmt. e; *accord Aversa v. United States*, 99 F.3d 1200, 1206 (1st Cir. 1996); *White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990); 1 Rodney Smolla, *Law of Defamation* §4:4.

---

F.3d 1116, 1124 (9th Cir. 2008) (reversing dismissal; no indication court forgot to consider claims); *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1110 (9th Cir. 2020) ("an appellate court does *not* decide issues that the trial court did not decide," subject to limited exceptions inapplicable here).

But regardless, contrary to Defendants' assertion, their Lobbying Statements are not solely capable of conveying that CoreCivic advocated policy positions or, in a vacuum, lobbied for harsher criminal and immigration laws. Rather, Defendants falsely claimed that CoreCivic spent millions "lobbying ... for harsher criminal justice and immigration laws" in their reporting on immigrant children being separated from their families and abused by the people detaining them. And they did so while asserting that CoreCivic's business model depends on detaining as many people as possible, "justly *or unjustly*." (ER-212.) Viewed in context as they must be, *Med. Marijuana, Inc. v. ProjectCBD.com*, 46 Cal. App. 5th 869, 888 (2020), Defendants' Lobbying Statements can reasonably—easily—be understood as not simply claiming that CoreCivic lobbied for harsher criminal and immigration laws, but that it did so *for the purpose of* enriching itself by detaining (and subjecting to abuses) criminally non-culpable[9] children separated from their parents.

Such claims are more than capable of "exposing [CoreCivic] to hatred, contempt, ridicule, or obloquy," *or* "caus[ing] [CoreCivic] to be shunned or avoided," *or* "tend[ing] to injure [CoreCivic] in [its] [business]." Cal. Civ. Code §45. Indeed, Defendants themselves boast that banks stopped financing CoreCivic (*i.e.*, avoid it) and millions banded together in the

---

[9] *See* Cal. Welf. & Inst. Code §602.1; Cal. Penal Code §26.

#FamiliesBelongTogether movement to express hatred, contempt, and outrage at it for that very reason.

Defendants cannot avoid that conclusion by asserting that CoreCivic is simply "lobb[ying] in favor of policies that might improve its bottom line" (Defs.' Br. 42), because that contradicts CoreCivic's well-pled facts that—as it publicly states—it does **not** lobby for harsher sentencing or immigration laws but rather lobbies for criminal justice reforms that "reduce recidivism and incarceration rates by helping people successfully reenter society." (ER-146–47, ER-164, ¶¶ 3, 7, 76-77.) Indeed, by falsely accusing CoreCivic of acting contrary to its public representations, Defendants accuse CoreCivic of publicly misrepresenting its actions, thereby further defaming it. *Sundance Image Tech., Inc. v. Inkjetmall.com, Ltd.*, No. 02-cv-2258, 2006 WL 8455346, at *3 (S.D. Cal. 2006). Defendants' argument is silly—their business is premised on subjecting CoreCivic (and similarly-situated companies) to hatred to encourage investors to shun and avoid it. The Court should reject Defendants' suggestion that their statements lack the very meaning they were designed to have.

Finally, Defendants are wrong that CoreCivic "failed to plead" special damages—*i.e.*, "damages ... in respect to [its] ... business," including "money ... expended as a result of the alleged libel." Cal. Civ. Code §48a(d)(2). Not only did CoreCivic plead that its business suffered financial harm "[a]s a direct and

foreseeable result" of Defendants' defamation (ER-182, ER-191, ¶¶129, 144), but CoreCivic pled specific special damages that Defendants' defamation caused. For example, CoreCivic pled that on June 26, 2019, Bank of America announced it would stop financing CoreCivic "because of public pressure that Defendants created with their false accusations about CoreCivic." (ER-170–71, ¶¶110-11.) And CoreCivic pled Defendants "applaud[ed] themselves for their work in pushing Bank of America to make that decision." (*Id.*) Similarly, CoreCivic pled that on June 27, 2019, "a majority of the investors who had committed to investing in CoreCivic's Term Loan B withdrew," and Defendants "boasted about the financial ... damage [their] accusations had done, stating that ... [they] had been able to encourage 'over 60 percent' of the known banks providing 'credit and term loans to CoreCivic' to pull their funding which 'means [CoreCivic is] going to be struggling ... to raise more money." (ER-171–72, ¶¶113-15.) And CoreCivic pled it had to "enter[] into a new Term Loan ... at a higher interest rate and on less favorable terms than had been [previously] offered" "due to the market pressure that Defendants deliberately manufactured with their false accusations." (ER-172, ¶116.)

### 3. Defendants' Lobbying Statements Are Not Non-Actionable Opinion.

Defendants' contention that their Lobbying Statements are non-actionable opinion likewise fails. To begin, there is no "wholesale defamation exemption for anything that might be labeled 'opinion,'" because "expressions of 'opinion' may

often imply an assertion of objective fact." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 18-21 (1990). Rather, the pertinent question is "whether a reasonable factfinder could conclude that the statement 'impl[ies] an assertion of objective fact.'" *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990). Defendants ignore the applicable three-factor test for analyzing whether a statement can imply an assertion of fact: whether (1) the work's general tenor negates the impression that the statement is an objective fact; (2) the defendant used figurative or hyperbolic language; and (3) the statement is capable of being proven true or false. *Id.* Defendants cannot satisfy ***any*** factor.

***First***, the general tenor of Defendants' publications is factual. Defendants published *articles* on the "Investing" section of Forbes' *news* website, ***not*** "op-eds" or "opinion pieces." (ER-210 ("This ***article****...."); ER-232 ("[T]his ***article****...."").) Moreover, Defendants' articles—written in third-person, objective tense and tone— report purported facts (*e.g.*, the cessation of financing to CoreCivic). Defendants even include their defamatory statements in ***"a brief historical recap."*** (ER-206, ER-231.) Defendants' articles contrast markedly with the publications in Defendants' caselaw: an opinion-segment on political firebrand Rachel Maddow's show that Defendants admit is "openly partisan,"[10] is loaded with "epithets, fiery

---

[10] Defs.' Br. 46.

rhetoric, [and] hyperbole," and during which "Maddow ... share[s] her opinions";[11] a hyperbolic "newspaper opinion column,"[12] and a book offering a dramatized, first-person, "personal viewpoint."[13]

*Second*, unlike the publications in Defendants' caselaw, Defendants' publications are devoid of hyperbolic, figurative language. Again, Defendants' articles are written in an informative, factual tone.

*Third*, Defendants purport to convey clear-cut, (dis)provable facts. CoreCivic either did or did not "spen[d] $25M on lobbying ... to push for harsher criminal justice and immigration laws" to enrich itself by incarcerating immigrant children separated from their parents. Did CoreCivic spend $25 million lobbying for criminal and immigration laws to increase penalties to enrich itself? Did CoreCivic do so even though those laws would separate children from their parents? These issues can be proven true or false. *Borg v. Boas*, 231 F.2d 788, 793 (9th Cir. 1956) ("[T]he imputation of a corrupt motive is often treated as a statement of fact."). Indeed, ***Defendants admit that their Lobbying Statements contain "factual assertion[s]"*** (Defs.' Br. 45)—but, remarkably, ask this Court to insulate them from liability because they cited other articles supposedly supporting their assertions (those

---

[11] *Herring Networks*, 8 F.4th at 1157-58.

[12] *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1121 (C.D. Cal. 1998).

[13] *Partington v. Buglosi*, 56 F.3d 1147, 1153 (9th Cir. 1995).

articles do not, *see infra*). But even if that were true, "a defamatory statement isn't rendered nondefamatory merely because it relies on another defamatory statement." *Flowers v. Carville*, 310 F.3d 1118, 1129 (9th Cir. 2002).

## C. Defendants Are Wrong That CoreCivic Failed to Adequately Plead Actual Malice.

Implicitly recognizing that their other arguments fail, Defendants seek affirmance on a ground the district court did not reach: that CoreCivic inadequately pled actual malice. But Defendants invite error by asking the Court to ignore CoreCivic's well-pled facts demonstrating Defendants' actual knowledge their defamatory statements were false and by mischaracterizing—and asking the Court to consider in isolation—CoreCivic's well-pled facts constituting circumstantial evidence of actual malice.

### 1. The Actual Malice Standard Is Not Prohibitive, Especially at the Pleadings Stage.

"Actual malice" is not a prohibitively-high hurdle—especially at the pleadings stage. CoreCivic need only plead facts giving rise to a plausible inference of actual malice. *Palin v. N.Y. Times Co.*, 940 F.3d 804, 814-15 (2d Cir. 2019); *Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*, 330 F.3d 1110, 1136 (9th Cir. 2003).

Importantly, the facts in CoreCivic's Complaint must be viewed in the context of what courts hold constitute evidence of actual malice. Because defamation-

defendants "are prone to assert their good-faith belief in the truth of their publications" such that "plaintiffs will rarely be successful in proving awareness of falsehood from the mouth of the defendant himself," *Herbert v. Lando*, 441 U.S. 153, 170 (1979), plaintiffs are "entitled to prove the defendant's state of mind through circumstantial evidence," *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989); *Harris v. City of Seattle*, 152 F. App'x 565, 567-68 (9th Cir. 2005); *Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1087 (9th Cir. 2002).

Contrary to Defendants' suggestion, in evaluating the sufficiency of such circumstantial evidence—or, here, factual allegations—courts must examine the ***"totality"*** of the allegations to determine whether, ***collectively***, they can support an inference of actual malice. *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 892 (9th Cir. 2016); *Eastwood v. Nat'l Enquirer, Inc.*, 123 F.3d 1249, 1256 (9th Cir. 1997); *Tavoulareas v. Piro*, 817 F.2d 762, 794 n.43 (D.C. Cir. 1987) ("[E]ach individual piece of evidence cannot fairly be judged individually[.]"). "Evidence of negligence, of motive and of intent may be adduced for the purpose of establishing, by cumulation and by appropriate inferences, the fact of a defendant's recklessness or of his knowledge of falsity." *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 709-10 (2007) (alterations omitted). For example, although bias may not alone demonstrate actual malice, "evidence concerning motive," "financial interest," and bias are relevant evidentiary building blocks toward proving actual

malice. *Connaughton*, 491 U.S. at 668; *Solano*, 292 F.3d at 1085; *Overstock.com*, 151 Cal. App. 4th at 711. Similarly, evidence that defendants avoided knowledgeable sources of information suggests actual malice. *Connaughton*, 491 U.S. at 692.

Because "proof of 'actual malice' calls a defendant's state of mind into question," when lack of fault is not clear this element "does not readily lend itself to summary disposition." *Hutchinson v. Proxmire*, 443 U.S. 111, 120 n.9 (1979); *Lawrence v. Bauer Publ'g & Printing Ltd.*, 459 U.S. 999, 1003-04 (1982); *accord St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) ("***The finder of fact*** must determine whether the publication was indeed made in good faith."); *Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1042 (9th Cir. 1998) ("[S]tatements of [] subjective intention are ***matters of credibility for a jury***.").

### 2. CoreCivic Pled Facts Constituting Direct Evidence of Actual Malice—Which Defendants Ignore.

Defendants ignore CoreCivic's well-pled facts showing Defendants had "first-hand knowledge" their defamatory statements were false. And CoreCivic pled facts showing ***how*** Defendants knew that.

***First***, CoreCivic pled facts showing Defendants knew their defamatory accusations that "CoreCivic operates immigrant detention facilities for children separated from their parents at the [U.S.] border" are false. (ER-161, ER-172–180, ER-182–89, ¶¶64, 120-21, 135-36.) For example, CoreCivic pled that Defendants

were "close[ly]" connected with "protests of the immigrant detention facilities that house unaccompanied minors" and, accordingly, "had first-hand knowledge that none of those facilities are operated by CoreCivic." (ER-160, ¶60.) Similarly, CoreCivic pled that Defendants—to generate revenue for their investment business that "differentiates itself" by pitching "socially-conscious" investments—"launched a comprehensive campaign ... to exploit the [#FamiliesBelongTogether] movement ... to encourage investors, institutions, and banks to divest from CoreCivic and invest in products from which Defendants profit." (ER-148–55, ¶¶14, 17, 48.) It is plausible to infer that Defendants, in so doing, familiarized themselves with the "family separation policy" and where separated children were detained—and learned CoreCivic did not operate those facilities. *Palin*, 940 F.3d at 813-14 (Defendants' experience raised plausible inference of knowledge regarding issues related to that experience). Moreover, CoreCivic pled that because "CoreCivic [is] one of Defendants' primary targets" from which to redirect investments, "Defendants have visited and read CoreCivic's website," which "states in bold print that '**CoreCivic never has and never will house unaccompanied minors.**'" (ER-160, ¶¶58-59.)

***Second***, CoreCivic pled facts showing that Defendants knew their defamatory accusations that CoreCivic has "spent $25M on lobbying over the past three decades to push for harsher criminal justice and immigration laws" to enrich itself by

detaining children separated from their parents are false. (ER-162–63, ER-172–89, ¶¶71-73, 120-21, 135-36.) For example, CoreCivic pled that "Defendants were aware of and read at least two articles that rebutted their false claims about CoreCivic's lobbying"—articles Defendants even linked in their defamatory publications. (ER-164, ¶80.) "Defendants had read an NPR article stating that CoreCivic ... had no role in drafting or supporting" the immigration laws discussed therein. (*Id.* ¶81.) Likewise, "Defendants had read a Business Insider article that expressly acknowledged that CoreCivic does not lobby for any policies that 'determine the basis for or duration of an individual's incarceration or detention.'" (ER-165, ¶82.) That article discusses CoreCivic's lobbying and does not identify any instance where CoreCivic lobbied "for harsher criminal justice and immigration laws." (ER-162–63, ¶¶71-72.)

Defendants' only response is, incredulously, to assert their citation of those articles precludes finding actual malice, apparently because Defendants supposedly "relied" in "good faith" on *other* parts of those articles that they contend support their defamatory claims. But Defendants' assertion of "good faith" reliance contradicts CoreCivic's well-pled facts (and the substance of the articles), and it is legally insufficient to negate an inference of malice on the pleadings: defamation-defendants "cannot [] automatically insure a favorable verdict by testifying that [they] published with a belief that the statements were true[;] [t]he finder of fact

must determine whether the publication was indeed made in good faith." *St. Amant*, 390 U.S. at 732; *accord Palin*, 940 F.3d at 815-16.

Further, CoreCivic pled that "Defendants visited and reviewed [] publicly available information about CoreCivic" in the Lobbying Act Disclosure Database linked on Senate.gov, House.gov, ProPublica's lobbying database, and/or OpenSecrets.org's lobbying database, all of which show that CoreCivic "does not lobby for or against any policies or legislation that would determine the basis for an individual's incarceration or detention." (ER-165–67, ¶¶83-90.) CoreCivic also pled that because Defendants targeted CoreCivic, they "visited and read CoreCivic's website, including [its] 'Political Activity and Lobbying Reports' section," which explains that CoreCivic ***"does not, under longstanding policy, lobby for or against any policies or legislation that would determine the basis for or duration of an individual's incarceration or detention."*** (*Id.*)

Defendants ignore these well-pled, issue-dispositive facts.

### 3. CoreCivic Pled Facts Constituting Circumstantial Evidence of Actual Malice—Which Defendants Mischaracterize.

CoreCivic pled substantial circumstantial evidence of Defendants' actual malice.

**Purposeful Avoidance of the Truth.** Evidence of Defendants' "purposeful avoidance of the truth" independently demonstrates actual malice. *Connaughton*, 491 U.S. at 692; *Suzuki*, 330 F.3d at 1134; *Masson v. New Yorker Mag., Inc.*, 960

F.2d 896, 900 (9th Cir. 1992); *Antonovich v. Superior Court*, 234 Cal. App. 3d 1041, 1048 (1991).  CoreCivic pled that Defendants "intentionally disregard[ed]" and "purposefully avoid[ed] ... numerous publicly available sources rebutting their false claims."  (ER-181, ER-190, ¶¶126, 141.)  For example, CoreCivic pled that Defendants purposefully avoided publicly-accessible lobbying disclosures on Senate.gov, Congress.gov, ProPublica, OpenSecrets.org, and CoreCivic's website demonstrating that CoreCivic has ***not*** "spent $25M on lobbying ... to push for harsher criminal justice and immigration laws," and unambiguous information in news articles and on CoreCivic's website that CoreCivic does ***not*** "operate immigrant detention facilities for children separated from their parents at the [U.S.] border."  (*Id.*)  CoreCivic further pled that Defendants "purposefully avoided contacting CoreCivic for comment before publication" *because* they knew CoreCivic would provide evidence contradicting their claims.  (ER-146, ¶4.)

Defendants cannot avoid those well-pled facts demonstrating actual malice by noting that a defendant's mere failure to ask the target of its defamation for comment or refusal to credit bare denials might not alone prove malice (Defs.' Br. 54-55)—because that is not what CoreCivic pled.  Rather, CoreCivic pled that Defendants purposefully avoided obtaining information—from many sources—that would have demonstrated the falsity of Defendants' defamatory accusations.  That is well-recognized evidence of actual malice.  *Connaughton*, 491 U.S. at 692.

**Preconceived Storyline.** "'[E]vidence that a defendant conceived a storyline in advance of an investigation and then consciously set out to make the evidence conform to the preconceived story is evidence of actual malice, and may often prove to be quite powerful evidence.'" *Harris*, 152 F. App'x at 568 (quoting 1 Rodney Smolla, *Law of Defamation* §3:71). CoreCivic pled that Defendants had a preconceived plan to target CoreCivic because of its large market capitalization and to defame it to "misdirect[] public outrage" against it and "thereby redirect[] capital" to investments Defendants sell, to profit at CoreCivic's expense—regardless what the evidence showed. (ER-148–54, ¶¶14, 21-22, 46.) Defendants may dispute that fact, but it cannot be resolved against CoreCivic on the pleadings.

**Bias, Motive, And Ill Will.** "[E]vidence concerning motive," "bias," or ill-will "support a finding of actual malice." *Connaughton*, 491 U.S. at 668; *Suzuki*, 330 F.3d at 1119; *Shoen v. Shoen*, 48 F.3d 412, 417 (9th Cir. 1995). Defendants' caselaw does not hold otherwise.[14] Contrary to Defendants' suggestion, "circumstantial evidence of a financial motive to [defame] support[s] the ultimate conclusion of actual malice." *Suzuki*, 330 F.3d at 1136; *Solano*, 292 F.3d at 1086 (evidence defendant defamed plaintiff "to promote [its] sales" "is sufficient to satisfy

---

[14] *Tavoulareas*, 817 F.2d at 795 ("evidence of ill will or bad motives *will support* a finding of actual malice"); *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 590 (D.C. Cir. 2016) (holding, unremarkably, that motive *alone* does not prove actual malice).

the actual malice standard"); *Kaelin*, 162 F.3d at 1042 ("pecuniary motive" is evidence of actual malice). Defendants, who "differentiate[] [themselves] in the[ir] industry" by pitching "socially conscious" investments, knowingly defamed CoreCivic to "misdirect[] public outrage" against it and "thereby redirect[] capital" to their "socially conscious" investments to profit at CoreCivic's expense. (ER-148–54, ¶¶14, 17, 21-22, 46.)

**Refusal to Retract.** "Evidence of [a] steadfast refusal to retract [is] properly considered as bearing on the issue of actual malice.'" *Tavoulareas v. Piro*, 763 F.2d 1472, 1477 (D.C. Cir. 1985); *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071 (5th Cir. 1987); *Ventura v. Kyle*, 63 F. Supp. 3d 1001, 1014 (D. Minn. 2014) ("most authorities" so hold), *rev'd on other grounds*, 825 F.3d 876 (8th Cir. 2016). Defendants' caselaw does not hold otherwise.[15] It is irrelevant that refusals to retract occur post-publication: "It is entirely consistent with [*Sullivan*] that '[u]nder certain circumstances evidence [of refusal to retract] ... might be relevant in showing

---

[15] *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 281 (S.D.N.Y. 2013) (holding, contrary to Defendants' representation, that "the failure to retract may, under certain circumstances, tend to support a finding of actual malice" (cleaned up)), *aff'd*, 807 F.3d 541 (2d Cir. 2015), *aff'd*, 622 F. App'x 67 (2d Cir. 2015); *N.Y. Times v. Sullivan*, 376 U.S. 254, 286 (1964) ("Whether or not a failure to retract may ever constitute such evidence, there are two reasons why it does not *here*."); *McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1515 (D.C. Cir. 1996) (failure to retract does not *alone* establish liability when "grave doubt [about truth/falsity] is cast *after* publication").

recklessness at the time the statement was published.'" *Tavoulereas*, 763 F.2d at 1477 (quoting Restatement (Second) of Torts §580A cmt. d)); *Ibarra v. Carpinello*, No. B220934, 2011 WL 925719, at *9 (Cal. Ct. App. 2011). CoreCivic pled that despite sending Defendants multiple letters asking them to retract their defamatory statements—and providing evidence of their falsity—Defendants refused and instead doubled-down on them, publishing a purported "clarification" dismissing the truth as something "CoreCivic has stated" and republishing their defamation anew. (ER-160–61, ¶¶62-63.)

## CONCLUSION

Plaintiff-Appellant CoreCivic respectfully requests the Court reverse the district court's judgment and remand with instructions that discovery proceed.

Date: November 15, 2021

Respectfully Submitted,

  */s/ Elizabeth M. Locke, P.C.*
ELIZABETH M. LOCKE, P.C.
JOSEPH R. OLIVERI
DANIEL D. MAULER
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
(202) 628-7400
libby@clarelocke.com
joe@clarelocke.com
dan.mauler@clarelocke.com

*Attorneys for Plaintiff-Appellant CoreCivic, Inc.*

# **CERTIFICATE OF COMPLIANCE**

## 1.      **Type Volume**

[X]    This document complies with type-volume limits of FRAP 32(a)(7)(B) and Circuit Rule 32-1(a) because, excluding the parts of the document exempted by FRAP 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, statutory addendum, signature block, certificates of counsel, and proof of service), this document contains <u>6,998</u> words.

## 2.      **Typeface and Type-Style**

[X]    This document complies with the typeface requirements of FRAP 32(a)(5)(A) and the type-style requirements of FRAP 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.


  */s/ Joseph. R. Oliveri*
Joseph. R. Oliveri
*Attorney for Plaintiff-Appellant CoreCivic, Inc.*

Dated:  November 15, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2021, I caused the foregoing Reply Brief of Plaintiff-Appellant CoreCivic, Inc. to be electronically filed with the Clerk of the Court by using the Court's CM/ECF system. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: November 15, 2021                    By:    */s/ Elizabeth M. Locke, P.C.*
                                                    Elizabeth M. Locke, P.C.
                                                    *Attorney for Plaintiff-Appellant*
                                                    *CoreCivic, Inc.*